

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES W. YOO | ) Civil Action No. ___18 CV 6398 (CJS)___ |
|     Plaintiff, | ) |
| | ) **COMPLAINT** |
|   v. | ) |
| | ) **CONSPIRACY AGAINST RIGHTS** |
| ROCHESTER GENERAL HOSPITAL; | ) **(18 U.S.C. § 241)** |
| MONROE COUNTY SHERIFF'S OFFICE; | ) |
| STEPHANIE SCROGER YOO; | ) **DEPRIVATION OF RIGHTS UNDER** |
| AILEEN YOO; | ) **COLOR OF LAW** |
| DOES 1 – 1000, | ) **(18 U.S.C. § 242)** |
| | ) |
|     Defendants. | ) **CIVIL ACTION FOR DEPRIVATION** |
| | ) **OF RIGHTS** |
| | ) **(42 U.S.C. § 1983)** |
| | ) |
| | ) **CONSPIRACY TO INTERFERE WITH** |
| | ) **CIVIL RIGHTS** |
| | ) **(42 U.S.C. § 1985(2)(3))** |
| | ) |
| | ) **PROCEEDINGS IN VINDICATION** |
| | ) **OF CIVIL RIGHTS** |
| | ) **(42 U.S.C. § 1988)** |
| | ) |
| | ) **MEDICAL MALPRACTICE** |
| | ) **(NEW YORK CPLR § 214-a)** |
| | ) |
| | ) **OTHER TORTS – AN ACTION FOR** |
| | ) **WHICH NO TIME LIMIT IS PRESCRIBED** |
| | ) **(NEW YORK CIVIL RIGHTS § 4. CIVIL** |
| | ) **RIGHTS. RIGHT TO KEEP AND BEAR** |
| | ) **ARMS)** |
| | ) |
| | ) |
| | ) **_DEMAND FOR JURY TRIAL_** |
| | ) |
| | ) **_AMOUNT DEMANDED EXCEEDS_** |
| | ) **_$75,000_** |
| | ) |

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff, James W. Yoo, files this Complaint against Defendants, demands a trial by jury, and alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because this Complaint arises under 18 U.S.C. § 241 (Conspiracy Against Rights); 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law); 18 U.S.C. § 912 (Officer or Employee of the United States); 18 U.S.C. § 1018 (Official Certificates or Writings); 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights); 42 U.S.C. § 1985 (2)(3)(Conspiracy to Interfere with Civil Rights); and 42 U.S.C. § 1988 (Proceedings in vindication of Civil Rights).

2.      This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Plaintiffs and Defendants are citizens of different states, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

3.      This Court has supplemental jurisdiction of this matter over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred within the Western District of New York; Plaintiff resides and Plaintiff domiciles within the Western District of New York.

<u>**PARTIES**</u>

5.      Plaintiff JAMES W. YOO resides and domiciles at 711 Rookery Way Macedon, NY 14502 (hereinafter "PRIMARY_RESIDENCE").  Plaintiff was born in Washington, DC in 1967.

6.      Defendant ROCHESTER GENERAL HOSPITAL (hereinafter "RGH"), upon information and belief, resides and domiciles at 1425 Portland Ave. Rochester, NY 14621.

7.      Defendant MONROE COUNTY SHERIFF'S OFFICE (hereinafter "SHERIFF"), upon information and belief, resides and domiciles at 130 S. Plymouth Ave. Rochester, NY 14614.

8.      Defendant STEPHANIE SCROGER YOO (hereinafter "STEPHANIE") is Plaintiff's wife and upon information and belief resides and domiciles at 1344 Falling Waters Way Webster, NY 14580.

9.      Defendant AILEEN YOO (hereinafter "AILEEN") is Plaintiff's only younger sister and upon information and belief resides and domiciles at 2701 B Meadow Creek Way Arcata, CA 95521.

10.     The true names and capacities of the Defendants, DOES 1 through 1000, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained.  Upon information and belief, Plaintiff thereupon alleges that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately cause injury and damages to the Plaintiff as herein alleged.


## STATEMENT OF FACTS AND ALLEGATIONS

11.     Plaintiff's Father, Ki Hong Yoo, (hereinafter FATHER) was an Advisor to South Korean Presidential Candidate Kim Dae Jung back in the 1970's; FATHER suddenly passed away on February 15th 1990.  Picture noted below (from right to left; Kim Dae Jung, Senator Ted Kennedy, Ki Hong Yoo (FATHER), and Plaintiff is not familiar with the person on the far left).



(1)     AILEEN asked Plaintiff to email the picture noted below several years ago as research for her book and attempts to personally contact Kim Dae Jung; AILEEN said that her efforts were not fruitful.

12.     Plaintiff graduated from college May 1992 and began working for Andersen Consulting in late August 1992.  Plaintiff received a phone call one early morning while Plaintiff was at Andersen Consulting's training facility outside of Chicago, Illinois; Plaintiff's Mother, Anna Shinn Yoo, (hereinafter MOTHER), was admitted to the George Washington University's Hospital Intensive Care Unit (hereinafter ICU).  At the time of MOTHER's ICU, Plaintiff, MOTHER, and AILEEN resided together in MOTHER's single-family home in Arlington, Virginia.

13.     MOTHER was a broadcaster and journalist for the Voice of America (Korean Division); MOTHER passed away on September 28th 1992 after being in ICU for about a month.

14.    Plaintiff was never aware of MOTHER's medical condition or history prior to MOTHER's ICU stay; MOTHER and FATHER (hereinafter PARENTS) never told Plaintiff about any medical conditions or history that PARENTS may have had.  PARENTS rarely took Plaintiff to any medical care throughout Plaintiff's life with PARENTS.

15.    From the time Plaintiff arrived from the Chicago area to ICU, MOTHER was incapacitated and in an almost vegetative state, unable to communicate.

16.    Given MOTHER's incapacitated state in ICU for about a month and dire prognosis, Plaintiff asked the staff at ICU to not ask AILEEN to sign MOTHER's Do Not Resuscitate order knowing how traumatic this would be; Plaintiff signed MOTHER's Do Not Resuscitate order; MOTHER passed away shortly thereafter.

17.    During the last few days of MOTHER's life, Plaintiff handled all the paperwork associated with ICU and the difficult funeral arrangements considering MOTHER did not have any burial plot or Will outlining MOTHER's funeral wishes.

18.    PARENTS passed without a Will; Plaintiff and AILEEN were the only survivors to PARENT's estate.

19.    PARENT's assets at the time of MOTHER's passing included; a condominium in Blacksburg, Virginia; a single-family house in McLean, Virginia; and a single-family house in Arlington, Virginia.

20.    Working 60+ hour work weeks and travelling to consulting assignments for Andersen Consulting, Plaintiff;

    (1)    endeavored to sell the condominium in Blacksburg, Virginia;

    (2)    helped pay for AILEEN's college education;

    (3)    dealt with PARENT's finances in light of passing without a Will;

    (4)    and dealt with ICU's medical bills totaling well over $500,000 as Plaintiff remembers ICU's medical bills reaching $800,000.

21.    From late 1992, Plaintiff attempted to seek medical care considering MOTHER's medical condition;

(1)    Plaintiff underwent tests conducted by Plaintiff's primary care physician (hereinafter "DOCTOR_M") to confirm Plaintiff's medical condition (hereinafter "CONDITION").

(2)    After confirming CONDITION, DOCTOR_M only provided one referral to only participate in experimental drug trials with, hereinafter, DOCTOR_R;

(3)    Plaintiff begged DOCTOR_M for other treatment alternatives; DOCTOR_M only provided Plaintiff with the option to participate in experimental drug trials;

(4)    Plaintiff sought another opinion and medical evaluation; Plaintiff was examined by a female doctor (hereinafter "FEMALE_DOCTOR1"); FEMALE_DOCTOR1 sexually abused Plaintiff; Plaintiff was in shock;

(5)    Plaintiff sought another opinion and medical evaluation; the next female doctor (hereinafter "FEMALE_DOCTOR2") discussed current therapy options, Plaintiff was still in shock from FEMALE_DOCTOR1.

**22.    On November 3rd 1992, Bill Clinton was elected the 42nd President of the United States.**

23.    The condominium in Blacksburg, Virginia was sold in 1993 or 1994 resulting in Plaintiff losing money and Plaintiff paying money at closing.

24.    In 1992 and 1993, Plaintiff's aunt and uncle residing in Princeton, New Jersey (hereinafter "RELATIVE_NJ") repeatedly asked Plaintiff to borrow money using emotional extortion to coerce Plaintiff into giving RELATIVE_NJ $10,000; formal personal loan documents were not compiled and executed regarding the $10,000 personal loan from Plaintiff to RELATIVE_NJ; RELATIVE_NJ repaid only $1000 to date.

25.    AILEEN and her best friend (hereinafter "BFF_IMSORRY") have been friends since the first grade.

26.    On or around 1993, Plaintiff asked AILEEN's best friend's Father (hereinafter "BFF_IMSORRY_FATHER") just for advice since BFF_IMSORRY_FATHER was, and still remains, a very wealthy and well-connected individual; BFF_IMSORRY_FATHER just gave Plaintiff his old college finance 101 textbook as advice.

27.    Plaintiff endeavored to handle the probate process and asked AILEEN to assist helping with administrative items related to the probate process and ICU's medical bills; AILEEN was uncooperative.

28.    AILEEN demanded that she travel to South Korea to visit FATHER's older brother and relatives; Plaintiff paid for AILEEN's travel to South Korea in 1993.

29.    AILEEN consistently voiced her desire to move away from Plaintiff and to pursue her lifelong dream of becoming a famous journalist.

30.    Plaintiff believes that AILEEN is either the actual author or co-author of a book titled "When Parent's Die: Learning to Live with the Loss of a Parent" (hereinafter "BOOK").

(1)    BOOK is printed as written by Rebecca Abrams; "Rebecca Abrams asserts the moral right to be identified as the author of this work in accordance with the Copyright, Designs and Patents Act of 1988";

(2)    BOOK has copyright years of 1992, 1995, 1999, and 2013;

(3)    BOOK's copyright years coincide with Plaintiff's major life events; 1992, the death of Plaintiff's MOTHER; 1995, Plaintiff resigning from Plaintiff's job due to being overwhelmed with grief and dealing with PARENTS passing without a Will; 1999, meeting STEPHANIE; and 2013, the 10-year anniversary of Plaintiff and STEPHANIE's wedding.

(4)    AILEEN gave a copy of BOOK (2nd Edition) to Plaintiff years ago; Plaintiff read BOOK in its entirety in 2016.

(5)    Plaintiff believes that BOOK contains many direct and indirect euphemisms and vignettes correlated to Plaintiff, MOTHER, FATHER, STEPHANIE, and Plaintiff's friends.

31.     Plaintiff and AILEEN agreed to transfer the title (hereinafter "VIRGINIA_TITLES") of the Arlington, Virginia and McLean, Virginia single-family residences (hereinafter "VIRGINIA_RESIDENCES") into Plaintiff's name whereby Plaintiff would manage and grow the assets for later distribution.

32.     Paperwork for VIRGINIA_TITLES was signed and executed between Plaintiff and AILEEN with originals given to Plaintiff and AILEEN and filed with Arlington and Fairfax counties on or around July 1994. Plaintiff believes that a value of $100,000 for each single-family residence was noted as payment from Plaintiff to AILEEN for VIRGINIA_TITLE transfer even though funds were not actually transferred from Plaintiff to AILEEN.

   (1)     Plaintiff believes that the pre-tax county assessed value for the Arlington, Virginia single-family residence on or around July 1994 was around $150,000;

   (2)     Plaintiff believes that the pre-tax county assessed value for the McLean, Virginia single-family residence on or around July 1994 was around $250,000;

   (3)     Plaintiff believes that a total after-tax value of $200,000 was noted as payment from Plaintiff to AILEEN for title transfer of VIRGINIA_RESIDENCES.

33.     AILEEN and Plaintiff agreed no transfer of money would occur regarding the VIRGINIA_TITLE transfers since AILEEN and Plaintiff agreed that Plaintiff would manage and grow the VIRGINIA_RESIDENCES; AILEEN and Plaintiff agreed that a monetary distribution would occur at a mutually agreed upon timeframe.

34.     Plaintiff stored one set of Plaintiff's VIRGINIA_TITLE originals in a safe deposit box registered at Riggs National Bank in Rosslyn, Virginia (hereinafter "BOX"); Plaintiff forgot to make payments on BOX shortly after moving from Arlington, Virginia to Rochester, New York. Plaintiff is unaware of the status or current existence of BOX considering Plaintiff's unpaid status for well over 14 years.

35.     Plaintiff believes that AILEEN only explicitly asked for money once to help pay for her apartment in Bethesda, Maryland; AILEEN never explicitly asked Plaintiff for any money until,

around March or April 2016, shortly after Plaintiff settled with former rental tenants who threatened and accused Plaintiff of somehow causing the tenant's miscarriage and hospitalization;

> (1)    AILEEN explicitly asked Plaintiff for money around March or April of 2016 through a series of text messages to Plaintiff's mobile phone

36.    Plaintiff met STEPHANIE in 1999 while working at MCI in Reston, Virginia.

37.    Prior to employment with Global Crossing, Plaintiff received a physical as part of the employment process paperwork from Global Crossing.  Plaintiff asked BFF_IMSORRY_FATHER for recommendation of physician regarding employment physical; BFF_IMSORRY_FATHER provided the name of a male doctor in the Seven Corners, Virginia area (hereinafter "MALE_DOCTOR1").  MALE_DOCTOR1 did not conduct blood work on Plaintiff.

**38.    On November 7th 2000, George W. Bush was elected the 43rd President of the United States.**

39.    Plaintiff and STEPHANIE moved to Rochester, New York in December 2000; Plaintiff worked for Global Crossing as Director of Product Development for Security Services.

**40.    On September 4th 2001, Robert Mueller III is appointed Director of the Federal Bureau of Investigation.**

41.    On the morning of September 11, 2001, Plaintiff with Craig Ashley (Product Development Manager, Global Crossing) (hereinafter "ASHLEY") started to give a presentation at the eGov Information Assurance Conference held at the Ronald Regan Building.

> (1)    Plaintiff and ASHLEY's presentation was interrupted and cancelled due to the acts of terrorism on September 11, 2001;
>
> (2)    Plaintiff and ASHLEY sat in the JW Marriot Hotel near the White House unable to see the hotel lounge TV of the events unfolding;
>
> (3)    ASHLEY suggested drinking alcoholic beverages to Plaintiff;
>
> (4)    Plaintiff and ASHLEY excessively overconsumed alcohol;
>
> (5)    ██████████████████████████ 1;

(6)     Shortly after arriving back from Plaintiff's Washington, DC. eGov conference, Plaintiff briefly told STEPHANIE about Plaintiff's experience.

42.     Plaintiff was promoted around mid-2002 to Head of Global Information and Physical Security (hereinafter "HGIPS").

(1)     As HGIPS, Plaintiff successfully led the technical and security team during Global Crossing's Committee on Foreign Investments in the United States (hereinafter "CFIUS") process with the United States Government (hereinafter "USG").

43.     On or around September 2002, Plaintiff paid over $19,000 from Plaintiff's personally held bank account for deposit and closing costs to purchase Plaintiff's PRIMARY_RESIDENCE.

44.     Plaintiff's PRIMARY_RESIDENCE was one of seven model homes built for Homearama 2002; all remaining land lots on Rookery Way were vacant at the time the seven model homes were built for Homearama 2002.

45.     Plaintiff and STEPHANIE's neighbor John Campana (hereinafter "J_CAMPANA") and Patricia Frasca (hereinafter "P_FRASCA") worked as food safety inspectors (J_CAMPANA for Monroe County and P_FRASCA for the State of New York).

(1)     J_CAMPANA and P_FRASCA lived together from 2002 as neighbors to Plaintiff's PRIMARY_RESIDENCE;

(2)     P_FRASCA's only daughter, Melissa Frasca (hereinafter MELISSA_FRASCA) is a member of the Monroe County Sheriff's Office (hereinafter MCSO) and rose through the ranks of the MCSO quickly; Plaintiff believes MELISSA_FRASCA is currently ranked 'Inspector'; Plaintiff interacted with MELISSA_FRASCA on a personal basis and through family events invited by J_CAMPANA or P_FRASCA;

(3)     J_CAMPANA retired as food safety inspector and created a food safety certification small company run from his residence;

(4)     P_FRASCA helped J_CAMPANA with the food safety certification small company;

(5)    J_CAMPANA and P_FRASCA asked Plaintiff on countless occasions for help with their computers and electronic equipment;

(6)    J_CAMPANA and P_FRASCA had a copy of Plaintiff's PRIMARY_RESIDENCE keys and garage door opener; P_FRASCA frequently house and pet sat for Plaintiff and STEPHANIE.

(7)    Plaintiff was a frequent guest at J_CAMPANA's and P_FRASCA's family gatherings; picture below of Memorial Day 2016 weekend at J_CAMPANA's and P_FRASCA's house:



46.    On or around September 2003, Plaintiff was laid-off from Plaintiff's position as HGIPS, shortly before the USG approved Global Crossing's CFIUS transaction.

47.    On October 18th 2003, Plaintiff and STEPHANIE were married in Rochester, New York.

(1)    Plaintiff's neighbor, Steve Amoroso (hereinafter "S_AMOROSO") attended Plaintiff's and STEPHANIE's wedding;

(2)    STEPHANIE and S_AMOROSO insisted on adding S_AMOROSO's photo from Plaintiff's wedding reception, see below:



i.    The photo above of S_AMOROSO is the last page of Plaintiff and STEPHANIE's MyPublisher.com wedding photo book:



48.    STEPHANIE refused to allow Plaintiff to look for employment outside the Rochester, New York area yelling on several occasions, "I am not signing up to moving (out of Rochester)".

49.    Plaintiff focused on helping STEPHANIE in any manner possible, building her career, making STEPHANIE feel good about herself, and trying to make STEPHANIE as happy as possible; "happy wife, happy life", or so it is Said.

50.    STEPHANIE began working from the marital residence full-time shortly after Plaintiff was laid-off in September 2003.

51.    Plaintiff also worked from the marital residence; Plaintiff managed the properties in Arlington, Virginia and McLean, Virginia with STEPHANIE's advice at times; Plaintiff, unsuccessfully, attempted to day trade from the marital residence.

52.    On or around April 2004, the primary residence and the VIRGINIA_RESIDENCES were refinanced.  Through the refinancing process:

    (1)    Plaintiff paid off STEPHANIE's outstanding student loan debt of $18,301;

    (2)    Plaintiff paid off outstanding balance of 2003 Volvo SUV;

    (3)    Plaintiff paid off credit card debt from purchases including primary residence home furnishings and wedding expenses;

    (4)    STEPHANIE's name was added to title of the VIRGINIA_RESIDENCES

53.    From December 2002 through February 2006, Plaintiff funded jointly-held account from Plaintiff's personally-held account in the amount of over $18,000.

54.    Plaintiff does not recall the exact date at this time, however, Plaintiff recalls STEPHANIE asking Plaintiff to go to a ███ [1] club in San Francisco California while visiting AILEEN; STEPHANIE and Plaintiff went to ███████ [1].

55.    STEPHANIE's brother TIM SCROGER proactively coordinated several 'guys night out' with STEPHANIE's explicit approval and OK.  STEPHANIE explicitly understood 'guys night out'.

**From:** Stephanie Yoo
**To:** █
**Cc:** █ ; Ped█ ; jamesyo█
**Subject:** Re: Guys night out
**Date:** Wednesday, April 06, 2011 11:01:03 AM

I am ok with whatever james decides...as he has covered for me a ton with both work and personal travel

Sent from my iPad

On Apr 6, 2011, at 10:30 AM, █ wrote:



All,

Tim

Apr 5, 2011 11:53:32 PM, █ wrote:

-----Original Message-----
From: Tim Scroger
[mailto:t█████████████]
Sent: Tuesday, April 05, 2011 11:18
AM
To: b████████████████████
James Yoo
Subject: Guys night out

Steph had a good idea, what about
guys night out in No. VA?  James
has to be there in early June. Is
there enough to do there?  Golf, Go-
Go, Casino, etc...

Tim Scroger

████████████████████████

56.     Plaintiff does not recall the exact date at this time, however, Plaintiff attended Plaintiff's

high school friend's (Angela Liang, hereinafter "ANGELA") husband's (Mark Walker, hereinafter

"WALKER") funeral in Washington DC; both ANGELA and WALKER attended Plaintiff's and

STEPHANIE's wedding in Rochester New York.

    (1)    Plaintiff recalls WALKER studying Russian as a college major;

    (2)    Plaintiff was told that WALKER passed away from a sudden heart attack;

    (3)    ANGELA worked at the Department of Justice;

    (4)    Plaintiff spoke briefly to ANGELA after being laid off as HGIPS in 2003.

57.     In June 2007, AILEEN presented Plaintiff with a picture book, see "EXHIBIT A" titled "The

Life and Times of James Yoo. A 40-Year Retrospective" (hereinafter "CALLING_CARD"), in front

of AILEEN's friends, including BFF_IMSORRY, STEPHANIE, and Plaintiff at a restaurant in

Bethesda, Maryland.

58.     On or around late June 2007, Plaintiff's uncle, Sang Shinn (hereinafter "S_SHINN"), notified Plaintiff that Plaintiff and AILEEN may be entitled to an inheritance of real estate in Seoul, South Korea.

(1)     S_SHINN requested Plaintiff to compile Special Power of Attorney documents such that S_SHINN can travel to Seoul, South Korea to verify the existence of any real estate inheritance claims for Plaintiff and AILEEN;

(2)     On or around late June 2007 or early July 2007, Plaintiff compiled, executed, and provided Special Power of Attorney documents, see "EXHIBIT B", to S_SHINN;

(3)     Plaintiff is unaware of any documents executed by AILEEN regarding any real estate inheritance claims for AILEEN;

(4)     On or around late Fall 2007, S_SHINN notified Plaintiff that S_SHINN's travel to South Korea resulted in no verified real estate inheritance claim for Plaintiff.

59.     No later than January 2008, Plaintiff was aware of AILEEN's desire to write and publish a book.  AILEEN never told Plaintiff about the nature of AILEEN's book; see below regarding AILEEN's email to Plaintiff on January 23rd 2008 titled "My book".:

| | |
|---|---|
| **From:** | Aileen Yoo |
| **To:** | Jimbo |
| **Subject:** | My book |
| **Date:** | Wednesday, January 23, 2008 11:07:19 AM |

Hey Jimbo. How are you? Hope you're not stressing too much over the markets.

I'm finally feeling motivated to work on my book again. but I could sure use your help. I'd love to run a few things by you.

Got a chance to chat tonight?

Sis

**60.** On November 4th 2008, Barack Obama was elected the 44th President of the United States.

61. Again, AILEEN stated on countless occasions to Plaintiff throughout her life of her desire for journalistic fame. Below is an email from AILEEN on October 22nd 2014, titled "Ben Bradlee", exemplifying AILEEN's journalistic desires:

| | |
|---|---|
| **From:** | Aileen Yoo |
| **To:** | Jimbo |
| **Subject:** | Ben Bradlee .. |
| **Date:** | Wednesday, October 22, 2014 12:03:54 PM |

Jim, not sure if i told you this story, but I had a George Mason prof who worked on the Washington Post team that broke the Watergate scandal. This prof got in touch with Ben Bradlee on my behalf, asking him to help me get that copy aide job at the Post. When I got the job, I met Ben Bradlee to thank him. We chatted for a bit, I told him how I wanted to be a journalist and I also told him about how mom and dad were journalists. Anyway, good man who helped give me my first break. You never forget people like that :-)

Ben Bradlee, legendary Washington Post editor, dies at 93

Ben Bradlee, legendary Washington Post editor, die
s at 93
Ben Bradlee's gift for leadership and zest for journalism — and life — m
ade him the most celebrated editor of his era. He directed The Post's cov
erage of Watergate, which resulted in the only resignation of a president
in U.S. history.
View on www.washingtonpost.com                    Preview by Yahoo

Aileen

62. In late September 2011, Plaintiff and STEPHANIE participated in Octoberfest at the Rhineblick Restaurant (hereinafter "OCTOBERFEST") in Canandaigua, New York. Plaintiff and STEPHANIE met Stephen and Barbara Worden for the first time at Rhineblick.

(1)     Plaintiff blindly met Stephen and Barbara Worden;

(2)     Plaintiff is unaware of STEPHANIE having any prior contacts with Stephen and Barbara Worden prior to OCTOBERFEST;

(3)      Stephen Worden gave Plaintiff his business card; Stephen Worden is a Firearms

Instructor for the Monroe County Sheriff's Office;

(4)      After Octoberfest, Plaintiff sent Stephen Worden an email to his work email

address sworden@monroecounty.gov on September 25th 2011 and received an email

back from a lonewolf676@yahoo.com address, see below;

| | |
|---|---|
| **From:** | stephen worden <lonewolf676@yahoo.com> |
| **Sent:** | Sunday, September 25, 2011 6:26 PM |
| **To:** | James W. Yoo |
| **Subject:** | Re: Ein Prosit! |

Will do, nice meeting you and your wife.


"Men don't follow titles, they follow courage"
**From:** James W. Yoo <jamesyoo@rochester.rr.com>
**To:** sworden@monroecounty.gov
**Sent:** Sunday, September 25, 2011 9:52 AM
**Subject:** Ein Prosit!

Hi Steve,
A quick hello to say it was great meeting you and Barbara again.  Let us know if you ever venture back to
Rhineblick...what a great place!
Take care....go Christie!
James.

(5)      Stephen Worden is not currently employed with the Monroe County Sheriff's

Office.

63.      **On November 6th 2012, Barack Obama was re-elected as President of the United**

**States.**

64.      **On September 4th 2013, James Comey was appointed Director of the Federal Bureau**

**of Investigation.**

65.      In April 2015, Plaintiff and STEPHANIE had a dispute with former rental tenants

(hereinafter "TENANT_CA" and "TENANT_ER") in Arlington, Virginia regarding rental property

damage.

(1)      TENANT_CA and TENANT_ER signed rental agreements with Plaintiff and

STEPHANIE from April 2011 through May 2015.

66.     On or around 2014 or 2015, STEPHANIE encouraged Plaintiff to go to the gun range with STEPHANIE's older brother T_SCROGER.

    (1)     During a family visit from which Plaintiff and STEPHANIE visited T_SCROGER and his family in Pennsylvania, STEPHANIE, T_SCROGER, Peggy Scroger (T_SCROGER's wife), T_SCROGER's two children, and Plaintiff went to a gun range.

    (2)     Plaintiff only fired T_SCROGER's 9mm handgun; STEPHANIE was the only person who did not fire any guns.

    (3)     Plaintiff refused T_SCROGER's offer to fire T_SCROGER's shotgun.

    (4)     Plaintiff has only fired two firearms in Plaintiff's life; a .22 rifle to earn a merit badge as a Scout, and T_SCROGER's 9mm handgun.

67.     On April 15th 2015, STEPHANIE sends Plaintiff email titled "Quick mom update – surgery went well" as seen below:

| | |
|---|---|
| From: | stephanie yoo |
| To: | james yoo |
| Subject: | Fw: Quick mom update - surgery went well |
| Date: | Wednesday, April 15, 2015 1:32:49 PM |

Fyi


Sent from Yahoo! Mail on Android


From: michele Desautels ████████████████ >;
To: Christopher Scroger ███████████ ✉ ███████ >; eric scroger ████████ >; Steph Yoo ████████████████ >; Scott Scroger ████████ >;
Cc: Dad ██████ >;
Subject: Quick mom update - surgery went well
Sent: Wed, Apr 15, 2015 4:55:50 PM

Just had a quick call from Dad. Mom is heading to recovery. The surgery went well. Good news!

Michele desAutels

████████████

68.     TENANT_CA sends an email to Plaintiff on May 19th 2015 threatening and accusing Plaintiff of somehow causing TENANT_ER's hospitalization.

69.     Plaintiff immediately notified STEPHANIE about TENANT_CA's threat and accusation of somehow causing TENANT_ER's as Plaintiff expressed emotional damage to STEPHANIE.

70.     STEPHANIE, on May 21st 2015 and June 12th 2015, forwarded emails received from TENANT_CA specifying TENANT_ER's hospitalization as a miscarriage; further exacerbating Plaintiff's emotional damage from TENANT_CA's emails.

71.     Plaintiff and STEPHANIE retained attorney in Arlington, Virginia (hereinafter "ATTORNEY_S") in September 2015.

72.     Plaintiff requested several times that ATTORNEY_S verify TENANT_ER's miscarriage considering TENANT_CA's emails; ATTORNEY_S did not verify TENANT_ER's unsubstantiated claim of miscarriage; see email below:

| | |
|---|---|
| **From:** | ███████ |
| **To:** | James W. Yoo |
| **Cc:** | ███████ |
| **Subject:** | Re: Retainer & other questions |
| **Date:** | Friday, November 18, 2016 10:57:56 AM |

In case I haven't been clear, I do not believe you asked me to investigate the claim beyond our discussions about the likelihood that they would prevail should they bring a claim. I don't do personal injury work, but I think it's two years. Va. Code § 8.01-243(A)

--
███████
Attorney at Law

From:     James W. Yoo
To:     ███████████
Cc:     jamesyoo@rochester.rr.com
Subject:     RE: Yoo v. ████ I. Key questions for Tenant & Vetting Tenant statements
Date:     Tuesday, December 20, 2016 9:52:26 PM

Mr. ██████,

I did ask you to vet the accuracy of ██████████'s claim regarding his wife ████ having a miscarriage May 2015 (item #1 below).

Thank you.

James.

---

From: James W. Yoo [mailto:jamesyoo@rochester.rr.com]
Sent: Tuesday, September 29, 2015 12:36 PM
To: █████████
Cc: ██████'; 'James W. Yoo'
Subject: Yoo v. ███████. Key questions for Tenant & Vetting Tenant statements
Importance: High

Mr. ██████,

Key questions that I have (so far)...

1. Based on emails, one may conclude that ████ had her miscarriage either late Wednesday May 13th, Thursday May 14th, Friday May 15th, Saturday May 16th, or Sunday May 17th.

- **What can we do to vet the accuracy of the email that my wife received from ███████████ on May 21, 2015 at 9:15pm and May 22nd at 1:15am stating "last week my wife also suffered a miscarriage".**
- **If ██████' statement is accurate, then his threat to Landlord via May 19, 2015 2:18pm email correlates with greater context and intent of threat**
- **If ██████' statement is false, then Landlord interprets ██████' statement as an act for the sole purpose of intimidation in order to manipulate a better outcome for Tenant**

73.     Plaintiff excessively overconsumed alcohol, primarily gin, during the evening November 25, 2015 considering the stress of the legal dispute and emotional damage from TENANT_CA's threat to Plaintiff regarding TENANT_ER's unsubstantiated claim of miscarriage and hospitalization.

74.     STEPHANIE has observed Plaintiff's excessive overconsumption of alcohol countless times throughout their relationship and marriage.

75.     Plaintiff is confident that bona fide testimony from friends, family, and others will corroborate observations of Plaintiff's consistent behavior of excessive overconsumption of alcohol throughout Plaintiff's life as early as the tenth grade.

76.     On the morning of November 26, 2015 STEPHANIE drove Plaintiff to RGH against his will. Plaintiff denies having any conversation with STEPHANIE about having any suicidal thoughts or suicidal ideations prior to STEPHANIE driving Plaintiff to RGH against his will.

77.     Plaintiff never expressed any suicidal thoughts or suicidal ideations to STEPHANIE at any time during their entire relationship or marriage.

78.     Plaintiff never expressed any suicidal thoughts or suicidal ideations to anyone during Plaintiff's lifetime.

79.     Plaintiff requested Plaintiff's medical records from RGH on August 1, 2015; RGH generated Plaintiff's request for Plaintiff's medical records on August 15th 2015 (hereinafter "RGH_RECORDS"); Plaintiff received RGH_RECORDS on or about late August 2015.

   (1)     Upon reviewing RGH_RECORDS received on or about late August 2015, Plaintiff went into a state of shock, outrage, and suffered emotional distress due to the numerous blatant lies, omissions, and unvetted statements on Plaintiff's RGH_RECORDS;

   (2)     Plaintiff, in his state of shock, emailed electronic copies of Plaintiff's RGH_RECORDS to STEPHANIE, AILEEN, and Plaintiff's neighbors John Campana (hereinafter "J_CAMPANA") and Patricia Frasca (hereinafter "P_FRASCA").

80.     Plaintiff has not included Plaintiff's RGH_RECORDS at the time of this filing; Plaintiff attests that descriptions regarding RGH_RECORDS are accurate to the best of Plaintiff's ability; Plaintiff will submit RGH_RECORDS to the Court should the Court Order Plaintiff to do so.

81.     RGH_RECORDS page 5 describes "Per wife (STEPHANIE) notes that the pt (Plaintiff) left a suicide note for her (STEPHANIE) this morning (November 26th 2015)." Plaintiff denies any suicide note written by Plaintiff.

82.   Plaintiff demanded on several occasions that STEPHANIE produce the alleged suicide note written by Plaintiff.  STEPHANIE initially told Plaintiff that STEPHANIE destroyed the alleged suicide note written by Plaintiff; later STEPHANIE told Plaintiff that the alleged suicide note written by Plaintiff did not exist.

83.   On November 26th 2015 at RGH:

(1)   On or around 8:00am, STEPHANIE drove Plaintiff to RGH against his will; RGH admits Plaintiff.

(2)   At 8:09am, STEPHANIE signs "Consent for Treatment" form at RGH.  Plaintiff never desired or consented to STEPHANIE to sign on Plaintiff's behalf to being admitted to RGH; Plaintiff was never given an opportunity to review any initial RGH paperwork upon arriving at RGH.  Below is STEPHANIE's signature at 8:09am on November 26, 2015.



(3)   Plaintiff denies any notations or descriptions in RGH_RECORDS associated with any suicidal thoughts or suicidal ideation.  Plaintiff never expressed any suicidal thoughts or suicidal ideations.

(4)   Plaintiff denies any notations or descriptions in RGH_RECORDS associated with any prior history of depression.

(5)   Plaintiff denies any notations or descriptions in RGH_RECORDS associated with any alcohol withdrawal.  Plaintiff never experienced alcohol withdrawal.

(6)   At 8:19am, RGH_RECORDS, pages 6 through 7 notes:

i.   "negative for fever, chills, and fatigue";

ii.   "eyes: negative for visual disturbance";

iii.    "respiratory: negative for shortness of breath";

iv.    "negative for behavioral problems, confusion and agitation";

v.    "constitutional: he is oriented to person, place, and time…no distress";

vi.    "cardiovascular:  regular rhythm…normal heart sounds";

vii.    "pulmonary:  no respiratory distress";

viii.    "neurological:  he is alert and oriented to person, place, and time";

ix.    "psychiatric:  his speech is normal and behavior is normal";

x.    blood pressure 201/137, pulse 122, respiration 20

(7)    At 8:32am, RGH_RECORDS notes Plaintiff blood collection.  Plaintiff does not recall RGH conducting blood collection procedure; results note blood alcohol concentration value of 0.083, just 0.003 above the "Per Se" limit; furthermore, results for the presence of any drugs was negative.  Plaintiff would not have consented to any medical procedure; Plaintiff was admitted to RGH against Plaintiff's will.

(8)    At 11:36am, RGH_RECORDS notes Plaintiff's blood pressure is 189/110, pulse 122, respiration 16.

(9)    At 1:20pm, RGH_RECORDS page 8 notes that Plaintiff "is clear from a psych stand point"; Plaintiff was cleared by RGH from a psychological stand point.

(10)    At 1:25pm, RGH_RECORDS pages 10 through 13 notes, just 5 minutes after Plaintiff was "clear from a psych stand point", Plaintiff supposedly underwent a psychiatric evaluation; Plaintiff does not recall any psychiatric evaluation based on an Alcohol Screening Audit tool; "STEPHANIE is present during assessment";

i.    Collateral Report.  Psychiatric history; no history of inpatient treatment; no history of outpatient treatment; no history of family mental illness; no history of self-harm or suicide attempts; no history of violence; no history of psychological trauma;

ii.     Blatantly inaccurate RGH_RECORDS notation, "Used chemicals (other than as prescribed) in the past 30 days? Yes"; Plaintiff is not an illicit drug or substance user;

iii.    RGH_RECORDS notes supposed Alcohol Screening Audit Tool (Plaintiff believes RGH is referring to CIWA) score of 28;

(11)    At 1:32pm, RGH_RECORDS page 8 notes that "pt (Plaintiff) is tachycardic and hypertensive"; RGH and STEPHANIE continue to coerce Plaintiff, keeping Plaintiff admitted against Plaintiff's will.

(12)    At 1:38pm, RGH_RECORDS page 14 notes that Plaintiff was "psych cleared.".

(13)    Around 2:00pm Plaintiff was induced by two Caucasian police officers (hereinafter "POLICE1" and "POLICE2") and Plaintiff was escorted by POLICE1 and POLICE2 to the Emergency Department via wheelchair;

i.      Plaintiff believes POLICE1 and POLICE2 to be members of the Monroe County Sheriff's Office;

ii.     RGH_RECORDS page 15 incorrectly notes only one "security officer"; Plaintiff was induced by POLICE1 and POLICE2;

(14)    At 2:14pm, RGH_RECORDS page 24 notes Plaintiff's blood pressure 211/105, pulse 127, respiration 21.

(15)    At 2:18pm, Plaintiff signed "Consent for Treatment" form under duress; signature is not Plaintiff's typical signature; print name is not Plaintiff's handwriting; see insert below;

(16)     At 2:18pm, Plaintiff signed "Financial Agreement" form under duress; signature is not Plaintiff's typical signature; print name is not Plaintiff's handwriting; see insert below;



(17)     At 2:40pm, RGH_RECORDS page 16 notes that Plaintiff "is repeatedly stating that he does not want all this done and is taking the monitor lead off repeatedly and the blood pressure cuff off." "He (Plaintiff) just flatly replies, I do not want this." "His (Plaintiff) wife (STEPHANIE) is with him (Plaintiff) trying to get him (Plaintiff) to cooperate". "Heart rate is tachycardic.  And blood pressure elevated." During this episode, Plaintiff urinated on himself on the examination table due to the emotional and psychological distress inflicted upon Plaintiff.

(18)     At 3:39pm, RGH_RECORDS at the bottom of page 20 regarding Plaintiff is entirely inaccurate; Plaintiff did not place "call light on", STEPHANIE did not tell "(RGH) Writer he (Plaintiff) need to use the bathroom", and RGH Writer did not explain that they were "going to take the remaining monitor wires off and...show him (Plaintiff) where the bathroom was".

(19)     At 5:05pm, STEPHANIE signs "Acknowledgement of Notification of Observation Services Status" form.   STEPHANIE signs her name as 'legal representative' to admit Plaintiff.  Plaintiff was denied to opportunity to deny anyone signing on Plaintiff's behalf; Plaintiff never consented to RGH admission; see insert below;

Date: _NW 26, 2015_     Time: _1705_

Patient Name: _James Yoo_   DOB: _1/4/67_
(Print name if not printed above on this document)

Signature: _Stephanie Yoo_
Patient or Legal Representative authorized to represent patient

Legal Representative: _Stephanie Yoo_
(Print name if Legal Representative signs form)

(20)     At 5:05pm, Plaintiff signs "Authorization for Access to Patient Information Through

a Health Information Exchange Organization" form under duress; signature is not Plaintiff's

typical signature and handwriting is not Plaintiff's handwriting; see insert below;

**My Consent Choice.** ONE box is checked to the left of my choice.
I can fill out this form now or in the future.
I can also change my decision at any time by completing a new form.

[X]     1. I GIVE CONSENT for above-named Provider Organization or Health Plan; or reference to a list of specific Provider Organizations and/or Plans to access ALL of my electronic health information through Rochester RHIO to provide health care services (including emergency care).

[ ]     2. I DENY CONSENT for above-named Provider Organization or Health Plan; or reference to a list of specific Provider Organizations and/or Plans to access my electronic health information through Rochester RHIO for any purpose, even in a medical emergency.

If I want to deny consent for all Provider Organizations and Health Plans participating in Rochester RHIO to access my electronic health information through Rochester RHIO, I may do so by visiting Rochester RHIO's website at www.RochesterRHIO.org or calling Rochester RHIO at 1-877-864-RHIO(7446).

My questions about this form have been answered and I have been provided a copy of this form.

| Signature of Patient or Patient's Legal Representative | Date _11/26/15_ |
|---|---|
| Print Name of Legal Representative (if applicable) _James Yoo_ | Relationship of Legal Representative to Patient (if applicable) _Self_ |

(21)     At 5:18pm, RGH_RECORDS page 22 notes that Plaintiff was "admitted to medical

unit for treatment and stabilization of acute medical issues associated with withdrawal";

"currently experiencing acute alcohol withdrawal and is refusing medical treatment"; "At

this time due to his medical problems he (Plaintiff) is deemed to lack capacity to make

medical decisions"; "He is not alert and oriented by 3 at this time and is showing signs of

confusion"; "It is the belief of this writer that pt (Plaintiff) is unable to comprehend

consequences of non-compliance with recommending medical treatment".

　　i.     Plaintiff has no history of any alcohol withdrawal;

     ii.    Earlier RGH_RECORDS notations in the day contradict assessment that "he (Plaintiff) is deemed to lack capacity to make medical decisions" since Plaintiff was cleared from a psychological stand point;

(22)    Plaintiff has no memory whatsoever of at least 14 hours going from RGH's Emergency Room examination to Plaintiff's private room as Plaintiff awoke on the morning of November 27th 2015.

(23)    Plaintiff believes that Plaintiff's body, without Plaintiff's consent and against Plaintiff's will, was injected with a sedative during Emergency Room examination.

84.    On November 27th 2015 at RGH:

(1)    At 12:08am, RGH_RECORDS page 24 notes Plaintiff's blood pressure 170/120, pulse 88, respiration 18;

(2)    At 12:18am, RGH_RECORDS page 23 notes Plaintiff "arrived to unit via bed";

(3)    At 7:45am, RGH_RECORDS page 23 notes that Plaintiff "repeatedly asks, "Why am I being held against my will?  Why can't I go home?";

(4)    Three African-American RGH staff members, one young adult male (hereinafter "MONITOR1") and two mature adult females (hereinafter "MONITOR2" and "MONITOR3") and collectively hereinafter "MONITORS", physically sat next to Plaintiff's bed, on rotational shifts, during Plaintiff's entire RGH in-patient room admission.

     i.    MONITORS physically and psychologically intimidated Plaintiff from using Plaintiff's in-room RGH phone and by blocking the room doorway.

     ii.    MONITOR1 attempted to forcefully push Plaintiff's nurse call button early one morning without Plaintiff's consent.

(5)    At 10:33am, RGH_RECORDS page 28 notes Plaintiff CIWA score of 8;

(6)    At 3:03pm, RGH_RECORDS page 29 claim that Plaintiff was "on the phone with wife" is completely inaccurate; Plaintiff's was denied attempts to use any form of telecommunications device.

(7)      At 3:49pm, RGH_RECORDS page 30 notes "Security called to assist patient back into room".  Plaintiff attempted to leave the room since RGH was holding Plaintiff against his will.  RGH then administered 2mg Ativan to Plaintiff.

85.     On November 28th 2015 at RGH:

(1)      At 5:00am, RGH_RECORDS page 31 notes:

  i.     Plaintiff's blood pressure 163/107, pulse 83, respiration 21

(2)      At 9:00am, RGH_RECORDS page 31 notes:

  i.     Plaintiff's blood pressure 162/108, pulse 94, respiration 20

(3)      At 11:00am, RGH_RECORDS page 31 notes:

  i.     Plaintiff's blood pressure 184/116, pulse 94, respiration 18

(4)      At 11:24am, RGH_RECORDS page 31 notes:

  i.     "Constitutional and Neurological: He is oriented to person, place, and time"

  ii.    "Cardiovascular:  Normal rate and regular rhythm"

(5)      Plaintiff asked STEPHANIE to retrieve Plaintiff's Wimbledon hat from the marital residence; Plaintiff wore his Wimbledon hat throughout the remaining of Plaintiff's RGH ordeal.

86.     On November 29th 2015 at RGH:

(1)      At 5:00am, RGH_RECORDS page 35 notes:

  i.     Plaintiff's blood pressure 190/110, pulse 88, respiration 18

(2)      At 7:00am, RGH_RECORDS page 35 notes:

  i.     Plaintiff's blood pressure 193/108, pulse 103, respiration 16

(3)      At 11:00am, RGH_RECORDS page 35 notes:

  i.     Plaintiff's blood pressure 160/88, pulse 88, respiration 18

(4)      At 11:24am, RGH_RECORDS page 35 notes:

  i.     "Constitutional and Neurological: He is oriented to person, place, and time"

  ii.    "Cardiovascular:  Normal rate and regular rhythm"

(5)     At 12:52pm, RGH_RECORDS page 38 notes CIWA score of 7.

(6)     At 7:47pm, RGH_RECORDS page 39 notes CIWA score of 1.

(7)     At 11:10pm, RGH_RECORDS page 40 notes:

i.     Plaintiff's blood pressure 189/114, pulse 90, respiration 18

87.    On November 30th 2015 at RGH:

(1)     At 3:00am, RGH_RECORDS page 40 notes:

i.     Plaintiff's blood pressure 170/129, pulse 92, respiration 18

(2)     At 5:32am, RGH_RECORDS page 40 notes:

i.     Plaintiff's blood pressure 160/92, pulse 90, respiration 18

(3)     At 8:29am, RGH_RECORDS notes that Plaintiff "denies suicidal ideations".  "He (Plaintiff) expresses frustration that he has not been allowed to use the telephone and is asking if there is a reason no one is letting him make phone calls.  His (Plaintiff) wife (STEPHANIE) who is at the bedside admits that she has not allowed him to have his cell phone."

(4)     RGH_RECORDS page 45 and 46 notes "Patient (Plaintiff) denied any prior history of mental health treatment or ED psychiatric evaluation.  He (Plaintiff) denied any history of using or abusing other substances";

i.     "Again, Patient's (Plaintiff's) collaterals (STEPHANIE and AILEEN) provided a congruent report of history";

ii.    Patient (Plaintiff) denied any history of current or previous psychiatric treatment; patient (Plaintiff) denied any history of suicide attempts or gestures; patient (Plaintiff) denied any history of violence; a congruent report was offered by his (Plaintiff's) collaterals (STEPHANIE and AILEEN);

(5)     Statement that Plaintiff has a history of withdrawal, seizures, or DTs are NOT accurate; Plaintiff does NOT have any history of withdrawal, seizures, or DTs;

(6)     Statement that Plaintiff mentioned family history of mental illness is NOT accurate; Plaintiff never made any related statements to RGH;

(7)     Statement that AILEEN confirmed a family history of mental illness is NOT accurate; Plaintiff does not recall AILEEN making any related statements to RGH;

(8)     Statement that Plaintiff confirmed one uncle's suicide attempt is NOT accurate; Plaintiff never made any related statements to RGH;

(9)     Statement that AILEEN confirmed one uncle's suicide attempt is NOT accurate; Plaintiff does not recall AILEEN making any related statements to RGH;

(10)    Statement that Plaintiff confirmed maternal and paternal alcohol abuse is NOT accurate; Plaintiff never made any related statements to RGH;

(11)    Statement that AILEEN confirmed maternal and paternal alcohol abuse is NOT accurate; Plaintiff does not recall AILEEN making any related statements to RGH;

(12)    Plaintiff was discharged from RGH on November 30th 2015 on or around 3:58pm, see below:

Progress Notes by Haley Miller, RN at 11/30/2015 3:58 PM

| Author: Haley Miller, RN | Service: (none) | Author Type: Registered Nurse |
| Filed: 11/30/2015 4:00 PM | Date of Service: 11/30/2015 3:58 PM | Status: Signed |
| Editor: Haley Miller, RN (Registered Nurse) | | |

IV access removed. Patient received discharge instructions along with wife and sister. Patient stated understanding. Patient ambulated off unit with family to private vehicle.

Haley Miller, RN

Haley Miller, RN on 11/30/2015  4:00 PM
Revision History

| Date/Time | User | Provider Type | Action |
| --- | --- | --- | --- |
| 11/30/2015 4:00 PM | Haley Miller, RN | Registered Nurse | Sign |

Attribution information within the note text is not available.

Generated on 8/15/2016 12:12 PM                                                          Page 57

88.   STEPHANIE and AILEEN denied Plaintiff use of RGH's in-patient room phone several times by forcefully removing RGH in-patient room phone from Plaintiff's hands.

89.    During Plaintiff's 5-day RGH ordeal, AILEEN constantly used her iPhone to excessively send text messages from Plaintiff's private hospital room.  Plaintiff believes AILEEN was taking notes of my experience in 'real-time' for her BOOK, instead of being Plaintiff's advocate.

(1)    Plaintiff was in 10th grade when BFF_IMSORRY ran away from her parents. AILEEN hid BFF_IMSORRY in PARENTS Mclean home.  Nobody knew BFF_IMSORRY's whereabouts except for AILEEN.   BFF_IMSORRY_FATHER and BFF_IMSORRY's mother    (hereinafter    BFF_IMSORRY_MOTHER)    (hereinafter    collectively BFF_IMSORRY_PARENTS) were frantically looking for BFF_IMSORRY and were extremely upset.  PARENTS were contacted by BFF_IMSORRY_PARENTS regarding BFF_IMSORRY's whereabout.   Given AILEEN's and BFF_IMSORRY's closeness, BFF_IMSORRY_PARENTS pressured PARENTS to get AILEEN to divulge BFF_IMSORRY's whereabouts.  MOTHER, furious, began to hit AILEEN and demanded that AILEEN divulge BFF_IMSORRY's whereabouts; AILEEN did not tell.  Plaintiff intervened MOTHER's physical rage at AILEEN; Plaintiff literally took the hits on behalf of AILEEN; Plaintiff took the physical beating that should have been directed to AILEEN. Afterwards, Plaintiff was able to convince AILEEN to tell Plaintiff regarding BFF_IMSORRY's whereabouts; BFF_IMSORRY was hiding in the attic in the McLean house.  BFF_IMSORRY came out from hiding and BFF_IMSORRY_PARENTS were contacted and arrived at the house to pick up BFF_IMSORRY.  Outside the house at BFF_IMSORRY_FATHER's Mercedes Benz, BFF_IMSORRY_FATHER came over to Plaintiff and handed Plaintiff a wad of money thanking Plaintiff for brokering peace and finding BFF_IMSORRY.  BFF_IMSORRY_FATHER emphatically told Plaintiff "you always have a friend".  Plaintiff gave the wad of cash back to BFF_IMSORRY_FATHER saying that Plaintiff didn't do it for the money, although Plaintiff's family could have certainly benefited from the money.

### i. PLAINTIFF WAS AILEEN'S (AND BFF_IMSORRY_PARENTS) ADVOCATE.

(2)      AILEEN in her late teens / early 20's dated a man about 15 or 20 years older than her.  MOTHER did not like the dating situation especially given the age difference.  Plaintiff brokered peace between MOTHER and AILEEN.

### i.  PLAINTIFF WAS AILEEN'S ADVOCATE.

(3)      Considering how poor Plaintiff's family was in California, Plaintiff was given one dollar a day to purchase school lunch (8th and 9th grade) constituting most of Plaintiff's daily eating 'allowance'.  Plaintiff saved his school lunch money (ie. Plaintiff went hungry) so that Plaintiff could take AILEEN out for pizza and play video games.

### i.  PLAINTIFF WAS AILEEN'S ADVOCATE.

(4)      AILEEN developed a medical condition in the mid-1990's whereby Plaintiff received a call while at work notifying Plaintiff of AILEEN's hospitalization.  Plaintiff spent the next several days at AILEEN's bedside around the clock to ensure AILEEN received the best medical care since AILEEN's condition required surgery.  In the middle of the night, a nurse approached Plaintiff and stated that Plaintiff needed to transfer AILEEN to a different hospital since the nurse did not trust AILEEN's surgeon.  Plaintiff worked throughout the night to transfer AILEEN to another hospital and never left her bedside.  At the new hospital, AILEEN's surgery was successful.

### i.  PLAINTIFF WAS AILEEN'S ADVOCATE.

(5)      Plaintiff signed MOTHER's Do Not Resuscitate (DNR) order; Plaintiff asked the ICU staff to not ask AILEEN knowing how traumatic this would be; Plaintiff took the bullet for AILEEN.

### i.  PLAINTIFF WAS AILEEN'S ADVOCATE.

90.    Plaintiff attempted to call an attorney in Rochester, NY, Cellino & Barnes (hereinafter "ATTORNEY_CB") on at least two occasions during Plaintiff's RGH admission and briefly stated Plaintiff's name and nature of call as STEPHANIE and AILEEN forcefully removed RGH's in-patient room phone from Plaintiff's hand.

91.    RGH_RECORDS omit notations that STEPHANIE and AILEEN denied Plaintiff use of

Plaintiff's cell phone and RGH's patient-room phone.

92.    RGH_RECORDS omit any descriptions that AILEEN denied Plaintiff use of Plaintiff's cell

phone and RGH's patient-room phone.  AILEEN confessed and admitted to Plaintiff in an email

exchange on November 27th and November 28th 2016 in email thread titled "Happy Turkey Day"

seen below:

| From: | Aileen Yoo |
|---|---|
| To: | James W. Yoo |
| Subject: | Re: Happy Turkey Day |
| Date: | Monday, November 28, 2016 10:18:35 AM |

Yes ...can u talk this weekend?

Sent from my iPhone

On Nov 27, 2016, at 10:07 AM, James W. Yoo <jamesyoo@rochester.rr.com> wrote:

> Will you tell me over the phone why you kept denying me access
> to any communications devices while I was hospitalized last year
> at RGH and subsequently kept denying me access days after
> being released from RGH?

> From: Aileen Yoo [mailto:█████████████]
> Sent: Sunday, November 27, 2016 12:34 PM
> To: James W. Yoo
> Subject: Re: Happy Turkey Day

> I'll tell u over the phone. When do u want to talk?

> Sent from my iPhone

> On Nov 27, 2016, at 9:28 AM, James W. Yoo <jamesyoo@rochester.rr.com>
> wrote:

>> Aileen

>> Why did you keep denying me access to any
>> communications devices while I was hospitalized last
>> year at RGH and subsequently days after being
>> released?  And why has Rocky not returned my calls or
>> emails?  When was the last time you spoke with Laila?
>> I'd like to understand why she has not returned my
>> calls or emails as well.

>> Jim

>> From: Aileen Yoo [mailto:█████████████]
>> Sent: Sunday, November 27, 2016 11:30 AM
>> To: James W. Yoo
>> Subject: Re: Happy Turkey Day

>> Hey Jim .

yes I was thinking of you and Steph yesterday and was remembering that time. I can imagine its bringing up painful memories. Try to call your therapist --she can help you guide those memories and sort through them. I'm happy to do that with you, too.

About your questions. I think with something like this we need to talk on the phone to make sure things don't get lost in translation. Give some times and days that work best for you.

Luv,
Me

On Nov 27, 2016, at 6:22 AM, James W. Yoo
<jamesyoo@rochester.rr.com> wrote:

> Aileen,
>
> Thanks for your call wishing us a happy Thanksgiving; we called and left a voicemail as well, not sure if you got it.
>
> Anyway, considering this is the time of year which now marks the anniversary of my hospitalization, it's not an easy time for me. I am still having a difficult time understanding many things. Why did you keep denying me access to any communications devices while I was hospitalized last year at RGH and subsequently days after being released? You even physically blocked me from seeing my neighbors which led to Steph calling the police which led to another trip to RGH, remember?
>
> I also tried to call Laila and Rocky several times. Do you know why they have not returned my calls or emails? That's not like them.
>
> Your brother,
>
> Jim

93.    Admission to RGH due to alcohol withdrawal is the only justification stated throughout Plaintiff's RGH_RECORDS for RGH admitting and holding Plaintiff for five days against Plaintiff's will.

94.     RGH_RECORDS page 17 notes that "most of the history (history of Plaintiff's present illness) was obtained from his (Plaintiff's) wife (STEPHANIE) and from the records.

95.     RGH_RECORDS notes the following dosages of Lorazepam (also known as Ativan) administered to Plaintiff:

(1)     November 27th, 2015 page 25 RGH_RECORDS:  21 mg

(2)     November 28th 2015 pages 31 and 32 RGH_RECORDS:  21 mg

(3)     November 29th 2015 page 36 RGH_RECORDS:  21 mg

(4)     November 30th 2015 pages 42 and 43 RGH_RECORDS:  21 mg

96.     RGH_RECORDS notes "Patient Belongings, 1 bag of contraband", an outright lie by RGH; Plaintiff is not an illicit substance abuser; Plaintiff did not and does not possess any contraband whatsoever.

97.     Staff members of RGH never updated the date or time on the white board in Plaintiff's hospital room until the evening of November 29th 2015 and November 30th 2015.

98.     Plaintiff was never cleaned or bathed during Plaintiff's RGH admission from November 26th through November 30th 2015.

99.     Plaintiff believes that RGH's 4800 Unit is an unofficial hospital section operating in an unconstitutional manner intended to inflict, test, and gauge psychological behaviors.

(1)     The sounds of an elderly woman yelling in constant pain could be heard next to Plaintiff's room.  Her yelling only seemed to occur in the evening as a way to inflict a form of sleep deprivation upon Plaintiff.

(2)     Plaintiff was forced to wear red colored socks throughout Plaintiff's admission.

100.    Upon Plaintiff discharge from RGH late afternoon on November 30th 2015, J_CAMPANA and P_FRASCA picked-up Plaintiff, STEPHANIE, and AILEEN from RGH;

(1)     Plaintiff was driven to the Wegman's Penfield, NY store to check the status of Plaintiff's Norvasc prescription;

(2)     Plaintiff did not desire to enter the Wegman's Penfield, NY store and asked to remain inside J_CAMPANA's Honda Ridgeline truck; J_CAMPANA, P_FRASCA, STEPHANIE and AILEEN induced Plaintiff to enter the Wegman's Penfield, NY store;

101.   RGH prescribed Norvasc to treat Plaintiff's high blood pressure; the prescription was called and expected to be ready by late afternoon December 1st, 2015.

102.   STEPHANIE and AILEEN denied Plaintiff communications access and physically blocked Plaintiff from entering Plaintiff's home office December 1st 2015 and December 2nd 2015 as Plaintiff attempted to contact ATTORNEY_CB again.

103.   On the afternoon of December 1st, 2015 Plaintiff attempted to visit neighbors in order to use neighbor's phone since Plaintiff desired to contact an attorney:

(1)     AILEEN physically blocked Plaintiff's attempts to knock on neighbor's doors;

(2)     STEPHANIE called 911.

(3)     Two New York State Troopers (hereinafter "TROOPER1" and "TROOPER2") and two emergency medical technicians (hereinafter EMT1 and EMT2) from Walworth Ambulance, Inc. (hereinafter "AMBULANCE") arrived at Plaintiff's home residence.

(4)     Plaintiff explained the situation to TROOPER1, TROOPER2, EMT1, and EMT2 regarding being denied communications access by STEPHANE and AILEEN in order to contact an attorney.

(5)     TROOPER1, TROOPER2, EMT1, EMT2, STEPHANIE, and AILEEN (hereinafter "GANGOF6") induced Plaintiff into a stressful state and induced Plaintiff, against Plaintiff's will, to have Plaintiff's blood pressure read.

(6)     TROOPER1 pointed a device at Plaintiff from TROOPER1's belt holster; Plaintiff was intimidated by TROOPER1's purposeful device pointing.

(7)     After taking a manual blood pressure reading, EMT1 claimed Plaintiff's blood pressure was dangerously high.

(8)     GANGOF6 induced Plaintiff to return to hospital; Plaintiff demanded that Plaintiff

be transported to Newark-Wayne Community Hospital due to Plaintiff's previous ordeal

with RGH; EMT1 and EMT2 were adamant to transport Plaintiff to RGH claiming that RGH

is closer than Newark-Wayne, an inaccurate claim.

(9)     Plaintiff was transported to RGH Emergency by AMBULANCE and admitted on or

around 2:49pm.  Plaintiff signed "Consent for Treatment form" under duress; signature

below is not Plaintiff's typical signature.



(10)    RGH_RECORDS for December 1st 2015 page 2 notes Plaintiff's vital signs; blood

pressure 178/101, pulse 100, respiration 18.

(11)    RGH doctor (hereinafter "DOCTOR_K") attending to Plaintiff took aside

STEPHANIE and AILEEN to another room to understand the reason for bringing Plaintiff.

DOCTOR_K then approached Plaintiff alone to hear Plaintiff's view.

(12)    RGH_RECORDS notes "BP meds has not been filled. Family felt patient was

acting strange and called EMS. And police. Coming in for evaluation of hypertension, BP

on scene was 200 systolic. Pt (Plaintiff) denies suicidal ideation. Was reluctant to come in

to be seen".

104.    STEPHANIE and AILEEN denied Plaintiff access to any communications devices and to

deny Plaintiff access to Plaintiff's home office on December 1st 2015 and December 2nd 2015.

105.    Plaintiff's first call record noted is on Plaintiff's Verizon Wireless cell phone for a call placed

on December 3rd 2015 at 12:21pm to 302-273-9304 in Newark, Delaware; Plaintiff does not

recognize the aforementioned phone number and does not recall conducting a call to aforementioned phone number.

106.    A few days after the psychological and emotional distress of being hospitalized and held against Plaintiff's will at RGH while being denied communications access, Plaintiff verbally agreed to settle the legal matter with TENANT_CA and TENANT_ER on a call with STEPHANIE and ATTORNEY_S even though STEPHANIE was aware of Plaintiff's desire to keep fighting.

> (1)    STEPHANIE convinced Plaintiff to settle the legal matter with TENANT_CA and TENANT_ER.

> (2)    STEPHANIE took advantage of Plaintiff's extremely fragile emotional and psychological state to settle the legal matter whereby TENANT_CA and TENANT_ER threatened and accused Plaintiff of somehow causing TENANT_ER's unsubstantiated claim of miscarriage and hospitalization; a claim that ATTORNEY_S did not vet contrary to Plaintiff's insistence.

107.    Plaintiff began making a good faith effort to seek and obtain mental health counseling in December 2015.

> (1)    Plaintiff, with STEPHANIE and AILEEN, initially attended an RGH scheduled mental health appointment with Strong Memorial Hospital (hereinafter "STRONG").

>> i.    Plaintiff believes that the mental health appointment with Nicole Allen of STRONG was not a bona fide attempt by STRONG to provide Plaintiff's request for mental health treatment.

>> ii.    As Plaintiff sat in the waiting area for around 20 minutes, Plaintiff noticed a variety of people interacting strangely with Plaintiff; one man had very bad body odor, one woman wore too much perfume, one man was obnoxiously loud, one man kept sitting too close to Plaintiff, and one woman was dressed provocatively.

      iii.    Plaintiff believes STRONG was surveilling Plaintiff; Plaintiff believes STRONG was not attempting to provide bona fide mental health services.

(2)    On or around mid-December 2015, STEPHANIE's brother, Timothy Scroger (hereinafter "T_SCROGER"), visited Plaintiff's PRIMARY_RESIDENCE.

      i.    Stephanie and T_SCROGER induced Plaintiff to seek mental health counseling only from a specific list of professionals.

      ii.    As a result of STEPHANIE and T_SCROGER inducing Plaintiff, Plaintiff received initial counseling from Unity Behavioral on or around January 2016.

(3)    On or around January 2016, Plaintiff further sought initial mental health consultation from three additional professionals.   Plaintiff began regular mental health therapy sessions with Dr. W (hereinafter "DR_W") on or around January 2016 for a few months.

      i.    Plaintiff became very uncomfortable with DR_W discussing politics considering DR_W inferred that DR_W definitively knew the outcome of the upcoming United States presidential election.

(4)    On or around March 2016, Plaintiff sought mental health consultation from another professional; Plaintiff began regular mental health therapy sessions with Dr. R (hereinafter "DR_R").

108.    On or around late December 2015, Plaintiff purchased the Arlo wireless security camera system (hereinafter "ARLO1") considering Plaintiff's damaged emotional and psychological state.

(1)    STEPHANIE was aware of the purchase and did not voice concerns regarding Plaintiff's purchase of ARLO1.

(2)    ARLO1 consisted of 4 wireless security cameras which were stationed primarily at the outside front door, outside garage door, inside garage, and Plaintiff's home office.

(3)    See below, STEPHANIE searching through Plaintiff's office trash bin (notice, in the 3rd frame, the stack of boxes on the floor at the left corner of the slide door closet):







109.     On or around January 2016, Plaintiff made a bona fide attempt to receive medical care; Plaintiff received care from primary care physician.

110.     On or around January 2016, STEPHANIE's brother, Chris Scroger (hereinafter "C_SCROGER") sent Plaintiff, through a floral delivery service, a cactus plant with the note "Be all you can be".

111.     On or around late January 2016, Plaintiff notified STEPHANIE that Plaintiff was visiting attorneys; Plaintiff visited, unannounced, two attorneys in Rochester New York.

    (1)     Plaintiff visited, unannounced, Cellino & Barnes attorneys; Cellino & Barnes did not seem interested in my case.

    (2)     Plaintiff visited, unannounced, Faraci Lange attorneys; Plaintiff was unable to proceed past Faraci Lange's intake coordinator since they did not seem interested in my case.

    (3)     Both Cellino & Barnes and Faraci Lange are highly advertised law firms for personal injury in the Greater Rochester New York area.

112.     On or around late January 2016, STEPHANIE induced Plaintiff to participate in pickleball at the Eastside YMCA in Penfield New York (hereinafter "EY").

    (1)     Plaintiff met Jeff Lathrop, supposedly the EY Membership and Sales Director;

    (2)     Plaintiff and STEPHANIE played in the EY winter pickleball league;

    (3)     A well-known pickleball player, Joann Evans (hereinafter "J_EVANS"), played in the same EY winter pickleball league as Plaintiff and STEPHANIE.

    (4)     A well-known pickleball player, Rob Cassidy (hereinafter "R_CASSIDY"), played in the same EY facility as Plaintiff and Stephanie.

113.     On February 23rd 2016, the legal matter with TENANT_CA and TENANT_ER was settled.

114.     On February 24th 2016, Plaintiff received the following liver ultrasound result confirming the February 15th 2016 ultrasound of Plaintiff's liver **shows a normal liver**. Plaintiff shared result with STEPHANIE.



M.D., P.C.

February 24, 2016

James Yoo
711 Rookery Way
Macedon, NY 14502

Date of Birth : 01/04/67

Dear Mr. Yoo:

Your Ultrasound was completed on 02/15/2016 shows a normal lliver.

IF YOU HAVE ANY QUESTIONS, PLEASE CALL OUR OFFICE AT

Sincerely,

RPA-C

Electronically signed by                    PA on 02/24/2016 at 4:41 pm

115.   On February 29th 2016, Plaintiff received the following blood lab result:



(1)   Plaintiff's CONDITION lab result was 12,916; in a range from 20 to 170 million.

Plaintiff shared result with STEPHANIE.

116.    On or around March 8th 2016, the retainer and agreement with ATTORNEY_S was closed.

**117.    On March 30th 2016, Brian Stretch was appointed US Attorney for the Northern District of California; the Federal District Court system where AILEEN and AILEEN's best friend (hereinafter "BFF_IMSORRY") reside.**

118.    AILEEN explicitly asked Plaintiff for money around March 2016 or April 2016 through a series of text messages to Plaintiff's mobile phone.

119.    On or around April 2016, STEPHANIE's employer, VERIZON, sent STEPHANIE to New York City regarding VERIZON's union labor strike (hereinafter "THESTRIKE"); STEPHANIE supposedly stayed at a few hotels during THESTRIKE;

       (1)    On April 22nd 2016, Plaintiff travelled to New York City to visit STEPHANIE staying in the Grand Hyatt Hotel until April 2th 2016;

       (2)    STEPHANIE encouraged Plaintiff to go sightseeing;

       (3)    Plaintiff did not go sightseeing; Plaintiff packed STEPHANIE's dirty clothes into a suitcase and bag and hauled STEPHANIE's dirty clothes to a coin-operated laundry facility to wash; Plaintiff cleaned and laundered STEPHANIE's clothes.

120.    Through the Spring and early Summer of 2016, Plaintiff played pickleball with Joann Evans (hereinafter "J_EVANS") several times; Plaintiff played pickleball with Rob Cassidy (hereinafter "R_CASSIDY") a few times through the Spring and early Summer of 2016.

121.    On or around early Summer 2016, Plaintiff experienced a subtle form of sexual harassment from Tom Pagano, a member of Rochester YMCA (hereinafter "T_PAGANO"). Plaintiff and T_PAGANO were in the Webster Recreation Center men's locker room after playing pickleball; T_PAGANO stood bare naked in front of Plaintiff even though Plaintiff attempted to avoid T_PAGANO's naked presence; Plaintiff conveyed his experience immediately to STEPHANIE.

122.    Plaintiff noticed many pickleball players suddenly texting on their mobile devices whenever Plaintiff arrived at a facility to play pickleball.

123. Around late Spring or early Summer of 2016, Plaintiff slowly began to recognize J_EVANS as potentially someone from Plaintiff's RGH ordeal.

**124.  On June 16th 2016, Donald J. Trump announces that he is running for President[2].**

125. On August 1st 2016, Plaintiff called STEPHANIE and tells STEPHANIE that Plaintiff is in the process of requesting Plaintiff's RGH_RECORDS.

126. On August 2nd 2016, STEPHANIE sends Plaintiff email titled "Mom news" as seen below:



127.   On August 4th 2016, Plaintiff and STEPHANIE received an email from tenant in Arlington, Virginia (hereinafter "TENANT_CW") stating that a neighbor near the Arlington, Virginia rental property wrote and left a threatening note to TENANT_CW.

128.   After Plaintiff spoke with STEPHANIE about TENANT_CW's allegation regarding incident with neighbor, STEPHANIE sends Plaintiff email inducing Plaintiff to send a response on behalf of STEPHANIE and Plaintiff as noted below:

| | |
|---|---|
| **From:** | Stephanie |
| **To:** | James Rr Email |
| **Subject:** | Draft... Something like this? |
| **Date:** | Thursday, August 04, 2016 11:23:33 PM |

Chris,

We are sorry to hear about the situation you described with the neighbor. You should contact local authorities as you feel appropriate.

As you indicated you will be staying at a friend's house...Please confirm you will be able to keep the appointment with the realtor on Saturday.

Best regards,
James and Stephanie

*Sent from my Verizon Wireless 4G LTE Droid*

129.   On or around late August 2016, Plaintiff received RGH_RECORDS through US Postal Service;

(1)   Upon reviewing RGH_RECORDS received on or about late August 2015, Plaintiff went into a state of shock, outrage, and suffered emotional distress due to the numerous blatant lies, omissions, and unvetted statements on Plaintiff's RGH_RECORDS as described in this Complaint;

(2)   Plaintiff noticed several names on Plaintiff's RGH_RECORDS which shocked Plaintiff:

i.   Joann Evans, RGH Triage Nurse; Plaintiff believes Joann Evans on RGH_RECORDS is the same person as J_EVANS;

ii. Ashley Cassidy, RGH Scribe; Plaintiff believes Ashley Cassidy on RGH_RECORDS is related to Rob Cassidy (hereinafter "R_CASSIDY"); Plaintiff sent an email to R_CASSIDY on September 1st, 2016 asking if he is related to Ashley Cassidy, see below:

| | |
|---|---|
| From: | James W. Yoo |
| To: | |
| Cc: | "Jeff Lathrop"; "James W. Yoo" |
| Subject: | Hello Rob Cassidy! Mr. Ninja Pickleball |
| Date: | Thursday, September 01, 2016 10:43:10 AM |

Hi Rob,

I happened to notice a name recently, Ashley Cassidy, who may still be working at RGH. Are you related to her in any way?

Hope your summer is going well.

James.

iii. Plaintiff never received any response from R_CASSIDY.

(3)    Plaintiff, in his state of shock, emailed electronic copies of Plaintiff's RGH_RECORDS to STEPHANIE, AILEEN, and Plaintiff's neighbors John Campana (hereinafter "J_CAMPANA") and Patricia Frasca (hereinafter "P_FRASCA");

130.    Plaintiff has not included Plaintiff's RGH_RECORDS at the time of this filing and without prejudice; Plaintiff attests that descriptions regarding RGH_RECORDS are accurate to the best of Plaintiff's ability; Plaintiff will submit RGH_RECORDS to the Court should the Court Order Plaintiff to do so.

131.    On August 14th 2016, Plaintiff received text messages, from a woman supposedly a member of the Rochester YMCA, whom Plaintiff was introduced to as Chris (Christina) Gill (hereinafter "YMCA_C_GILL"), whereby text messages from YMCA_C_GILL (585-683-8858) stated "I'm babysitting for Tucker", whereby the text message from YMCA_C_GILL stated on September 15th 2016 "Might bring Tucker because I am babysitting my grand dog". Plaintiff became suspicious and emotionally distressed since the 'name' structures were similar to Plaintiff's ordeal with TENANT_C and TENANT_E's threats to Plaintiff and unsubstantiated claims

of miscarriage and subsequent hospitalization; TENANT_C and TENANT_E owned a dog named 'Tucker'; 'Gill' was the name of contractor in Virginia who Plaintiff suspects may have trespassed on VIRGINIA_RESIDENCES and attempted to wrongfully disparage Plaintiff.

132.    Plaintiff ceased leaving the bounds of Plaintiff's residence shortly after reviewing Plaintiff's RGH_RECORDS in late August 2016.

133.    From late August 2016, Plaintiff observed unusual behavior from neighbors and others:

(1)    Plaintiff noticed former neighbor S_AMORSO using his commercial grade mower and mowing a neighbor's backyard, next door to J_CAMPANA and P_FRASCA's backyard;

(2)    Plaintiff noticed a substantial reduction of pedestrian traffic along Rookery Way;

(3)    Plaintiff noticed an unusually high number of golfers stopping on the golf fairway across Plaintiff's PRIMARY_RESIDENCE and in view from Plaintiff's PRIMARY_RESIDENCE;

(4)    Plaintiff noticed neighbors opening garage doors shortly before Plaintiff retrieved mail or conducted yardwork;

134.    Considering Plaintiff did not have a Will, Plaintiff sent an email to AILEEN and STEPHANIE on August 30th 2016 at 11:17pm titled "My Last Will", seen below:

| From: | James Yoo |
| --- | --- |
| To: | 03_Aileen; 01_Stephanie; Stephanie Yoo; james yoo |
| Subject: | My Last Will |
| Date: | Tuesday, August 30, 2016 11:17:08 PM |

To Aileen S. Yoo (my sister) and Stephanie A. Yoo (my wife):

This is My Last Will.

If I (James W. Yoo) die before a final settlement and distribution of money or funds amongst myself (James W. Yoo), my wife (Stephanie A. Yoo), and my sister (Aileen S. Yoo) from the sale of all real estate assets or real property owned solely or jointly by myself (James W. Yoo) in the State of Virginia, then I (James W. Yoo) bequeath my entire worldly possessions to my sister Aileen S. Yoo. If my sister (Aileen S. Yoo) is deceased and unable to possess all of my worldly possessions, then I (James W. Yoo) bequeath my entire worldly possessions to Greg Shinn, Son of my Mother's (Anna Shinn Yoo) brother (Sang Shinn).

The Executor to My Last Will shall be Rocky Arroyo, Father to Aileen S. Yoo's daughter Mathilda. If Rocky Arroyo is unable or unwilling to perform his duties as Executor of My Last Will, then Greg Shinn, Son of my Mother's (Anna S. Yoo) brother (Sang Shinn) shall be the Executor to My Last Will. Whomever performs the duty of Executor to My Last Will shall be compensated 2% gross net worth from my entire worldly possessions.

Only I shall have the authority to partially amend or fully nullify My Last Will utilizing a bona fide Notarized letter with my signature stating such intentions and amending or nulliying My Last Will accordingly.

Aileen, no need to respond to this email or contact me for now. I'm sure we'll connect and talk when I'm ready.

Steph, we can talk whenever as always.

I love you both very, very much.

James W. Yoo (Social Security Number ▮▮▮▮▮▮ )

Notice of Confidentiality: This email, and any attachments, is intended only for use by the addressee(s) and may contain privileged or confidential information. Any distribution, reading, copying or use of this communication and any attachments by anyone other than the addressee, is strictly prohibited and may be unlawful. If you received this email in error, please immediately notify me by email (by replying to this message), and permanently destroy or delete the original and any copies or printouts . Please be aware that emails and any attachments can be relatively easily accessed by unauthorized people and hence can compromise the privacy and confidentiality of such communications.

135.   Earlier on August 30th 2016, STEPHANIE induced and convinced Plaintiff to sell the real

estate properties in Virginia; at 1:27pm on August 30th 2016 Plaintiff sent an email to AILEEN

copying STEPHANIE titled "Quick Hello from Jimbo", email thread seen below:

| | |
|---|---|
| **From:** | Aileen Yoo |
| **To:** | James W. Yoo |
| **Subject:** | Re: Quick Hello from Jimbo |
| **Date:** | Wednesday, August 31, 2016 3:37:44 PM |

I will take funds only if you want to give them to me. In other words don't do it out of obligation or if there's going to be tension over it.

Does that make sense?
A

Sent from my iPhone

On Aug 31, 2016, at 12:16 PM, James W. Yoo <jamesyoo@rochester.rr.com> wrote:

> Aileen,
>
> Just to clarify, when the properties in Virginia are finally sold, do you want (assuming the three of us can agree) any of the funds from sale?
>
> Love you.
>
> Jimbo
>
> **From:** Aileen Yoo [mailto:▮▮▮▮▮▮▮▮▮▮ ]
> **Sent:** Wednesday, August 31, 2016 1:17 PM
> **To:** James W. Yoo
> **Cc:** stephanie yoo
> **Subject:** Re: Quick Hello from Jimbo
>
> Jim forgot to answer this. -I know u said I didn't need to but I should. You were the one who put in all the work with the houses and put up with a lot of grief. My concern is that there might be resentment, considering all that you've done with the bodies. So If there's even the slightest chance of bad feelings then no need to give me anything. You and Steph should keep the money. However, I Appreciate the gesture. I think money tends to rip families apart--I shouldn't have asked in the first place. That was a very very dumb move on my part.
>
> I'd rather have nothing than risk bad blood, which is something I can't handle especially with all the things going on here.
>
> And glad you're sticking with therapy. Yes it's a very long, hard process. Hang in there. Good luck with everything.
> A
>
> Sent from my iPhone

On Aug 30, 2016, at 1:27 PM, James W. Yoo <jamesyoo@rochester.rr.com> wrote:

> Hi Aileen,
>
> Long time.
>
> I just wanted to let you know that Steph and I talked on and off over the years about finding an equitable way to distribute money among the three of us when the rental properties in Virginia are ultimately sold. We even discussed the topic as recently as last week in her bedroom office (before she went to see her sister in Boston) and discussed the topic when you were here late last year (Steph actually brought up the subject at the Sunoco gas station in Pittsford while you were in Barnes & Noble).
>
> I know you and I had disagreements recently; that was not a reflection of our overall sentiment.
>
> No need to respond to this email or contact me for now.
>
> I'm sure we'll connect and talk when I'm ready; therapy has been a long and slow process.
>
> Your brother,
>
> Jimbo

136.    On September 2ⁿᵈ 2016, Plaintiff sends email to STEPHANIE and AILEEN titled "My Dad

Ki Hong Yoo, w Ted Kennedy & Kim Dae Jung" with the following picture attached to the email

below:

| From: | James W. Yoo |
| To: | Stephanie Yoo; 01 Stephanie |
| Cc: | james yoo |
| Subject: | My Dad, Ki Hong Yoo, w Ted Kennedy & Kim Dae Jung |
| Date: | Friday, September 02, 2016 11:53:25 AM |
| Attachments: | 20160902_114525.jpg |

With great pride

James



(1)    On September 8th 2016, AILEEN responds to email thread, see below:

| From: | Aileen Yoo |
|---|---|
| To: | James W. Yoo |
| Subject: | Re: My Dad, Ki Hong Yoo, w Ted Kennedy & Kim Dae Jung |
| Date: | Thursday, September 08, 2016 10:26:32 PM |

Thanks Jim. Can u please give me
An update on how you're doing?

Sent from my iPhone

On Sep 8, 2016, at 6:59 AM, James W. Yoo <jamesyoo@rochester.rr.com> wrote:

    Aileen,

    Remember years ago when you asked me to send you an email with attachment of
    this photo since you were trying to contact Kim?

    Your brother,

    Jimbo

137.    On September 13th 2016, AILEEN sends Plaintiff an email titled "Btw", seen below:

| From: | Aileen Yoo |
|---|---|
| To: | James W. Yoo James W. Yoo |
| Subject: | Btw.. |
| Date: | Tuesday, September 13, 2016 12:22:02 AM |

Mathilda made something for you. The Words she wrote are hers but hard to read. Let me know if u need help
making sense of it
A



Mathilda is AILEEN's only daughter, born on September 23rd 2010. "Mathilda made something for you". Samchun (or as Mathilda supposedly spelled 'Sumchin') means uncle in Korean. Plaintiff interpreted 'Felen' as 'Felon' given the timing of the note near MOTHER's death anniversary and the insinuation since AILEEN was aware of Plaintiff being threatened by TENANT_CA regarding TENANT_ER's supposed miscarriage and hospitalization.

138.    On or around September 2016, STEPHANIE paid for legal consultation with a Rochester New York based law firm, Gallo & Iacovangelo.

139.    On or around mid-September 2016, STEPHANIE called Penfield Psychiatry and scheduled an appointment without Plaintiff's prior knowledge or prior consent.

140.    On September 29th 2016, just one day after Plaintiff's MOTHER's passing anniversary, STEPHANIE sends Plaintiff email titled "Just heard my mom is out of surgery", see below:

| From: | Stephanie |
|---|---|
| To: | James Rr Email |
| Subject: | Just heard my mom is out of surgery |
| Date: | Thursday, September 29, 2016 1:25:42 PM |

She Did well.. Will be in ICU as they monitor recovery. Just thought you'd want to know

*Sent from my Verizon Wireless 4G LTE Droid*

141.    On October 1st 2016, STEPHANIE's father Bruce Scroger (hereinafter "B_SCROGER") replied to Plaintiff's email, see below:

| From: | ▮▮▮▮▮ |
| To: | James W. Yoo |
| Cc: | 01 Stephanie; Stephanie Yoo |
| Subject: | Re: Fwd: Re: Just heard my mom is out of surgery |
| Date: | Saturday, October 01, 2016 7:22:49 AM |

James-

Really nice offer...

But... Cooper Hospital- ICU told me this AM that they do not allow flowers...maybe you'd like to do something when she gets home?? We are hoping she will get out in 1-2 days if her progress continues. Let me know your thoughts...

Again, thanks for thinking of Maggie...that would be a great gesture on your part!

Regards,

Bruce Scroger

▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮

----- Original Message -----

From: James W. Yoo <jamesyoo@rochester.rr.com>

To: Bruce Scroger ▮▮▮▮▮▮▮▮>, 01 Stephanie ▮▮▮▮▮▮▮▮>,

Stephanie Yoo ▮▮▮▮▮▮▮▮

Cc: james yoo <jamesyoo@rochester.rr.com>

Sent: Sat, 01 Oct 2016 01:03:15 -0000 (UTC)

Subject: Re: Fwd: Re: Just heard my mom is out of surgery

I would like to send flowers to Maggie. Will either of you provide Maggie's hospital information so I can send flowers to her hospital room?

Thanks.

James

142.     On October 7th and October 8th 2016, Plaintiff exchanged email with Plaintiff's uncle S_SHINN whose last known residence is in Northern Virginia. Plaintiff recalled S_SHINN calling Plaintiff in July 2015 notifying Plaintiff of MOTHER's younger sister supposedly passing away from a brain aneurysm on July 11, 2015 (7/11 … Plaintiff's PRIMARY_RESIDENCE address number); see below:

| From: | sang shinn |
| To: | James W. Yoo |
| Subject: | Re: Anna Yoo"s sister"s passing anniversary |
| Date: | Saturday, October 08, 2016 2:35:57 PM |

HER PASSING DATE WAS 07/11/2015

**From:** James W. Yoo <jamesyoo@rochester.rr.com>
**Sent:** Friday, October 7, 2016 9:23 PM
**To:**
**Cc:** james yoo
**Subject:** Anna Yoo's sister's passing anniversary

Hi Samchun.
I have not seen your response to my question below from previous emails.
What is the exact date that my mom's sister passed last year?
You called me last year (I believe in July) while I was in the Northern Virginia area working on
rental properties to notify me of my mom's sister dying from a brain aneurysm.
I'm trying to keep better track of anniversaries.
Is there a reason why you will not respond to my simple question?
Thanks.
James

143.    On or around mid-October 2016, STEPHANIE called the Rochester Psychiatric Center

Mobile Crisis Unit without Plaintiff's prior knowledge or consent and without a bona fide reason.

Terri Wilston and Wesley Adams (hereinafter "MOBILE") entered into Plaintiff's residence against

Plaintiff's will.  Plaintiff demanded MOBILE to leave the premises; MOBILE sat on the living room

loveseat for over 15 minutes.  Plaintiff called Macedon non-emergency regarding trespassing of

MOBILE.  Plaintiff demanded MOBILE's business cards, seen below:



144.   On October 15th 2016, Plaintiff discovered a lab order from STEPHANIE's primary care physician Dr. Mira Chockalingham (hereinafter "DR_C").  Plaintiff has not been a patient of DR_C; Plaintiff never met DR_C; Plaintiff sent STEPHANIE an email titled "Dr. Mira Chockalingam's unusual paperwork for James Yoo" on October 15, 2016, see below:

| | |
|---|---|
| From: | James W. Yoo |
| To: | Stephanie Yoo; 01 Stephanie |
| Cc: | james yoo |
| Subject: | Re: Dr. Mira Chockalingam"s unusual paperwork for James Yoo |
| Date: | Saturday, October 15, 2016 8:57:31 PM |

Steph.

The attached document in the original email titled Dr_Mira_LabOrder_for_James.pdf reveals your primary care physician. Dr. Chockalingam. filling out paperwork to order blood tests for me even though I have NEVER seen her.

The FMLA paperwork in the original email (attached document titled 'FMLA_151214_Entire.pdf') reveals Dr. Chockalingam admitting that I was NOT her patient and yet she signed the FMLA paperwork with her 'assessment' of my condition.

Do you consider Dr. Chockalingam's actions. described above. inappropriate?

James

On Oct 15. 2016 6:17 PM. "James W. Yoo" <jamesyoo@rochester.rr.com> wrote:
Steph,

I was just cleaning my office and found the attached document titled Dr_Mira_LabOrder_for_James.pdf tucked away in a file.  Why is your primary care physician filling out paperwork for me when I have NEVER seen her?

This is similar to the FMLA paperwork (attached document titled 'FMLA_151214_Entire.pdf') that Dr. Chockalingam completed whereby she wrote and admitted that I was NOT her patient and yet she signed the FMLA paperwork with her assessment of my condition.

I do not understand Dr. Chockalingam's behavior.

James.

**STAT\***

Specimen Date: _____
Collection Time: _____
Collected By: _____

Depot: _____

**ROCHESTER GENERAL HEALTH SYSTEM**

Rochester General Hospital – (585) 922-4451   Dawn K. Riedy, M.D.    Newark-Wayne Community Hospital – (315) 332-2211   William Fricke, M.D.

Compliance is Mandatory and Required. For the laboratory to bill properly and receive payment for tests you have ordered an adequate diagnosis/sign/symptoms must be provided. ICD-9 code(s) or a descriptive diagnosis on each patient for each test ordered. It is critical that the diagnosis you provide by the lab be supported with those recorded in the patient medical record for the date of service.

**\*\*\*INCIDENTAL TO ROCHESTER GENERAL HEALTH SYSTEM PRACTICE OR CLINIC\*\*\***
**Outside RGHS: DO NOT BILL MEDICAID**
Bill RGHS Patient Financial Services, Attn: Medicaid Supervisor, 100 Kings Hwy South, Rochester, NY 14617-5504

## REQUIRED INFORMATION (PLEASE PRINT)

Name (Last, First, MI): James Yoo .

Date of Birth _____  Sex [✓] M [ ] F  Visit # _____
Street Address _____
City, State, Zip _____
Phone Number _____  Client Number _____

[ ] Aetna   [ ] GVGHA/Lifetime   [ ] Medicare Blue Choice
[ ] Blue Choice   [ ] Medicaid   [ ] MVP
[ ] Blue Cross/Shield   [ ] Medicare   [ ] MVP Gold
[ ] Other _____   [ ] ViaHealth/RGHS

Contract Number: _____
Subscriber's Name: _____
Relationship to Subscriber: _____

Diagnosis Mandatory - Signs/Symptoms or ICD.9 Codes

V70

Is this patient on anticoagulation therapy? (Mandatory)   YES   NO

Ordering Provider's Signature _____

Ordering Provider's Printed Name _____

**Special Requests:**
Recommended tests requiring fasting \* Circle if patient has been fasting   YES   NO
Standing Order?   YES   Frequency: _____   End Date: _____

## ROUTINE LABORATORY REQUISITION

### Physician Information

2550 BAIRD ROAD

( ) 8940 Chockalingam, Mira  MD

Send Additional Reports To:
Full Name: _____
Address: _____

| Lead Testing | Urines | Blood Banking |
|---|---|---|
| [ ] Lead | [ ] 24hr  [ ] Random | ABO/Rh Group |
| [ ] Fingerstick  [ ] Venous | | RH Type |
| | Calcium | Ab. Screen |
| Purpose and  [ ] Screening | Creatinine | Direct Coombs Test |
| Type of Test  [ ] Follow-Up | Creatinine Clearance | Preoperative Testing |
| Collected | Glucose | Date of Surgery: |
| | Microalbumin | In the past 3 months: |
| Ethnic [ ] Asian  [ ] Black | – no albumin | Transfusion? [ ]Yes [ ]No [ ]Unk |
| Origin [ ] Hispanic [ ] White | Protein Electrophoresis | Pregnancy? [ ]Yes [ ]No [ ]Unk |
| [ ] Native  [ ] Unknown | Total Protein | Antibody Card? [ ]Yes [ ]No [ ]Unk |
| American | | |
| Guardian _____ | | Blood Product Ordered: |
| (First Name) | Start Date/Time: | |
| County of Residence | End Date/Time: | For transfusion date _____ |

ALERT! Tests with local or national coverage criteria are represented by [  Bold Type  ]

| PROFILES (AMA Approved) | CHEMISTRY | | MICROBIOLOGY |
|---|---|---|---|
| Electrolytes | Albumin | Hepatitis B Core Ab, Total | Source required: |
| [✓] Basic Metabolic (CHEM 8) | Alkaline Phosphatase | Hepatitis B Surface Ab | |
| Comprehensive Metabolic | ALT (SGPT) | Hepatitis B Surface Ag | Bacterial Culture |
| [✓] Lipid Panel refer to Dr LDL, if Flup>40 and <500 \* | AST (SGOT) | Hepatitis C Ab | Blood Culture:  # to be drawn |
| Prenatal Screen | Amylase | | Chlamydia/GC amplified probe |
| [✓] Liver Function Panel | Bilirubin, Total | [ ] IgA  [ ] IgG  [ ] IgM | Chlamydia |
| Renal Function Panel | Bilirubin, Fract. (Total & Direct) | Iron | Fungal Culture |
| | BUN | Iron & TIBC | Group B Strep Culture (vaginal/rectal) |
| **HEMATOLOGY** | Calcium | LDH | Herpes Simplex Culture |
| [✓] APTT | Chloride | LDL (Direct) | Influ/RSV Rapid PCR Reflex to cx, if neg |
| [✓] CBC with Platelet | Cholesterol | Magnesium | Influenza |
| CBC, Platelet, and Diff | CO2 | Phosphorous | O & P (Giardia/Cryptospor. only) |
| Hematocrit | Creatinine | Potassium | O & P with Travel History |
| Hemoglobin | Digoxin (6 hours after oral dose) | Pregnancy, Serum (qualitative) | Respiratory Synovial Virus (RSV) |
| Lupus Anticoagulant | Ferritin | Pregnancy, Urine (qualitative) | Sputum Culture |
| Platelet Count | Folate | Protein, Total | Stool Culture (includes EHEC Shiga Toxin) |
| PT (Protime) / INR | GGTP | Protein Electrophoresis | Throat Culture (Group A Strep) |
| Reticulocyte Count | Glucose-Fasting \* | PSA [ ] Screening [ ] Diagnostic | Throat-Rapid Strep (2 swabs) |
| RBC Morphology | Glucose-Random | Sodium | – if negative, reflex to culture |
| Sed Rate | Glucose 1 HR Gestational | T3, Total | Urine Culture |
| Sickle Cell | HbA1C | [✓] T4, Free | Vaginitis/Vaginosis Screen |
| | HCG Beta (Quantitative) | TSH | Viral Culture |
| **URINE/STOOL** | HDL | Triglycerides | **SEROLOGY** |
| Urine Culture | Hemoglobin Electrophoresis | Uric Acid | Antinuclear Ab (ANA) reflex to titer |
| UA Reflex to Microscopic | Hepatitis A Ab IgM | Vitamin B-12 | H pylori Stool Ag |
| UA Reflex to Microscopic, | Hepatitis A Ab, Total | Vitamin D (25-OH) | HIV 1 / HIV 2 Ab Screen |
| if abnormal, Reflex to Culture | ADDITIONAL TESTS (please print): | | Lyme disease |
| UA and Microscopic | | | Measles (Rubeola Ab) |
| Occult Blood Screen x | | | Mononucleosis |
| Occult Blood Diag. x | | | Mumps IgG |
| **Tests Below Require an Appointment** | | | Rheumatoid Factor |
| Glucose Tolerance-Non-pregnant indicate Hrs _____ | | | Rubella Ab IgG |
| Glucose Tolerance - Pregnant - 3 HR | | Revised 3/19/14 | T pallidum IgG/IgM Ab (RPR) |
| Lactose Tolerance Test | | | Varicella Zoster Ab IgG |

Blue _____  Lav _____  Red _____  SST _____  Green _____  Gray _____  Urine _____  Micro _____

145.    On or around October 16th 2016, Plaintiff made several attempts to contact AILEEN's best friend BFF_IMSORRY considering Plaintiff's concern for AILEEN's only younger daughter who was six years old at the time, see below:

| From: | James W. Yoo |
| To: | ███ |
| Cc: | "James W. Yoo" |
| Subject: | RE: Phone conversations outside on the house porch |
| Date: | Sunday, October 16, 2016 2:18:42 PM |

Hi ███a,

I just tried to call you again and left another voice mail at 7███5.
As I mentioned in my voicemail, I am concerned about Aileen and M███a.

Thanks.

James.

From: James W. Yoo [mailto:jamesyoo@rochester.rr.com]
Sent: Saturday, October 15, 2016 4:02 PM
To: ███
Cc: 'James W. Yoo'
Subject: RE: Phone conversations outside on the house porch

Hi ███,

I tried to call you earlier today and left a voicemail at 7███5.

Thanks.

Jim

From: James W. Yoo [mailto:jamesyoo@rochester.rr.com]
Sent: Friday, October 14, 2016 9:41 PM
To: ███
Cc: 'James W. Yoo'
Subject: RE: Phone conversations outside on the house porch

Hi ███.

I'd like to call you regarding Aileen and M███a.

I have 7███5 as the last contact phone number for you.  Is this correct?  If not, will you send me your updated mobile number?

Thanks

Jim

ps. resending due to server reject error

On Oct 14, 2016 9:12 AM, "James W. Yoo" <jamesyoo@rochester.rr.com> wrote:
Hi Laila,

I wanted to be very clear that I am obviously very concerned about
M█████a's safety as well given Aileen's admission to what seems to be
█████ M███ █a.

My concern for M█████a's safety is obvious since I tried to reach out to
R█████.  Sadly, I have not received any response from R████.

Thanks.

Jim

---

**From:** James W. Yoo [mailto:jamesyoo@rochester.rr.com]
**Sent:** Friday, October 14, 2016 8:41 AM
**To:** █████rl'; '03_Aileen'; █████yo'; '01 Stephanie'; 'Stephanie Yoo'
**Cc:** 'James W. Yoo'
**Subject:** RE: Phone conversations outside on the house porch
**Importance:** High

Hi ███a,

As Aileen's closest and best friend, you are aware of Aileen's anger and
temper.  It seems Aileen is taking her frustrations out on ████a and
R████ is unwilling to respond to me regarding his plan to reduce Aileen's
temper towards████a; **"I am taking my frustration out on**

█████a (I have been close to hurting her)".**

I cannot remember a time when I have ever asked for your help; I am
asking now.  I am very concerned about my personal safety (and my
wife's personal safety) around Aileen's presence.

Will you help me?

Thanks.

Jim

146.    On or around October 20th 2016, Plaintiff called Arcata, California non-emergency Police

Department (hereinafter ACPD) to convey Plaintiff's concern for his niece.  Plaintiff briefly spoke

with someone at ACPD; ACPD said they would investigate.  Plaintiff attempted to follow up with

ACPD; ACPD never returned Plaintiff's contact attempts.

147.    On October 21st 2016, Plaintiff sent an email to AILEEN, BFF_IMSORRY, and AILEEN's

partner, copying STEPHANIE and Plaintiff, seen below:

| From: | James W. Yoo |
| To: | "03_Aileen"; ▆ |
| Cc: | "01 Stephanie"; "01 Stephanie"; jamesyoo@rochester.rr.com |
| Subject: | Aracata PD |
| Date: | Friday, October 21, 2016 2:14:57 PM |

Aileen,

As you are aware, Arcata Police (non-emergency) was called to visit and
ensure ▆a's well being given your description of 'I am taking my
frustration out on ▆a (I have been close to hurting her)' which was
later described as 'verbal' frustration.

I tried several times to reach out to both Laila and Rocky via texting,
emails, and phone calls to try and understand from another view.  I did
not receive any responses back from either Laila or Rocky.  Hence, the call
to Arcata PD (non-emergency) to check-in.

This response is similar to Stephanie's email regarding one of our
tenant's issue with a neighbor's verbal abuse; 'We are sorry to hear about
the situation you described with the neighbor.  You should contact local
authorities as you feel appropriate.'

Hope you can forgive; was truly thinking about ▆a.

148.    On or around mid-October 2016, STEPHANIE attempted to fly AILEEN from California to

Plaintiff's residence without Plaintiff's prior knowledge or consent.

**149.    On October 31st 2016, James P. Kennedy is named Acting US Attorney for the**

**Western District of New York.**

**150.    On November 8th 2016, Donald J. Trump is elected 45th President of the United**

**States.[2]**

151.    On or around the one-year anniversary of Plaintiff's RGH ordeal, on or around late November 2016, STEPHANIE called Rochester Gas and Electric (hereinafter "RGE"), against Plaintiff's wishes, due to a simple power flicker in the house; not an uncommon event.  Shortly thereafter, while Plaintiff was alone in his residence, two gentlemen claiming to be employees of RGH trespassed on Plaintiff's property and walked twice around the entire perimeter of the residence in very close proximity to the residence.  Plaintiff noticed a large truck parked across the street noting "Power and Construction Group" on the truck, see below:



152.    On or around December 1st 2016 STEPHANIE opened, without Plaintiff's prior knowledge or consent, an account at ESL Federal Credit Union; Plaintiff discovered the existence of STEPHANIE's secret account in late February 2017.

153.    On or around December 2nd 2016 STEPHANIE moved into her apartment in Webster, NY.

154.    On the early evening of December 9th 2016 STEPHANIE abruptly called 911 on Plaintiff from the home landline without a bona fide reason;

(1)     The residential locks on Plaintiff's residence were never replaced since purchasing the residence in 2002;

(2)     Plaintiff and STEPHANIE previously discussed replacing the residential locks on numerous occasions;

(3)     Plaintiff changed the residential locks during the day on December 9th, 2016 considering STEPHANIE moved into her apartment on her own volition on or around December 2nd 2016;

(4)     STEPHANIE arrived at Plaintiff's residence early evening on December 9th 2016; the residential doors were unlocked;

(5)     Upon STEPHANIE's arrival, STEPHANIE and Plaintiff talked for a few minutes and then STEPHANIE raised the issue of the new lock on the garage door;

(6)     Plaintiff verbally provided and communicated to STEPHANIE the garage door code;

(7)     Plaintiff attempted to explain to STEPHANIE the change in lock and remind STEPHANIE of previous conversations; instead, STEPHANIE abruptly called 911, locked herself inside the Volvo with the telephone and drove to the end of the driveway;

(8)     New York State Trooper Weston arrived with two other New York State Troopers;

(9)     STEPHANIE immediately filed a Domestic Incident Report with New York State Trooper Weston on the evening of December 9th 2016.

155.    On or around December 9th 2016, STEPHANIE's close friend, Laura Barnard (hereinafter "LAURA") sent Plaintiff a supposed gift on behalf of LAURA, Pam Barnard (LAURA's older sister and hereinafter "PAM"), and Mary Barnard (LAURA's mother and hereinafter "MARY") (LAURA, PAM, and MARY collectively hereinafter THE_BARNARDS), a book titled "Heart and Brain", see below:

 **A gift for you**

Dear James, Merry Christmas! From
The Barnards

 **amazon** Gift Receipt

**Send a Thank You Note**

You can learn more about your gift or start a return here too.

Scan using the Amazon app or visit **http://a.co/gHyQQ2J**

**Heart and Brain: An Awkward Yeti Collection**
Order ID: 115-7225773-8891419   Ordered on December 9, 2016

 **amazon.com**



SDR5kp9Rg4

Order of December 9, 2016

| Qty. | Item |
| --- | --- |
| 1 | Heart and Brain: An Awkward Yeti Collection |
| | The Awkward Yeti --- Paperback |
| | (** GIFT BAG 20 **) 1449470890 |
| | 1449470890 050837347786 |

**Return or replace your item**
Visit Amazon.com/returns

6/DR5kp9Rg4/-1 of 1-//PITS-XDOCK/-WRAPS99-
second/4042848/1210-02:00/1209-21:30



(1)      Plaintiff believes that THE_BARNARDS sent Plaintiff "Heart and Brain" as a subtle message insinuating STEPHANIE's harboring of ill will towards Plaintiff's loss of full-time employment; a sentiment which Plaintiff is unaware considering the numerous experiences Plaintiff and STEPHANIE shared throughout their marriage including but not limited to:

    i.    Trips to New Orleans including Jazz Fest, STEPHANIE's college reunion and homecomings;

    ii.    Trip to Jamaica to celebrate STEPHANIE's 40th birthday;

    iii.    Trips to Lake Placid including celebrating Plaintiff's 40th birthday to include luxury stay at Mirror Lake Inn and bobsledding on Olympic track;

    iv.    Trips to London England including attending Wimbledon;

    v.    A trip to Switzerland to visit STEPHANIE's college friend;

    vi.    Attending US Open Tennis;

    vii.    Attending Roland Garros, French Open;

    viii.    Trips to Northern California including San Francisco and Napa Valley area;

    ix.    Trips to Austin, Texas

**156.   On or around early January 2017, "The FISA court agrees to extend the FBI's surveillance of Carter Page, who was a foreign policy adviser to the Trump campaign."[2]**

157.   On January 2nd 2017, Plaintiff received a text message from Plaintiff's high school friend, Leland Nakamura (hereinafter "LELAND"), stating that Plaintiff's high school friend, Mark Tirona (hereinafter "MARK"), was diagnosed with Stage IV colon cancer since early September 2016; LELAND and MARK were Plaintiff's groomsmen; Plaintiff had not communicated with either LELAND or MARK for several years.

158.   On or around January 2017, STEPHANIE called Plaintiff's primary care doctor and attempted to schedule an appointment for Plaintiff without Plaintiff's prior knowledge or consent.

**159.   On January 20th 2017, Donald J. Trump is inaugurated as the 45th President of the United States.**

160.   On January 22nd 2017, Plaintiff received email from LELAND titled "Contact info" further describing MARK's situation.  LELAND, at the end of his email, describes all of MARK's family members:

Orlando, FL, and his half sister lives in Texas.

Anyway, that's the latest. Hope all is well.

Peace
Leland

Sent from my iPhone

(1)     Plaintiff believes that MARK's sister is not a "half sister".

161.    On January 27th 2017, Plaintiff emailed P_FRASCA to recall conversations with P_FRASCA years ago about a Mike Frasca (hereinafter M_FRASCA).  Plaintiff remembered M_FRASCA as P_FRASCA's ex-husband's brother being a security expert in Las Vegas conducting work with the casinos.  P_FRASCA emails "He (M_FRASCA) is retired.  My understanding was that he was doing "IT" computer set up etc. for one of the Casino's".

(1)     Plaintiff remembered M_FRASCA's name from a high school football betting pool that Timothy Scroger's (hereinafter "T_SCROGER") wife Peggy Scroger (hereinafter "P_SCROGER") coordinated on September 9th 2013.

**162.    On January 27th, 2017 – "Trump and Comey privately dine at the White House. Comey says: "[T]he President said, 'I need loyalty, I expect loyalty.'""[2]**

163.    On February 9th 2017 at 9:05am, Plaintiff called the Federal Bureau of Investigation (hereinafter "FBI") in Buffalo New York (716-856-7800).  Plaintiff spoke with a female FBI person and attempted to explain Plaintiff's ordeal and matter; the Buffalo New York FBI Call Agent told Plaintiff, "that was so long ago"; the Buffalo New York FBI Call Agent then proceeded to disconnect Plaintiff's call.

(1)     The Buffalo New York FBI Call Agent never provided Plaintiff with any explanation or reasoning to her statement to Plaintiff about incident being "so long ago";

(2)     Plaintiff does not understand how the Buffalo New York FBI Call Agent can make such a determination about Plaintiff's matter;

(3)     Plaintiff went into a state of shock.

164.    From the week of February 6th 2017, Plaintiff attempted to contact private attorneys with locations in Western New York and New York City.  Plaintiff was not successful finding an attorney to prosecute Plaintiff's matter.

(1)    During the week of February 6th 2017, Plaintiff exchanged phone calls with Paul Keneally at Underberg & Kessler in Rochester New York.

(2)    On February 9th 2017, Plaintiff called Steven Cohen at Hogan Willig in Buffalo New York.  Plaintiff spoke to a person named Robin.  Hogan Willig did not take Plaintiff as a client.

(3)    On February 15th, February 16th, and February 17th 2017, Plaintiff emailed David Zukher at Weisberg & Zukher PLLC in Syracuse New York.  Plaintiff did not receive any email responses from Weisberg & Zukher PLLC.

(4)    On February 16th 2017, Plaintiff emailed Ameer Benno attorney with offices in Buffalo New York and New York City.  From February 16th 2017 through February 20th, 2017, Plaintiff exchanged emails with Mr. Benno attempting to coordinate an initial phone consultation.  Plaintiff called and spoke with Mr. Benno on February 21st 20017.

(5)    On February 15th and February 17th 2017, Plaintiff exchanged emails with Paul Keneally at Underberg & Kessler in Rochester New York and asked whether anyone at Underberg & Kessler would be in violation of New York State Bar Association's 'New York Rules of Professional Conduct' if Plaintiff continued to speak with anyone at Underberg & Kessler; Mr. Keneally's response to my inquiry was "Mr. Yoo:  Please be advised that we will not be able to assist you.".

(6)    On February 16th 2017, Plaintiff emailed Ms. Koronoa at Leclair Koronoa Vahey Cole LLP in Rochester New York.  Plaintiff did not receive any response from Leclair Koronoa Vahey Cole LLP.

(7)    On February 17th 2017, Plaintiff emailed Mr. Kelly at Tully Rinckey PLLC in Syracuse New York.  Plaintiff did not receive any response from Tully Rinckey PLLC.

(8)    On February 18th 2017, Plaintiff emailed Ms. Bellina at Stoll, Glickman, and Bellina LLP.  Plaintiff did not receive any response from Stoll, Glickman, and Bellina LLP.

(9)    On February 20th 2017, Plaintiff emailed and called Anne Marie Richmond in Buffalo New York.  Plaintiff spoke briefly with Ms. Richmond and exchanged emails; Ms. Richmond did not take Plaintiff as a client.

(10)    On February 21st 2017, Plaintiff spoke with Mr. Benno again asking for help; Mr. Benno did not take Plaintiff as a client.

(11)    On February 21 2017, Plaintiff called Mr. Zukher in Syracuse New York; Plaintiff was only able to speak with Receptionist; Plaintiff briefly described Plaintiff's matter with Receptionist and left a message requesting Mr. Zukher's return call.  Plaintiff did not receive any responses from Weisberg & Zukher PLLC.

(12)    On February 22nd 2017, Plaintiff called and briefly spoke with Louis Cristo at Trevett Cristo attorneys in Rochester New York.  Mr. Cristo did not take Plaintiff as a client.

(13)    On February 22nd 2017, Plaintiff called and briefly spoke with Peter Rodgers at Lacy Katzen attorneys in Rochester New York.  Mr. Rodgers did not take Plaintiff as a client.

(14)    On February 22nd 2017, Plaintiff called and briefly spoke with Robert King attorney in Rochester New York.  Mr. King did not take Plaintiff as a client.

(15)    On February 22nd 2017, Plaintiff used the Monroe County Bar Association's (hereinafter MCBA) website in attempts to find an attorney for Plaintiff's matter.  Plaintiff received the name of Paul B. Watkins as an attorney for Plaintiff's matter, see below:

2/22/2017

**The lawyer you have been referred to is:**

---

PRINT THIS VOUCHER AND CONTACT THE ATTORNEY BELOW

---

Name: Paul B. Watkins Esq.

Organization/Firm: Law Offices of Paul B. Watkins

Address:
115 N. Main Street

City: Fairport

State: NY

ZipCode: 14450

Phone: (585) 377-9747

Fax: (585) 377-9660

Website:

---

Notes for Attorney: I seek an experienced attorney with very strong litigation skills and extensive successful trial experience. In late 2015 I was improperly (and I believe illegally) admitted to Rochester General Hospital (RGH) by my wife and RGH. I was held at RGH against my will for 5 days. RGH, my wife, and my sister denied me access to any communications devices in my attempts to contact an attorney. My full RGH records that I received in mid-August 2016 contains blatantly disparaging and unvetted notations including outright lies, inaccuracies, and omissions. While I am not the legal expert, I believe my matter involves at minimum defamation and needs further litigation regarding being held against my will for 5 days at RGH while being denied communications access by RGH, my wife, and my sister. Furthermore, my RGH records review found many inconsistencies and lack of justification for RGH holding me for 5 days. Who has the authority to hold someone against their will at RGH for 5 days? Did someone overstep their 'authority' and illegally hold me against my will at RGH for 5 days? Lastly, in addition to the attorney's individual experience and skill, I seek an attorney associated with a firm with access to a broad range of resources, extensive experience, and knowledge considering what I believe is a complex matter. Thank you. James Yoo 711 Rookery Way Macedon, NY 14502 315-986-0972

mswail@mcba.org <mswail@mcba.org>
To: thejamesyoo@gmail.com

Lawyer Referral Service
Monroe County Bar Association
One W. Main Street, Floor 10
Rochester, NY 14614
585.546.2130

2/22/2017

James Yoo
711 Rookery Way
Macedon, NY 14502

Dear James Yoo,

Thank you for using our web-based lawyer referral service.

We referred you to the following attorney for an interview.  PLEASE KEEP THIS AS YOUR RECEIPT FOR THIS REFERRAL.

Paul B. Watkins Esq.
Law Offices of Paul B. Watkins
115 N. Main Street
Fairport, NY 14450
(585) 377-9747

It is your responsibility to contact the attorney to set up a 30 minute consultation.  If, for any reason, you are unable to keep you is your responsibility to schedule another consultation with the attorney.

Sincerely,

Referral Service

## MCBA referred Plaintiff to an attorney whose sole practice is DIVORCE, see below:

### Law Offices of Paul B. Watkins
115 North Main St. Fairport NY 14450

Welcome (welcome-to-the-law-offices-of-paul-b-watkins)

About Us (about)

FAQs (frequently-asked-questions)

Disclaimer (disclaimer)

Site map (site_map)

This is the referral that I received from the Monroe County New York Bar Association

### Welcome To The Law Offices Of Paul B. Watkins

I am a solo practitioner in Fairport, New York, and offer a wide range of services to Clients in all areas of matrimonial and family law, including divorce, child custody and support.

I have 30 years experience as an attorney representing Clients in courts in many jurisdictions in all aspects of cases, including trials. As a solo practitioner, I am able to work directly with each of my Clients, respond to your individual needs and handle every aspect of your case myself. I would be very pleased to have you choose me to represent you.

Please contact me with any questions you may have about your case, and what services I can provide you. There is no charge for an initial one-half hour consultation.

I look forward to hearing from you.

Paul B. Watkins

(16)    On February 27th 2017, Plaintiff received a response from the New York City Bar Association (hereinafter "NYCBA") in response to Plaintiff's February 24th 2017 request for an attorney referral; NYCBA emailed responding to Plaintiff, "Unfortunately, we do not have a lawyer to help with the matter that you described".

165.    From February 14th 2017, Plaintiff attempted to contact the Department of Justice (hereinafter "DOJ") and FBI by email, fax, phone calls, website input, and special delivery via FedEx or the United States Postal Service; see "EXHIBIT C"; Plaintiff possesses more evidence than displayed in "EXHIBIT C":

(1)     **Dana Boente**. Acting Deputy Attorney General of the United States, DOJ

(2)     **Tom Wheeler**, Acting Assistant Attorney General of the United States, DOJ, Civil Rights Division

(3)     **Tamara Kessler**, Chief, DOJ, Civil Rights Division, Criminal Section

(4)     **James P. Kennedy**, US Attorney Western District of New York, DOJ

(5)     **Brian Stretch**, US Attorney Northern District of California, DOJ

(6)     **Adam Cohen**, Special Agent in Charge, FBI, Buffalo NY

(7)     **Holly Hubert**, Assistant Special Agent in Charge, FBI, Buffalo NY

(8)     **Steven Lanser**, Assistant Special Agent in Charge, FBI, Buffalo NY

(9)     **John Bennett**, Special Agent in Charge, FBI, San Francisco CA

(10)    **Lawrence Buckley**, Assistant Special Agent in Charge, FBI, San Francisco CA

(11)    **Craig Fair**, Assistant Special Agent in Charge, FBI, San Francisco CA

(12)    **Bertram Fairries**, Assistant Special Agent in Charge, FBI, San Francisco CA

(13)    **Derek Fischel**, Assistant Special Agent in Charge, FBI, San Francisco CA

(14)    **Lisa Gentilcore**, Assistant Special Agent in Charge, FBI, San Francisco CA

(15)    **Marina Mayo**, Assistant Special Agent in Charge, FBI, San Francisco CA

(16)    **Stacey Moy**, Assistant Special Agent in Charge, FBI, San Francisco CA

(17)    **M.K. Palmore**, Assistant Special Agent in Charge, FBI, San Francisco CA

166.   On or around February 25th 2017, STEPHANIE deposited her Verizon Bonus Pay of approximately $10,000 into her secret personally held ESL Federal Credit Union account (hereinafter "ESL"); Plaintiff had no prior knowledge of the existence of STEPHANIE's ESL until Plaintiff noticed the lack of typical Verizon Bonus Pay during this pay period.

167.   On February 26th 2017, Plaintiff received a text message from STEPHANIE noting that neighbor John Campana, who was supposedly on life support for several weeks, "was taken off life support this morning and passed away".

168.   On February 27th 2017, STEPHANIE arrived at Plaintiff's residence around 1:30pm simultaneously with two Wayne County Sheriff's officers and MOBILE without Plaintiff's prior knowledge or consent.

   (1)   STEPHANIE had no bona fide reason for coordinating and bringing the aforementioned parties to Plaintiff's residence;

   (2)   Deputy Sheriff Vaughan and MOBILE asked permission to enter the residence; Plaintiff refused and denied their request;

   (3)   The two Wayne County Sheriff's and MOBILE stayed just outside the garage door inside the garage;

   (4)   Deputy Sheriff Vaughn admitted that "there was nothing to do regarding his call to the house";

   (5)   Deputy Sheriff Vaughn acknowledged that there was nothing illegal about having video cameras on premises;

   (6)   Deputy Sheriff Vaughn admitted that many police officers that he personally knows have video cameras on their premises;

   (7)   STEPHANIE retrieved documents from her personal safe

169.   On March 1st 2017, STEPHANIE entered Plaintiff's residence with one-hour notice. STEPHANIE did not notify Plaintiff that PAM was accompanying STEPHANIE was they entered Plaintiff's residence around 5:30pm to retrieve some personal items.

170.    On March 1st 2017, Plaintiff receives email from STEPHANIE regarding recently passed away neighbor John Campana, see below:

| From: | Stephanie |
| --- | --- |
| To: | James Rr Email |
| Subject: | Sharing info on John |
| Date: | Wednesday, March 01, 2017 7:08:20 PM |

Hope you consider going... He's your friend

http://falvofuneralhome.com/tribute/details/2971/John-Campana/obituary.html#tribute-start

*Sent from my Verizon Wireless 4G LTE Droid*

171.    On March 2nd 2017, STEPHANIE and PAM entered Plaintiff's residence without Plaintiff's prior knowledge or consent and physically and forcefully robbed Plaintiff's cats (Katze and Kozmo) from Plaintiff.

   (1)    STEPHANIE instructed PAM to retrieve the pet carrier crates from the basement;

   (2)    STEPHANIE and PAM ripped the pet carrier crates from Plaintiff's hands;

172.    On March 3rd 2017, STEPHANIE withdrew $72,000 from Plaintiff's and STEPHANIE's joint-bank account without Plaintiff's prior knowledge or consent.

173.    On March 4th 2017, STEPHANIE left a note in Plaintiff's PRIMARY_RESIDENCE mailbox stating that STEPHANIE removed Plaintiff from joint credit card account without Plaintiff's prior knowledge or consent.

174.    On March 5th 2017, STEPHANIE threatened to file divorce without stating her 'grounds' for divorce.  STEPHANIE attempted to compel and induce Plaintiff to seek a therapist as a condition for STEPHANIE withdrawing threat of divorce and as a condition for STEPHANIE returning Plaintiff's two cats.

175.    On or about early March 2017, Plaintiff was unable to retrieve online or print Plaintiff's Verizon residential landline phone records.

176.    On March 8th 2017 at Plaintiff's PRIMARY_RESIDENCE:

(1)     Two men appeared claiming to be FBI agents from the Rochester New York field office; neither of the two men wore any FBI marked clothing;

(2)     The two men claiming to be FBI agents only showed Plaintiff one form of identification (bi-fold wallet; green / bluish paper); the identification did not include any photos to associate a face; the identification did not include any metallic FBI badge;

(3)     The two men claiming to be FBI agents stated they were transferring a message on behalf of US Attorney J.P. Kennedy (Western District of New York) requesting that I refrain from further contacting US Attorney J.P. Kennedy and that any further contacts with US Attorney J.P. Kennedy would lead to harassment charges against Plaintiff;

(4)     Plaintiff initially did not question the two men claiming to be FBI agents since Plaintiff has never formally been previously approached by any bona fide FBI agents, thus, Plaintiff did not question the two men's authenticity at the time;

**177.   On March 20th 2017 - FBI Director Comey confirms the existence of an FBI investigation at a hearing of the House intelligence committee. Comey tells the committee that the agency is investigating "the Russian government's efforts to interfere in the 2016 presidential election and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts."[2]**

178.   On March 21st 2017, Plaintiff sends an email to STEPHANIE's father BRUCE attempting to confirm BRUCE's August 1st 2016 email about STEPHANIE's mother's, Maggie Scroger (hereinafter MAGGIE), ICU and hospitalization; "Are the statements…regarding Maggie bona fide, that is, made in good faith without fraud or deceit?".  Plaintiff never received an answer from BRUCE regarding Plaintiff's question.

179.   On March 30th 2017, Plaintiff attempted to file a complaint with Wayne County Sheriff's Office regarding STEPHANIE and Pam Barnard's actions toward Plaintiff in March 2018.  Plaintiff

received the following response from Sheriff Alan Graham (who Plaintiff believes at the time was head of the Civil Division):

---

**Complaint re 3/2/17 incident at 711 Rookery Way Macedon 14502**

---

SO- Graham, Alan <AGraham@co.wayne.ny.us>                    Thu, Mar 30, 2017 at 12:27 PM
To: James Yoo <thejamesyoo@gmail.com>

can you block this guys emails ?

**From:** James Yoo [thejamesyoo@gmail.com]
**Sent:** Thursday, March 30, 2017 11:37 AM
**To:** SO- Virts, Barry
**Cc:** SO- Sklenar, Steve; SO- Graham, Alan; SO- Lorenz, George; SO- Vaughn, Kevin; James Yoo
**Subject:** Re: Complaint re 3/2/17 incident at 711 Rookery Way Macedon 14502


To: Sheriff Barry C. Virts
Office of the Sheriff, Wayne County
7376 Rt. 31, Suite 1000
Lyons, NY 14489

Re: Matter / Complaint regarding March 2nd 2017 and March 3rd 2017 incident

---

180.    On March 31st 2017, STEPHANIE files Action for Divorce in Monroe County Supreme Court.

**181.    On or around early April 2017 – "The FISA court agrees to extend the FBI's surveillance of Carter Page, who was a foreign policy adviser to the Trump campaign."[2]**

182.    On April 17th 2017, Plaintiff was personally served STEPHANIE's Action for Divorce. Plaintiff was unrepresented at the time of being personally served.

183.    Beginning on or around April 17th 2017, Plaintiff began search to retain divorce attorney. Plaintiff noticed unusual behavior from several interactions during Plaintiff's search to retain a divorce attorney:

(1)    Vince Ferrero (Davidson Fink) kept repeating, "you know, you know";

(2)    Larry Schwind (Lacy Katzen) was extremely verbose in his answers;

(3)    Jennifer Fazio (Dentino, Cammarata, Fazio), after two or three phone call exchanges, emails Plaintiff, see below:

Jennifer L. Fazio
To: James Yoo

Wed, Apr 19, 2017 at 11:47 AM

Dear Mr. Yoo,

Based on the amount of time that my office has been required to spend attempting to schedule an initial consultation with you, I do not believe that your case is a good fit for my practice. Kindly consult with other legal counsel. Thank you and good luck.

Jennifer L. Fazio. Esq.

Partner

Dentino, Cammarata & Fazio, LLP

(4)     Kristina Karle; Plaintiff was only able to speak with Ms. Karle's receptionist who, unsolicited, mentioned that Ms. Karle was running for office in Ontario; the receptionist also attempted to refer Plaintiff to Robert King for divorce.

(5)     Plaintiff spoke with Michael Rossi attorney in Buffalo New York twice.  The first phone call included a discussion of a $10,000 retainer.  The second phone call many days later resulted in Mr. Rossi hanging up abruptly on Plaintiff for no bona fide reason.

184.    On April 25th 2017, Plaintiff responded to STEPHANIE's email regarding extending the timeframe to provide an Answer to Action for Divorce by sending email to STEPHANIE's divorce attorney, Ms. Seema Rizzo (hereinafter RIZZO) at Gallo & Iacovangelo LLP, and copying STEPHANIE.  STEPHANIE responds on April 26th 2017 (see below);

| From: | stephanie yoo |
|---|---|
| To: | jamesyoo@rochester.rr.com; Seema Ali Rizzo; Seema Ali Rizzo; Candice Moore |
| Cc: | James Yoo; Stephanie Yoo |
| Subject: | RE: indefinite on hold |
| Date: | Wednesday, April 26, 2017 7:02:16 AM |

James.

I asked you to work through me and not contact my attorney without my knowledge.  If you do not trust or question the process I encourage you to secure an attorney.

I want to work through this but your questions have been answered and our focus should be on us. If you don't understand something I've said. ask me.

(REST OF EMAIL REDACTED)

185. On April 26th 2017, Plaintiff receives another response from STEPHANIE regarding STEPHANIE denying Plaintiff access to RIZZO (see below):

| From: | stephanie yoo |
|---|---|
| To: | jamesyoo@rochester.rr.com |
| Cc: | James Yoo |
| Subject: | RE: working together |
| Date: | Wednesday, April 26, 2017 9:10:18 AM |

I'm not denying you access to an attorney. it's disrespectful for you to contact mine without my prior consent.  You are able and should obtain representation if you feel.

Sent from Yahoo Mail on Android

On Wed, Apr 26, 2017 at 8:22 AM, James W. Yoo <jamesyoo@rochester.rr.com> wrote:

GM.

I discussed with you last night as well that I do not believe that it is improper for me to ask basic questions to your attorney (with you cc'd on the communications) considering me not having representation at the moment.  I hope you can understand from my perspective that you attempting to denying me access to attorney in my attempts to communicate does not seem right to me.

James.

From: stephanie yoo [mailto:steph_yoo@yahoo.com]
Sent: Wednesday, April 26, 2017 7:53 AM
To: James Yoo <jamesyoo@rochester.rr.com>
Subject: working together

Gm. hope you are feeling better.

We spoke on my drive home last night and we discussed interactions. I asked you to not contact my attorney without my knowledge and approval.

(REST OF EMAIL REDACTED)

(1)    STEPHANIE has demonstrated her pattern of obstructive conduct towards Plaintiff.

**186.    On May 3rd 2017 – "Comey discloses at a Senate judiciary committee hearing that the FBI has "opened investigations on" more than one "U.S. persons" in connection with the FBI investigation into whether the Trump campaign cooperated with Russia's efforts to influence the 2016 campaign."[2]**

187.    On May 4th 2017, Plaintiff had an initial consultation with Tom Hartzell, Jr. (hereinafter TOM) at Finucane and Hartzell (hereinafter "F_AND_H").

**188.    On May 5th 2017 – "The National Security Agency says in a detailed classified report that the Russian military intelligence operation carried out cyberattacks in 2016 on a company that supplies software for voting machines in eight U.S. states."[2]**

**189.    On May 9th 2017 – "Trump fires Comey"[2].  Andrew McCabe becomes Acting Director of the Federal Bureau of Investigation.**

190.    On May 11th 2017, Plaintiff retained TOM at F_AND_H.

**191.    On May 11th 2017 – "Trump says in an interview with NBC's Lester Holt that he was thinking of "this Russia thing" when he decided to fire Comey."[2]**

192.    On May 16th 2017, Plaintiff delivers DVD to TOM with copy of files sent to DoJ and FBI.

193.    On May 17th 2017, Plaintiff loses dial tone service for Plaintiff's Verizon residential landline POTS service.

194.    On May 17th 2017, Plaintiff meets with TOM regarding matter.

**195.    On May 17th 2017 - "Rosenstein, the deputy attorney general, appoints former FBI Director Robert S. Mueller III as special counsel to investigate any possible collusion between the Trump campaign and the Russian government's efforts to influence the 2016 presidential election."[2]**

196.    On May 18th 2017, Plaintiff restarted the process to search for an attorney to prosecute Plaintiff's civil matter.

(1)     On May 18th 2017, Plaintiff contacted the law offices of Jeffrey Wicks, attorney in Rochester New York, and spoke with Charles Steinman (another attorney at the law offices of Jeffrey Wicks) regarding an initial consultation.

Upon further review of Plaintiff's VERIZON residential telephone landline service and Plaintiff's VERIZON wireless mobile service, VERIZON deleted Plaintiff's call record to the Law Offices of Jeffrey Wicks on May 18TH 2017, SEE BELOW:

## PLAINTIFF'S VERIZON RESIDENTIAL TELEPHONE LANDLINE CALL RECORDS

**Usage Details**

**Fios Digital Voice**

| Date/Time | From Number | To Number | Destination | Plan | Min | Amount |
|---|---|---|---|---|---|---|
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| 4/28/17 4:01 pm | 3159860972 | ███ | ███ | -- | -- | .00 |
| 5/1/17 10:08 am | 3159860972 | ███ | ███ | -- | -- | .00 |
| 5/5/17 9:20 am | 3159860972 | ███ | ███ | -- | -- | .00 |
| **Total** | | | | | | **.00** |

**Usage Details**

**Fios Digital Voice**

| Date/Time | From Number | To Number | Destination | Plan | Min | Amount |
|---|---|---|---|---|---|---|
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| ███ | 3159860972 | ███ | ███ | -- | -- | .00 |
| 6/2/17 11:24 am | 3159860972 | 7168 | ███ | -- | -- | .00 |
| 6/5/17 1:37 pm | 3159860972 | 7168 | ███ | -- | -- | .00 |
| 6/5/17 2:20 pm | 3159860972 | 7168 | ███ | -- | -- | .00 |
| 6/6/17 1:32 pm | 3159860972 | 7165 | ███ | -- | -- | .00 |
| 6/7/17 3:28 pm | 3159860972 | 2125 | ███ | -- | -- | .00 |

PLAINTIFF'S VERIZON WIRLESS MOBILE CALL RECORDS

**Billing period** May 16, 2017 to Jun 15, 2017  |  **Acco**

# James Yoo

## 585.355.9777 | Samsung Galaxy S 4

## Talk activity

| Date | Time | Number | Origination | Destination | Min. |
|------|------|--------|-------------|-------------|------|
| ███ | ███ | ███ | ███ | ███ | █ |
| ███ | ███ | ███ | ███ | ███ | █ |
| ███ | ███ | ███ | ███ | ███ | █ |
| ███ | ███ | ███ | ███ | ███ | █ |
| ███ | ███ | ███ | ███ | ███ | █ |
| May 17 | 9:33 PM | 000.000.0086 | Walworth, NY | Voice Mail, CL | 1 |
| May 18 | 8:47 AM | 585.355.9797 | MacEdon, NY | Rochester, NY | 8 |
| May 18 | 9:04 AM | 585.355.9797 | Walworth, NY | Incoming, CL | 2 |
| May 18 | 9:52 AM | 866.326.7937 | MacEdon, NY | Toll-Free, CL | 2 |
| May 18 | 9:54 AM | 866.326.7937 | Walworth, NY | Toll-Free, CL | 20 |
| May 23 | 10:19 AM | 000.000.0086 | Walworth, NY | Voice Mail, CL | 1 |

## RE: Jeffrey Wicks, PLLC. re James Yoo (Victim) Title 42 USC Section 1983

Received: ↩ 🔒 July 5, 2017 3:32 PM

From: **Jeffrey Wicks** ███████████

To: **thejamesyoo** ███████████

CC: **Charles Steinman** ███████████   **Cheryl Personte** ███████████

Mr. Yoo,

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

*Jeffrey Wicks*

**Jeffrey Wicks, PLLC**

████████████████
████████████████
████████████████

*This email message and any attachments are confidential and intended solely for the named addressee(s). They may be subject to legal, professional or other privilege or may be protected by other legal rules. They must not be disclosed to anyone without the sender's authorization. If you are not the intended recipient or authorized to receive this email for the intended recipient, you may not disclose, copy, distribute or retain this message or any part of it.*

From: thejamesyoo ███████████
Sent: Wednesday, July 5, 2017 12:57 PM
To: ███████████
Cc: ███████████
Subject: Jeffrey Wicks, PLLC. re James Yoo (Victim) Title 42 USC Section 1983

Dear Mr. Wicks and Mr. Steinman,

███████████████████████████████████████████████
███████████████████████████████████████████████

███ I mentioned to Mr. Steinman on May 18th (initial call), to both of you on May 22nd (initial consultation), and to Mr. Wicks on June 5th (I called re: ███████████████████████████████

███████████████████

James Yoo
711 Rookery Way
Macedon, NY 14502

197.   Plaintiff may be able to discover more examples of deleted or missing VERIZON residential telephone landline or VERIZON wireless call records.

198.    From around June 7th 2017, Plaintiff again attempts search to retain attorney to prosecute civil rights and other matter.

**199.    On June 8th 2017 - "Comey testifies under oath before the Senate intelligence committee."[2]**

**200.    On or around late June 2017 – "The FISA court agrees to extend the FBI's surveillance of Carter Page, who was a foreign policy adviser to the Trump campaign."[2]**

201.    On July 14th 2017, Plaintiff attempts to contact Special Counsel Robert Mueller III and Jeannie Rhee via FedEx a letter and DVD containing files (some encrypted).

202.    On August 1st 2017, Plaintiff attempts to contact Special Counsel Robert Mueller III and Jeannie Rhee via USPS a letter and DVD containing files (some encrypted).

**203.    On August 2nd 2017, Christopher Wray is appointed as Director of the Federal Bureau of Investigation.**

204.    On August 31st 2017, The U.S. Office of Special Counsel sent the following letter to Plaintiff from Ashley N. Tease, see below:



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

*SENT VIA STANDARD MAIL*
Mr. James Yoo
711 Rockery Way
Macedon, NY 14502                                    AUG 3 1 2017

      Re: OSC File No. MA-17-4893

Dear Mr. Yoo:

       This letter is in response to the complaint you recently filed with the U.S. Office of Special Counsel (OSC). Based on our examination of your complaint, we have made a determination to close our inquiry into your complaint.

       OSC is authorized to investigate allegations of prohibited personnel practices and certain activities prohibited by civil service law, rule, or regulation. 5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b). The provisions of 5 U.S.C. § 2302(b) specifically define thirteen prohibited personnel practices for which we have jurisdiction to investigate. However, you have not alleged, nor is there any information in your complaint that indicates, that an official has taken an action that constitutes any of the thirteen personnel practices prohibited by section 2302(b), or any other prohibited activity within the Special Counsel's investigative jurisdiction.

       Further, our authority to investigate allegations of prohibited personnel practices extends only to employees, former employees, or applicants for employment to competitive or excepted service positions in the Executive Branch departments and agencies of the federal government. The information you provided indicates that you are not an employee as defined in the provisions of 5 U.S.C § 2105. Thus, we have no authority to assist you in this matter.

                                         Sincerely,

                                         Ashley N. Tease
                                         Complaints Examining Unit

205.    From late September 2017, Plaintiff noticed Mr. Glenn Thrush (hereinafter "THRUSH") from the New York Times on MSNBC on-air appearances with a sense of familiarity.  Upon closer examination of THRUSH on MSNBC, Plaintiff believes that THRUSH is one of the two men who claimed to be FBI agents appearing at Plaintiff's PRIMARY_RESIDENCE on March 8th 2017.

(1)    While THRUSH's appearance as a balding man with facial hair is evident, Plaintiff recognizes THRUSH's facial appearance and believes THRUSH appeared at Plaintiff's PRIMARY_RESIDENCE on March 8th 2017 wearing a wig without facial hair;

(2)    On March 8th 2017 at Plaintiff's PRIMARY_RESIDENCE

i.  neither of the two men claiming to be FBI agents wore any FBI marked clothing;

ii.  the two men claiming to be FBI agents only showed Plaintiff one form of identification (bi-fold wallet; green / bluish paper); the identification did not include any photos to associate a face; the identification did not include any metallic FBI badge;

iii.  the two men claiming to be FBI agents stated they were transferring a message on behalf of US Attorney J.P. Kennedy (Western District of New York) requesting that I refrain from further contacting US Attorney J.P. Kennedy and that any further contacts with US Attorney J.P. Kennedy would lead to harassment charges against Plaintiff;

iv.  Plaintiff initially did not question the two men claiming to be FBI agents since Plaintiff has never formally been previously approached by any FBI agents, thus, Plaintiff did not question the two men's authenticity at the time

206.    On October 27th 2017, Plaintiff served a Verified Answer and Counterclaim on STEPHANIE.

207.    On November 8th 2017, Plaintiff served an Amended Verified Answer and Counterclaim on STEPHANIE.

208.    On November 9th 2017, F_AND_H file Plaintiff's Verified and Amended Verified Answers at Monroe County Supreme Court (hereinafter "MCSC").

209.    On November 1st 2017 (11/1/17), www.thehill.com publishes "Fusion GPS paid ex-British spy $168,000 for work on dossier" (an amount similar to STEPHANIE's 2016 earnings), see below:



# Fusion GPS paid ex-British spy $168,000 for work on dossier

BY BROOKE SEIPEL · 11/01/17 10:00 PM EDT

**397** SHARES

Just In...

On ObamaCare, Republicans in Congress should follow Trump
OPINION — 2M 45S AGO

Trump: 'I'm thinking about' pulling ICE out of California
LATINO — 12M 3S AGO

New surge in civil lawsuits tied to Deepwater Horizon spill: study
ENERGY & ENVIRONMENT — 14M 52S AGO

Pa. redistricting casts shadow over heated special election
CAMPAIGN — 16M 52S AGO

Ellen DeGeneres to Trump: You don't 'unite people' by attacking Oprah
IN THE KNOW — 30M 1S AGO

The Hill's 12:30 Report
12:30 REPORT — 37M 32S AGO

The hunt for spies: A lesson in politics and law from the Cold War
OPINION — 32M 48S AGO

Schumer: Will Trump cave to NRA on gun control?
SENATE — 39M 29S AGO

VIEW ALL



© Getty

The private research firm behind a dossier that included incendiary allegations about President Trump revealed in a statement Wednesday that it paid $168,000 for a former British spy's work assembling the documents.

According to a report by Reuters, opposition research firm Fusion GPS told Congress that it paid former MI6 officer Christopher Steele's company, Orbis Business Intelligence, $168,000 in 2016.

The money from Fusion GPS came from $1.02 million it had received from the Perkins Coie law firm, which represented the Democratic National Committee (DNC) and Hillary Clinton's presidential campaign.

The Washington Post first reported last week that Clinton's campaign and the DNC funded the dossier.

The transaction passed through Democratic lawyer Marc Elias of Perkins Coie. Elias contracted the work out to Fusion GPS, which had the connection to Steele.

While none of the principals have denied that the Clinton campaign and DNC funded the dossier through payments to Perkins Coie, everyone involved is claiming they did not know about the project.

BuzzFeed News published the dossier in January. Other media outlets declined to publish the report because it contained unverified material

TAGS  HILLARY CLINTON

210.    On or around November 16th 2017, Plaintiff discovers STEPHANIE obtaining spouse (Plaintiff) life insurance and accident death & dismemberment (AD&D) coverage for 2018 enrollment without Plaintiff's prior knowledge or consent.

211.    On or around November 23rd 2017, Plaintiff forwards several emails to RIZZO asking RIZZO to be aware of STEPHANIE's illicit conduct, especially given STEPHANIE obtaining spousal AD&D coverage without Plaintiff's prior knowledge or consent.

212.    On or around February 28th 2018 and March 8th 2018, Plaintiff attempted to send another email addressed to the entire United States Department of Justice including FBI, US Attorneys, Special Counsel, and DOJ and FBI Ombudsman regarding assistance to Plaintiff's matter, see below:



| | |
|---|---|
| **From:** | James W. Yoo |
| **To:** | |
| **Cc:** | |
| **Subject:** | NYT Reporter Glenn Thrush claiming to be FBI Agent? Yoo. 18USC241, 18USC242, etc |
| **Date:** | Wednesday, February 28, 2018 8:18:20 AM |
| **Attachments:** | image009.png |
| | image012.png |
| | image013.png |
| | image014.png |
| | image017.png |
| | image018.png |
| | image019.png |
| | image020.png |
| | image021.png |
| | image023.png |
| | 1_Yoo_Title18_USC_Sect241_242_v170228.pdf |
| | DoJ_FBI_USA_Fedex.pdf |

**February 28, 2018**

**To the Honorable Attorney General Jeff Sessions, FBI Director Christopher Wray, and the entire United States Department of Justice including the FBI and U.S. Attorneys**

**United States Department of Justice**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530-001**

Dear Department of Justice:

Regretfully, I am writing to follow up as I have sought and continue to seek your help with my matter since the beginning of 2017.

### DID NEW YORK TIMES REPORTER GLENN THRUSH CLAIM TO BE AN FBI AGENT?

On March 8th 2017, two men appeared at my house and claimed to be FBI Agents from the Rochester NY field office. The two men only showed me one form of identification (bi-fold wallet; green/bluish paper). Both men were not wearing any FBI marked clothing, their IDs did not have any pictures, and their IDs did not have any metallic FBI badges. I have never been approached by any FBI agents in my life so I did not question their 'authenticity' at the time.

The two men claimed that they were transferring a message on behalf of US Attorney J.P. Kennedy (Western NY District) requesting that I refrain from further contacting US Attorney J.P. Kennedy and

that any further contacts with US Attorney J.P Kennedy would lead to harassment charges.

Regretfully, I now believe that one of the men who claimed to be an FBI Agent was New York Times Reporter Glenn Thrush.

I happened to see Mr. Thrush periodically on MSNBC and then took a very close look at him during one of his MSNBC appearances in late September 2017. While his on-air appearances as a balding man with facial hair is evident, I believe that Mr. Thrush appeared at my house on March 8th 2017 wearing a wig and without facial hair; I believe that I recognize and remember Mr. Thrush's face as that of one of the men who appeared at my house on March 8th 2017 claiming to be an FBI Agent.

- **Did Mr. Glenn Thrush falsely claim that he was as an FBI Agent on March 8th 2017 at my primary residence?**

- **Were either of the two gentlemen that appeared at my primary residence on March 8th 2017 bona fide FBI Agents?**

- **If either of the two gentlemen that appeared at my primary residence on March 8th 2017 claiming to be FBI Agents were NOT bona fide FBI Agents, then why did US Attorney J.P. Kennedy state and confirm in his March 28th 2017 email to me that the two gentlemen were indeed bona fide FBI Agents?**

- **Is Mr. Glenn Thrush being silenced? If yes, why and by whom?**

Below is my email thread to US Attorney Kennedy inquiring about sending two FBI Agents on his behalf:

From: **Kennedy, James (USANYW)**
Date: Tue, Mar 28, 2017 at 3:34 PM
Subject: RE: Yoo. Visit from 2 Gentlemen claiming to be from Rochester FBI
To: James Yoo <thejamesyoo@gmail.com>
Cc: 

Mr. Yoo-

　　　Yes, those were authentic FBI agents who visited you and instructed you to stop contacting me and this Office. There is not anything my Office can do for you as we are responsible for enforcing federal criminal laws.

Respectfully,

JP Kennedy
Acting United States Attorney

(LARGE PORTION OF EMAIL REDACTED)

**General Hospital?**

Other calls and faxes to the U.S. Department of Justice and FBI include:
- U.S. Attorney J.P. Kennedy (Western District of NY)
- U.S. Attorney Brian Stretch (Northern District of California)
- Chief Tamara Kessler (U.S. DoJ Civil Rights Division / Criminal Section)



**Total Due**            **$86.36**

**Usage Details**

**Fios Digital Voice**

| Date/Time | From Number | To Number | Destination | Plan | Min | Amount |
|---|---|---|---|---|---|---|
| 2/9/17 9:05 am | 3159860972 | 7168567800 | BUFFALO NY ← | call. FBI. Buffalo, NY | | .00 |
| | | | | | | .00 |
| 2/16/17 8:48 am | 3159860972 | 7165513052 | BUFFALO NY ← | fax. US Attorney JP Kennedy; Western District of NY | | .00 |
| 2/16/17 8:53 am | 3159860972 | 7185513052 | BUFFALO NY | | | .00 |
| 2/16/17 12:27 pm | 3159860972 | 4085355066 | SNJS WEST CA | | | .00 |
| 2/16/17 12:31 pm | 3159860972 | 4085355066 | SNJS WEST CA | fax. US Attorney Brian Stretch; Northern District of CA | | |
| | | | | | | .00 |
| 2/21/17 3:07 pm | 3159860972 | 2025148336 | WASHINGTON DC .. | fax. Chief US DoJ Civil Rights Div / Criminal Section. Tamara Kessler | | .00 |
| 2/21/17 3:09 pm | 3159860972 | 2025148338 | WASHINGTON DC ← | | | .00 |
| 2/21/17 3:13 pm | 3159860972 | 2025148336 | WASHINGTON DC .. | | | .00 |
| 2/21/17 3:23 pm | 3159860972 | 7165513052 | BUFFALO NY .. | | | .00 |
| | | | | | | .00 |
| Total | | | | fax. US Attorney JP Kennedy; Western District of NY | | .00 |

Furthermore, I noticed a change in Assistant Special Agents in Charge at the Buffalo New York Field Office. What happened to
- Holly Hubert. FBI. Assistant Special Agent in Charge. Buffalo, NY
- Steven Lanser. FBI. Assistant Special Agent in Charge. Buffalo, NY ???

## I SUSPECT VERIZON (AMONG OTHERS)
## PURPOSEFULLY DELETE OR MODIFY CALL RECORDS.

**Verizon landline call records are missing calls that I originated from my home number (315-986-0972) to:**
- **2/21. Mr. David Zukher, attorney; Syracuse, NY**
- **2/22. Mr. Louis Cristo, attorney; Rochester, NY**
- **2/22. Mr. Peter Rodgers, attorney; Rochester, NY**
- **2/22. Mr. Robert King, attorney; Rochester, NY**

- **CALL RECORDS ARE MISSING; CALL RECORDS SEEMS TO HAVE BEEN PURPOSEFULLY DELETED**

- **How many more of my Verizon primary residence landline call records have been deleted and/or modified that I am unaware of?**

- **Who else aided and abetted in helping Verizon purposefully delete and/or modify my**

**primary residence landline call records?**

**Usage Details**

**Fios Digital Voice**



| Date/Time | From Number | To Number | Destination | Plan | Min | Amount |
|---|---|---|---|---|---|---|
| 2/23/17 12:11 pm | 3159860972 | 4085355066 | SNJS WEST CA | fax. US Atty B.Stretch; N.District CA | | |
| 2/23/17 4:29 pm | 3159860972 | 4085355066 | SNJS WEST CA | | | |
| 2/23/17 4:33 pm | 3159860972 | 7165513052 | BUFFALO NY | fax. US Atty JP Kennedy; W.District NY | | |
| 2/23/17 4:38 pm | 3159860972 | 2025148336 | WASHINGTON DC | fax. Chief Tamara Kessler; DoJ | | .00 |
| | | | | -- | -- | .00 |
| 2/23/17 8:05 pm | 3159860972 | 2025143204 | WASHINGTON DC | call. Chief Tamara Kessler; DoJ | | |
| | | | | -- | -- | 00 |
| 2/24/17 10:24 am | 3159860972 | 2025143204 | WASHINGTON DC | call. Chief Tamara Kessler; DoJ | | 0 |
| | | | | -- | -- | 00 |
| 2/24/17 5:14 pm | 3159860972 | 7168435700 | BUFFALO NY | call. US Atty JP Kennedy; W.District NY | | |
| | | | | -- | -- | 00 |
| 3/3/17 9:37 am | 3159860972 | 2025143204 | WASHINGTON DC | call. Chief Tamara Kessler; DoJ | | |
| | | | | -- | -- | 00 |
| | | | | -- | -- | 00 |
| 3/3/17 3:58 pm | 3159860972 | 4085355061 | SNJS WEST CA | call. US Atty B.Stretch; N.District CA | | |
| 3/3/17 4:01 pm | 3159860972 | 4085355061 | SNJS WEST CA | | | |
| 3/3/17 4:20 pm | 3159860972 | 4154367200 | SNFC CNTRL CA | call. US Atty B.Stretch; N.District CA | | |
| 3/3/17 4:21 pm | 3159860972 | 4154367200 | SNFC CNTRL CA | | | |
| 3/3/17 4:27 pm | 3159860972 | 7168567800 | BUFFALO NY | -- | | 00 |

I DO NOT recall placing this call to the Buffalo, NY FBI.

| 3/3/17 4:38 pm | 3159860972 | 4155537400 | SNFC CNTRL CA | |
| 3/3/17 4:43 pm | 3159860972 | 4155537400 | SNFC CNTRL CA | |
| 3/3/17 4:43 pm | 3159860972 | 4155537400 | SNFC CNTRL CA | |

I DO NOT recall placing these calls to the San Francisco, CA FBI

| | | | | -- | -- | 00 |
| 3/6/17 12:57 pm | 3159860972 | 4085355061 | SNJS WEST CA | call. US Atty B.Stretch; N.District CA | | |
| 3/6/17 1:02 pm | 3159860972 | 4085355061 | SNJS WEST CA | | | |
| 3/6/17 1:04 pm | 3159860972 | 4154367200 | SNFC CNTRL CA | | | |
| 3/6/17 1:46 pm | 3159860972 | 7168567800 | BUFFALO NY | -- | -- | .00 |
| 3/8/17 9:28 am | 3159860972 | 7165513052 | BUFFALO NY | fax. US Atty JP Kennedy; W.District NY | | |
| 3/8/17 9:35 am | 3159860972 | 7165513052 | BUFFALO NY | | | |
| 3/8/17 9:40 am | 3159860972 | 7165513052 | BUFFALO NY | | | |
| 3/8/17 11:29 am | 3159860972 | 7165513052 | BUFFALO NY | | | |
| 3/8/17 1:04 pm | 3159860972 | 4154367234 | SNFC CNTRL CA | fax. US Atty B.Stretch; N.District CA | | |
| 3/8/17 1:15 pm | 3159860972 | 2025148336 | WASHINGTON DC | fax. Chief Tamara Kessler; DoJ | | |
| **Total** | | | | | | .00 |

I DO NOT recall placing this call to the Buffalo, NY FBI.

- **Furthermore, I DO NOT recall placing the supposed calls pictured above:**
  - **3/3/17. Call to Buffalo, NY FBI**
  - **3/3/17. Calls to San Francisco, CA FBI**
  - **3/6/17. Call to Buffalo, NY FBI**

## ATTEMPTS TO REACH SPECIAL COUNSEL ROBERT MUELLER III AND JEANNIE RHEE ON JULY 14TH 2017 AND JULY 31ST 2017:

I attempted to contact Special Counsel Robert Mueller and Jeannie Rhee and sent two similar deliveries (the first via Fedex on July 14th 2017 and then via USPS Priority Mail on July 31st, 2017)

with a cover letter and encrypted DVD.

Below is a copy of the July 31st, 2017 cover letter:

July 31, 2017

Hon. Robert Mueller
Special Counsel
cc: Special Counsel Jeannie Rhee

United States Department of Justice
Office of Special Counsel
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Office of Special Counsel. Headquarters
1730 M Street, N.W.
Suite 218
Washington, D.C. 20036-4505

Dear Special Counsel Mueller,

My name is James Yoo.

I suspect what I am about to describe, which seriously impacted me and continues to impact me today, may relate to the matters you may be investigating.

I copied Special Counsel Rhee on this correspondence. My deceased Father, Ki Hong Yoo, was familiar with Jhoon Rhee who is widely regarded as the Father of American Taekwondo. The last time I saw and spoke to Grandmaster Rhee was at Laila Ansari's first wedding at the Willard Hotel in Washington, D.C. in the mid-1990's. I wonder if Special Counsel Rhee is somehow related to Grandmaster Jhoon Rhee.

I contacted your (and Special Counsel Rhee's) email without any success; robert.mueller@osc.gov and jeannie.rhee@osc.gov.

I am not asking anyone to treat me in a more favorable manner considering some of my connections.

I only ask those charged with a solemn oath of duty to uphold the U.S. Constitution, uphold U.S. Federal Code, uphold State Code, uphold Due Process, and uphold Rule of Law.

I was the former Head of Security for Global Crossing during the company's CFIUS review in 2002/2003. My employment with Global Crossing was terminated due to a reduction in force shortly before the Department of Justice approved the CFIUS review.

Enclosed is a DVD with my full letter along with corresponding Exhibits which are encrypted and password protected.

Furthermore, you should have already received a FedEx delivery addressed to you and Special Counsel Rhee at the two addresses noted at the beginning of this letter. The FedEx packages shipped on July 12th, delivered on July 14th, and contained a brief cover letter with an encrypted and password protected DVD containing my full letter along with corresponding Exhibit.

Enclosed is a copy of the FedEx delivery confirmations.

Will you be so kind and contact me from a bona fide phone number or email address to

confirm receipt of my FedEx packages and to receive the password to enable reading my full
letter encrypted on the DVDs?

Respectfully,

James Yoo
711 Rookery Way Macedon, NY 14502
H. 315-986-0972
thejamesyoo@protonmail.com

Enclosed:
- copy of FedEx delivery confirmations; 779602366920, 779602632894,
  779602586939, 779602470889.
- DVD with password protected and encrypted files

## CONTENTS OF DVD ENCRYPTED LETTER; ATTEMPTS TO REACH SPECIAL COUNSEL ROBERT MUELLER III AND JEANNIE RHEE ON JULY 14TH 2017 AND JULY 31ST 2017:

Below is the text of the July 31st 2017 letter sent to Special Counsel Robert Mueller III and Jeannie
Rhee; a letter similar to the July 14th letter.

July 31, 2017

Hon. Robert Mueller
Special Counsel
cc:  Special Counsel Jeannie Rhee

United States Department of Justice
Office of Special Counsel
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Office of Special Counsel. Headquarters
1730 M Street, N.W.
Suite 218
Washington, D.C. 20036-4505

Dear Special Counsel Mueller,

My name is James Yoo.

I suspect what I am about to describe, which seriously impacted me and continues to impact
me today, may relate to the matters you may be investigating.

I copied Special Counsel Rhee on this correspondence. My deceased Father, Ki Hong Yoo,
was familiar with Jhoon Rhee who is widely regarded as the Father of American Taekwondo.
The last time I saw and spoke to Grandmaster Rhee was at Laila Ansari's first wedding at the
Willard Hotel in Washington, D.C. in the mid-1990's. I wonder if Special Counsel Rhee is
somehow related to Grandmaster Jhoon Rhee.

I contacted your (and Special Counsel Rhee's) email without success;
robert.mueller@osc.gov and jeannie.rhee@osc.gov.

I am not asking anyone to treat me in a more favorable manner considering some of my
connections.

I only ask those charged with a solemn oath of duty to uphold the U.S. Constitution, uphold

U.S. Federal Code, uphold State Code, uphold Due Process, and uphold Rule of Law.

I was the former Head of Security for Global Crossing during the company's CFIUS review in 2002/2003.



(NEXT 9 PAGES REDACTED)

**Deeper questions...**

Considering the numerous lies, inaccuracies, and blatant omissions on my RGH medical records, did my Mother's medical experience suffer the same fate resulting in her passing away?

Was my Mother actually 'murdered' in a covert manner?  If so, by whom?  Who has that kind of power, money, and influence?  What would be their motive to 'murder' my Mother?

Why did George Washington University Hospital give up so easily regarding the several hundreds of thousands of dollars of medical bills due regarding my Mother's ICU stay?

Was GW Hospital covering up something nefarious regarding my Mother's death and not wanting any investigation into the matter, thus not aggressively pursuing the ICU medical expenses?

Why did my Aunt in Princeton New Jersey convince me to NOT pursue legal action regarding Mom's death?  Was my Aunt in Princeton New Jersey made aware or become aware of some cover-up and not tell me about it?  Was my Aunt in Princeton New Jersey compensated in any manner as a reward to cover-up any GW Hospital misdeed?

(PORTIONS OF EMAIL REDACTED)

**AUGUST 31<u>ST</u> 2017 RESPONSE FROM THE OFFICE OF SPECIAL COUNSEL
REGARDING MY ATTEMPTS TO CONTACT
SPECIAL COUNSEL ROBERT MUELLER III AND JEANNIE RHEE:**



U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-504-7000

*SENT VIA STANDARD MAIL*
Mr. James Yoo
711 Rockery Way
Macedon, NY 14502

AUG 3 1 2017

Re: OSC File No. MA-17-4893

Dear Mr. Yoo:

This letter is in response to the complaint you recently filed with the U.S. Office of Special Counsel (OSC). Based on our examination of your complaint, we have made a determination to close our inquiry into your complaint.

OSC is authorized to investigate allegations of prohibited personnel practices and certain activities prohibited by civil service law, rule, or regulation.  5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b).  The provisions of 5 U.S.C. § 2302(b) specifically define thirteen prohibited personnel practices for which we have jurisdiction to investigate. However, you have not alleged, nor is there any information in your complaint that indicates, that an official has taken an action that constitutes any of the thirteen personnel practices prohibited by section 2302(b), or any other prohibited activity within the Special Counsel's investigative jurisdiction.

Further, our authority to investigate allegations of prohibited personnel practices extends only to employees, former employees, or applicants for employment to competitive or excepted service positions in the Executive Branch departments and agencies of the federal government. The information you provided indicates that you are not an employee as defined in the provisions of 5 U.S.C. § 2105.  Thus, we have no authority to assist you in this matter.

Sincerely,

Ashley N. Tease
Complaints Examining Unit

- **Will you be so kind and verify the bona fide employment of Ashley N. Tease at the U.S. Office of Special Counsel within the Complaints Examining Unit?**



**STEPHANIE YOO**

Account Number  3150660072
Customer Identification Code

**Account Summary**

**Previous Period**

Previous Period
Previous Balance
Payment Received - Thank You

**Balance Forward**

Plaintiff and STEPHANIE obtained Verizon service on or around September 2002. STEPHANIE has worked for MCI->Verizon since 1996.

**Current Charges**

| Services & Equipment | 65.99 | 8/22 - 9/21 |
| Fees & Other Charges | 21.66 | |
| **Total Due by September 11** | **$87.65** | |

**You're Enrolled in Auto Pay.**

$87.65 will be deducted from your account on 9/11/2017

To avoid a late payment charge of $5 or 1.5% of your total due, whichever is greater, full payment must be received before September 11, 2017

### I NOW WONDER IF I HAVE BEEN SUBJECTED TO
### SUBTLE FORMS OF RACIALLY MOTIVATED 'HATE CRIME'?

In the Summer of 2016, my wife kept telling me to play golf with my neighbor John Campana. One outing at Blue Heron Hills Country Club, John made it a point to introduce me to a very elder gentleman by the (supposed) name of Werner Albrecht (I am unsure regarding the spelling of the name) before teeing off.

In private as we were carting towards the first tee, John claimed that Werner Albrecht used to work as a high-level staffer for Adolf Hitler.

To this day, I have no idea regarding John Campana's true motivation regarding the above incident with Werner Albrecht. I have no idea if John Campana was lying to me, or if he was trying to subtly scare me, or if he was trying to influence me.

Let me be clear: I do not identify myself with 'white supremacists'.

### I NOW WONDER IF I HAVE BEEN SUBJECTED TO
### SUBTLE FORMS OF POLITICALLY MOTIVATED 'HATE CRIME'.

### I NOW FURTHER WONDER IF PERSON(S) AND/OR ENTITIES
### WITH VAST MONETARY AND POLITICAL RESOURCES,
### DIRECTLY OR INDIRECTLY (THROUGH PRIVATE ACTORS),
### IMPROPERLY AND/OR UNLAWFULLY SURVEILLED ME
### THROUGHOUT MY ENTIRE LIFE CONSIDERING MY PARENT'S POLITICAL INTERACTIONS.

**Coincidences?**

- **Mr. Brian Stretch was appointed US Attorney on March 30th, 2016 as US Attorney for the Northern District of California…very shortly after I (and my wife) 'settled' the** legal matter with the former tenants ▮▮▮▮ who threatened and accused me of somehow causing ▮▮▮▮ unsubstantiated miscarriage.
  - I suspect ▮▮▮▮ is deeply tied to this collusion / conspiracy against me considering her family's connection with ▮▮ Point ▮ demy and her

(PORTIONS OF EMAIL REDACTED)



(from right to left; Kim Dae Jung, Senator Ted Kennedy, Ki Hong Yoo (my father), I am not familiar with the person on the far left).

My sister asked me to email the exact same picture (shown above) to her years ago as part of her supposed book research. My sister also mentioned years ago that she was attempting to actually reach Kim Dae Jung personally; she subsequently said that her efforts were not fruitful.

**Again, I suspect my sister, Aileen Yoo, is one of the primary conspirators; conspiring and colluding against me. Given her lifelong relationship with ▮▮▮▮ ▮▮▮▮ family, and the ▮▮▮▮ ties with the U.S. Government and U.S. Military, I believe my concerns about collusion and conspiracy against me (directly and indirectly) are believable and credible.**

**Shortly after sending the email with the above picture attached, James P. Kennedy was named Acting US Attorney for the Western District of New York on October 31, 2016.**

Looking back, I wonder if my wife's friend, A█████ S█████, is involved with my wife's (and other's) conspiracy / collusion against me. My wife and I attended A█████ wedding many years ago in Philadelphia. It was my understanding back then that A█████ was very involved with the Democratic National Committee (DNC).

Also looking back, I wonder if the executive protective security service that I hired for my move-out inspection with █████████████ l is involved with my wife's (and other's) conspiracy / collusion against me. I hired █████████. I asked and tried to get █████ to provide a Statement of Work contract for the engagement; he (and my wife) convinced me that such a contract was not necessary. In hindsight, I should not have trusted █████ ' nor my wife's 'advice' regarding not having a formal contract for executive protective service. Again, this is another example of my wife not working in my best interest.

## U.S. GOVERNMENT BANS KASPERSKY SECURITY SOFTWARE FROM FEDERAL AGENCIES SHORTLY AFTER MY ATTEMPTS TO REACH SPECIAL COUNSEL MUELLER AND RHEE.

I noticed shortly after my attempts to reach Special Counsels Mueller and Rhee that the US Federal Government quickly initiated and then banned the use of Kaspersky security software.

### Coincidence?

I would like to believe that the US Federal Government underwent a rigorous process justifying their mandate to ban Kaspersky security software from Federal agencies and that I am not being used as an/the excuse for such decisions.

## I WONDER IF THE MEDIA IS DIRECTLY OR INDIRECTLY COMPLICIT IN ATTEMPTS TO BRING ME TO MY DEMISE.

### Coincidences?

- I now remember noticing Wolf Blitzer (CNN Anchor) at Maggiano's Italian Restaurant in Bethesda, Maryland years ago as I was attending my sister's close friend's (Judy Coan Stephens) wedding reception.

- As I noted in my earlier documents sent to the DoJ, FBI, and US Attorneys Office, I also wonder if the NBC local Investigative Reporter, █████████████, is somehow connected; he and I used to go to the same barber as I have seen him on a few occasions.

- CNN's very recent Special Reports on "The Kennedys" and "Patty Hearst".

- Late 2017, MSNBC commentators and anchors kept using the phrase "ginned up". I wonder if MSNBC was attempting to mock me; I overconsumed gin the night before my ordeal at Rochester General Hospital in November 2015.

- Why was Rep. Kennedy's lips to focus of social media in what was referred to as "Chapstick-gate" after his response to President Trump's State of the Union Address. Many people who know me may say that I use lip balm regularly.

- Rochester, New York local TV commercial by ESL Federal Credit Union:
  - My wife stole $72,000 from our joint account at the beginning of March 2017 and transferred the funds into her personally held ESL Federal Credit Union account (which I

had no prior knowledge of its existence).
- ○ Below is a Rochester, New York local TV commercial that I noticed airing late 2017
- ○ https://youtu.be/Q598zKn6wGg

> the Rochesteriat
> Published on Oct 14, 2016
> Video Ad created by Creative Firm Dixon Schwabl for ESL Business Mobile
> Banking featuring Jason and Stefanie Schwingle of the Rochesteriat. **Ad ran
> on various television stations during the 2016 Summer Olympics
> through the early fall of 2016.** Production took place in fall of 2015 at
> various sites in the City of Rochester.

- ○ The ad seems to be mocking me ...





(PORTIONS OF EMAIL REDACTED)

## **MORE INNUENDOES / THREATS AGAINST ME**

Considering everything that I have been subjected to...



Maybe someone thinks this is funny; I am not amused.

(REMAINING EMAIL REDACTED)



213.   On March 9th 2018, STEPHANIE files RJI for Action for Divorce.

214.   On April 2nd 2018, F_AND_H sends a letter to MCSC Assignment Office demanding a trial by jury.

215.   On March 22nd, March 27th, and April 4th, Plaintiff forwards email, previously sent to the United States Department of Justice regarding Plaintiff's matter, to the United States Committee on the Judiciary requesting assistance to Plaintiff's matter, see below:



**From:** James W. Yoo
**To:**

**Cc:**
**Subject:** FW: NYT Reporter Glenn Thrush claiming to be FBI Agent? Yoo. 18USC241, 18USC242, etc
**Date:** Wednesday, April 04, 2018 1:27:16 PM
**Attachments:** image009.png
image012.png
image013.png
image014.png
image017.png
image018.png
image019.png
image020.png
image021.png
image023.png
1_Yoo_Title18_USC_Sect241_242_v170228.pdf
DoJ_FBI_USA_Fedex.pdf

**April 4, 2018**

**United States Senate**
**Senate Committee on the Judiciary**
**224 Dirksen Senate Office Building**
**Washington, D.C.  20510-6050**

**To the Honorable Chairman of the United States Senate Committee on the Judiciary**
**Senator Chuck Grassley,**
**Ranking Member Senator Dianne Feinstein, and the entire United States Senate**
**Committee on the Judiciary:**

I am resending my previous email with revised email addresses.

Please also note the corrected password; the password is the same as the one sent to the Department of Justice.

Respectfully,

**James Yoo**
711 Rookery Way Macedon, NY  14502



Attached to this email:

- 1_Yoo_Title18_USC_Sect241_242_v170228.pdf    password ████████
  - Sample main document sent to the Department of Justice, FBI, and US Attorneys Offices in Buffalo New York and San Francisco California in 2017
- DoJ_FBI_USA_Fedex.pdf
  - Copy of FedEx deliveries to the Department of Justice, FBI, and US Attorneys Offices in Buffalo New York and San Francisco California in 2017

(REMAINING EMAIL REDACTED)

216.    On March 26th 2018, Plaintiff sends an email to the U.S. Office of Special Counsel and Special Counsel attempting to verify the bona fide employment of "Ashley N. Tease" in the Complaints Examining Unit, see below:

| From: | James W. Yoo |
|---|---|
| To: | |
| Cc: | usaeo.VictimOmbudsman@usdoj.gov; John |
| Subject: | RE: Ashley N. Tease; bona fide employee?, Complaints Examining Unit / OSC |
| Date: | Monday, March 26, 2018 10:36:34 AM |
| Attachments: | image001.png |

**March 26, 2018**

**US Office of Special Counsel and**
**Special Counsel**

**Dear US Office of Special Counsel and Special Counsel:**

I attempted to reach out to Special Counsel Robert Mueller and Jeannie Rhee last July 2017 regarding a matter.

I received the letter (embedded below) from "Ashley N. Tease" in the Complaints Examining Unit.

Will you be so kind and verify the bona fide employment of "Ashley N. Tease" in the Complaints Examining Unit (OSC)?

Thank you for your help in advance.

Respectfully,


**James Yoo**
711 Rookery Way
Macedon, NY  14502
H: 315-986-0972


**From:** James W. Yoo <jamesyoo@rochester.rr.com>
**Sent:** Thursday, March 08, 2018 3:23 PM
**To:**
**Cc:** usaeo.VictimOmbudsman@usdoj.gov;

**Subject:** Ashley N. Tease; bona fide employee?, Complaints Examining Unit / OSC

**March 8, 2018**

**US Office of Personnel Management**
**1900 E. Street, NW**
**Washington, DC  20415**
**Director's Office**


**Dear Acting Director Kathleen McGettigan and the Director's Office:**

I attempted to reach out to Special Counsel Robert Mueller and Jeannie Rhee last July 2017 regarding a matter.

I received the letter (embedded below) from "Ashley N. Tease" in the Complaints Examining Unit.

217.    On March 30, 2018, MSNBC's Richard Engle reports "Kremlin hit list includes Christopher
Steele", see below:



218.    On April 5th 2018, Plaintiff sends an email to the United States Committee on the Judiciary
regarding Plaintiff's belief that the August 31st 2017 letter received by Plaintiff from the U.S. Office
of Special Counsel was fraudulent in nature, see below:



| | |
|---|---|
| **From:** | James W. Yoo |
| **To:** | |
| **Cc:** | |
| **Subject:** | FW: Ashley N. Tease; bona fide employee?, Complaints Examining Unit / OSC |
| **Date:** | Thursday, April 05, 2018 1:04:11 PM |
| **Attachments:** | image001.png |
| **Importance:** | High |

**April 5, 2018**

**United States Senate**
**Senate Committee on the Judiciary**
**224 Dirksen Senate Office Building**
**Washington, D.C.  20510-6050**

**To the Honorable Chairman of the United States Senate Committee on the Judiciary Senator Chuck Grassley,**
**Ranking Member Senator Dianne Feinstein, and the entire United States Senate Committee on the Judiciary:**

I have attempted to reach out to the US Office of Special Counsel and Special Counsel regarding this email thread.

Regretfully, I believe that someone in the US Office of Special Counsel and/or Special Counsel fraudulently sent the letter to me (exhibited below my signature and again at the bottom of the initiating email).  That is, I do not believe 'Ashley N. Tease' is a bona fide employee of the U.S. Office of Special Counsel.  I further believe that the fraudulent letter was purposefully sent to me, intentionally and negligently inflicting emotional distress upon me.

219.     Plaintiff received notice from TOM on April 20th 2018 that the Preliminary Conference was

rescheduled from April 20th 2018 with Acting Supreme Court Justice Richard Dollinger (hereinafter

JUDGE_D) at MCSC to May 18th 2018.

220.     On April 23rd 2018, Plaintiff and F_AND_H receive a copy of the Request for Judicial

Intervention.

221.     On April 26th 2018, Google blocks Plaintiff' from sending email to members of the press

from Plaintiff's Gmail account, see below:



222.   On May 18th 2017, Judge Dollinger rejected Plaintiff's request for trial by jury in Action for Divorce.

## CAUSES OF ACTION

## COUNT I

### CONSPIRACY AGAIN RIGHTS (18 U.S.C. § 241)
### (AGAINST ALL DEFENDANTS)

223.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

224.    While 18 U.S.C. § 241 is in relation to 'state actors', Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4]. The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

　　　(1)　　When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

　　　(2)　　When the state has sought to evade a constitutional duty through delegation of private actor;

　　　(3)　　When the state has delegated the traditionally and exclusively public function to a private act; and

　　　(4)　　When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

225.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

　　　(1)　　The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process.* Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty.* Courts must determine the nature

and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)    RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)    Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

  i.    Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

  ii.    Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

  iii.    "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

226.    Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions.  RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

227.    Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015

228.    Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    "The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution prohibits states from denying any person within its territory the equal protection of the laws.  This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)    Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

229.    Defendant's actions damaged Plaintiff emotionally and psychologically.

230.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT II

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (18 U.S.C. § 242)
### (AGAINST ALL DEFENDANTS)

231.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

232.    While 18 U.S.C. § 242 is in relation to 'state actors' acting under 'color of law', Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4]. The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

(1)     When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

(2)     When the state has sought to evade a constitutional duty through delegation of private actor;

(3)     When the state has delegated the traditionally and exclusively public function to a private act; and

(4)     When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

233.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

(1)     The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process.* Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty.* Courts must determine the nature

and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)      RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)      Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

    i.   Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

    ii.  Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

    iii. "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

234.   Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)      Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions. RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

235.    Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015.

236.    Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    "The Equal Protection Clause of the <u>Fourteenth Amendment</u> of the <u>U.S. Constitution</u> prohibits states from denying any person within its territory the equal protection of the laws.  This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)    Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

237.    Defendant's actions damaged Plaintiff emotionally and psychologically.

238.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT III

### CIVIL ACTION FOR DEPRIVATION OF RIGHTS (18 U.S.C. § 1983)
### (AGAINST ALL DEFENDANTS)

239.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

240.    Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4].  The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

(1)     When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

(2)     When the state has sought to evade a constitutional duty through delegation of private actor;

(3)     When the state has delegated the traditionally and exclusively public function to a private act; and

(4)     When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

241.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

(1)     The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process.* Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty.* Courts must determine the nature and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)    RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)    Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

    i.    Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

    ii.   Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

    iii.  "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

242.   Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions. RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

243.   Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)     RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015

244.    Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)     "The Equal Protection Clause of the <u>Fourteenth Amendment</u> of the <u>U.S. Constitution</u> prohibits states from denying any person within its territory the equal protection of the laws.  This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)     Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

245.    Defendant's actions damaged Plaintiff emotionally and psychologically.

246.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.


# COUNT IV

## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (18 U.S.C. § 1985(2)(3))
## (AGAINST ALL DEFENDANTS)

247.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

248.    Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4].  The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

(1)    When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

(2)    When the state has sought to evade a constitutional duty through delegation of private actor;

(3)    When the state has delegated the traditionally and exclusively public function to a private act; and

(4)    When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

249.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

(1)    The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process.* Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty.* Courts must determine the nature and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)    RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)    Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

    i. Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

    ii. Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

    iii. "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

250.　Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

    (1)　Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions. RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

251.　Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

    (1)　RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015

252.　Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    "The Equal Protection Clause of the <u>Fourteenth Amendment</u> of the <u>U.S.</u> <u>Constitution</u> prohibits states from denying any person within its territory the equal protection of the laws. This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)    Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

253.    Defendant's actions damaged Plaintiff emotionally and psychologically.

254.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress. Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT V

### PROCEEDINGS IN VINDICATION OF CIVIL RIGHTS (42 U.S.C. § 1988)
### (AGAINST ALL DEFENDANTS)

255.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

256.    Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4]. The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

(1)    When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

(2)    When the state has sought to evade a constitutional duty through delegation of private actor;

(3)    When the state has delegated the traditionally and exclusively public function to a private act; and

(4)    When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

257.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

(1)    The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process*. Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty*. Courts must determine the nature and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)    RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)    Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

   i.    Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

   ii.   Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one

pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

    iii.   "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

258.   Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

    (1)   Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions.  RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

259.   Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

    (1)   RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015

260.   Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

    (1)   "The Equal Protection Clause of the <u>Fourteenth Amendment</u> of the <u>U.S. Constitution</u> prohibits states from denying any person within its territory the equal protection of the laws.  This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)    Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

261.    Defendant's actions damaged Plaintiff emotionally and psychologically.

262.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT VI

### MEDICAL MALPRACTICE (NEW YORK CPLR § 214-a)
### (AGAINST ROCHESTER GENERAL HOSPITAL)

263.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

264.    Plaintiff is exempt from New York CPLR CVP § 3012-a (Certificate of merit in medical malpractice action) paragraph (f) since Plaintiff is not represented by an attorney.

265.    ROCHESTER GENERAL HOSPITAL's actions damaged Plaintiff emotionally and psychologically.

266.    ROCHESTER GENERAL HOSPITAL's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view ROCHESTER GENERAL HOSPITAL's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT VII

### OTHER TORTS – AN ACTION FOR WHICH NO TIME LIMIT IS PRESCRIBED
### (NEW YORK CIVIL RIGHTS § 4. CIVIL RIGHTS. RIGHT TO KEEP AND BEAR ARMS)
### (AGAINST ALL DEFENDANTS)

267.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

268.    While New York Civil Rights § 4 is in relation to 'state actors', Plaintiff believes that any 'non-state actors (Defendants)' or 'private actors (Defendants)' "engaged in essentially public acts"[4]. The "Fourth Circuit has recognized several factors courts may employ to determine whether a private party will be deemed a state actor for 1983 purposes.

(1)    When the state has coerced the private sector to commit an act that would be unconstitutional if done by the state;

(2)    When the state has sought to evade a constitutional duty through delegation of private actor;

(3)    When the state has delegated the traditionally and exclusively public function to a private act; and

(4)    When the state has committed an unconstitutional act in the course of enforcing the right of a private citizen."[4]

269.    Plaintiff's Fifth Amendment "Due Process" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions.

(1)    The Due Process clause in the United States Constitution "provides that no person shall be "deprived of life, liberty, or property without due process of law." When courts face questions concerning procedural due process, the controlling word in this clause is *process.* Courts must determine how much process is due in a particular hearing to satisfy the fairness requirements of the Constitution. When courts face questions concerning substantive due process, the controlling issue is *liberty.* Courts must determine the nature

and the scope of the liberty protected by the Constitution before affording litigants a particular freedom."[3]

(2)      RGH, STEPHANIE, and AILEEN conspired and deprived Plaintiff communications access in Plaintiff's attempts to contact an attorney.

(3)      Plaintiff believes Defendants through Defendants network of friends, family, and associates, conspired, disparaged Plaintiff, damaged Plaintiff, and deprived Plaintiff's ability to seek a bona fide private attorney to prosecute Plaintiff's matter;

    i.   Any charges, suits, claims, or counter-claims against Plaintiff must be considered for dismissal in its entirety considering Defendants conspiracy deprived Plaintiff's Procedural Due Process.

    ii.   Plaintiff's Substantive Due Process, whereby the controlling issue is liberty, was deprived by Defendant's conspiracy; Plaintiff's "power to do as one pleases"[6], Plaintiff's "power of choice"[6], was deprived by Defendant's conspiracy to obstruct Plaintiff's communications access in order to contact an attorney and to obstruct Plaintiff's ability to prosecute Plaintiff's matter.

    iii.   "Due Process" must be afforded equally from both a defensive nature and prosecutorial nature.

270.   Plaintiff's Second Amendment rights, "the right of the people to keep and bear arms", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)      Plaintiff's RGH medical records note blatantly disparaging comments and contains unvetted notations, outright lies, inaccuracies, and omissions.  RGH and other Defendants conspired to damage Plaintiff's RGH medical records, thus obstructing Plaintiff's ability to obtain any firearm permit or firearm license.

271.    Plaintiff's Fourth Amendment rights, "the right of the people to be secure in their persons,…against unreasonable…seizures", under the United States Constitution was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    RGH, STEPHANIE, AILEEN and others conspired against Plaintiff such that Plaintiff was not secure in his person and Plaintiff was subjected to unreasonable seizure by being held against Plaintiff's will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015

272.    Plaintiff's Fourteenth Amendment "Equal Protection" rights, under the United States Constitution, was deprived by Defendants through Defendant's conspiring actions including, but not limited to:

(1)    "The Equal Protection Clause of the <u>Fourteenth Amendment</u> of the <u>U.S. Constitution</u> prohibits states from denying any person within its territory the equal protection of the laws.  This means that a state must treat an individual in the same manner as others in similar conditions and circumstances."[5]

(2)    Defendants, including but not limited to, RGH, STEPHANIE, and AILEEN conspired to deprive Plaintiff's "Equal Protection" rights by seizing and holding Plaintiff against his will at RGH and Plaintiff's PRIMARY_RESIDENCE in 2015; Plaintiff believes RGH and others conspired to treat Plaintiff unequally based on including but not limited to Plaintiff's race, sex, age, medical condition, and/or political expressions.

273.    Defendant's actions damaged Plaintiff emotionally and psychologically.

274.    Defendant's extreme and outrageous conduct intentionally and recklessly caused Plaintiff to suffer severe emotional and psychological distress.  Any reasonable Court, judge, or jury would view Defendant's conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## PRAYER FOR RELIEF

275.    WHEREFORE, Plaintiff demands judgement against Defendants on all Counts, and seeks such relief as specified below for all Counts for which such relief is provided by law:

(1)    Awarding Plaintiff damages in an amount to be proven at trial, including but not limited to all damages and losses suffered by Plaintiff as a result of Defendants' conduct;

(2)    Awarding Plaintiff compensatory and treble damages, as available, in an amount to be proven at trial;

(3)    Awarding Plaintiff the financial gain earned by Defendants as a consequence of the violations described herein;

(4)    Awarding Plaintiff statutory damages, as available;

(5)    Awarding Plaintiff punitive damages, as available;

(6)    Issuing an injunction restraining Defendants and their officers, agents, servants, employees, assigns, and those acting in active concert or participation with them from:

i.    Accessing Plaintiff's computer networks and/or personal emails without Plaintiff's authorizations;

ii.    Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Plaintiff's computer networks or personal emails;

iii.    Selling, publishing, distributing, or using any property or information obtained from Plaintiff's computer networks or personal emails without Plaintiff's authorization;

iv.    Removing, extracting, or copying any information or data from Plaintiff's computers or personal emails without Plaintiff's authorization;

(7)    Awarding Plaintiff all costs, including but not limited to, attorneys' fees to the full

extent permitted under the applicable law;

(8)    Awarding Plaintiff pre- and post-judgement interest as permitted by law;

(9)    Awarding any other relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

276.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury of all issues so triable.

Date:   May 30th 2018                              Respectfully submitted,

Rochester, New York

James W. Yoo

Plaintiff, *Pro Se*

711 Rookery Way

Macedon, New York  14502

E-mail:  thejamesyoo@protonmail.com

# EXHIBIT A:

## AILEEN YOO PRESENTS BOOK TITLED

## "THE LIFE AND TIMES OF JAMES YOO. A 40-YEAR RETROSPECTIVE"

## TO PLAINTIFF IN JUNE 2007

## IN FRONT OF PLAINTIFF, STEPHANIE, BFF_IMSORRY, AND OTHER FRIENDS OF AILEEN YOO.



**The Life and Times of James Yoo**

A 40-Year Retrospective



In the beginning there was Star Trek.



From an early age James took to botany, mountain biking and swimming. But his heart lay in the Final Frontier

2



James (T. Kirk, that is) commandeered the starship Enterprise through the living room. He was gifted with languages and became fluent in Klingon. Yet his inability to give the Vulcan version of the finger would forever torment him.

3



Star Trek was no match for rock.

Jim shed his cosmic aspirations and rejoiced in the bands of the 1980s. Journey, Night Ranger and Van Halen would have the most profound affect on the budding rocker. They unleashed Jim's inner air guitarist and helped cultivate an unnatural fixation with "Sister Christian."

4



The years spent singing into a comb in front of the mirror paid off. Jim had a brief but successful singing career, which included performing for drunk high schoolers, and later, drunk adults.

5



There are Renaissance men.
And then are Renaissance
men. Jim, being the latter,
was a player on the tennis
team and with the ladies.

His keggers also became
legendary. Stories of his
bacchanals echo through the
halls of Langley High School
to this day.

6



The beer-swilling bravado belied his scholarly pursuits. He was a
standout student in high school and college. While at Va. Tech he began
to ponder the meaning of life. He concluded that he wanted one thing:
To be stinkin' rich.

7



"To make money, one must earn it," Confucious once said. Or was that the voice in Jim's head? At any rate, he was determined to make a six-figure salary. With dollar signs in his eyes, he left Tech and thrived at George Mason Univ., thanks to his intellect.

Cunning didn't hurt either. The one thing Jim learned in high school was how to kiss ass. It wasn't long before the fledgling brown-noser blossomed into a seasoned sycophant.

8




The skill served him well. At Mason Jim buttered up his Ethics 101 professor like a Christmas goose. And despite a spotty attendance and the use of his sister's notes, Jim received an A. She got a B.

She is still bitter about it.

9



This was a time of accomplishment.

Of ambition.

Of loss.

Of unspeakable sadness.

10



Medical bills, mortgages and responsibilities kept piling up like the snow in Maine, where Jim toiled away for several teeth-chattering months as a consultant for Anderson.

11



Jim needed to find himself. He quit the firm and dabbled in yoga and meditation. He even ate a vegetable or two. Then one day it occurred to him that the path to enlightenment was really, really dull. He ditched the incense and turned his attention to something bigger ...

12



... The home makeover. With the usual zeal, he threw himself into renovations, spackling like there was no tomorrow. Over the next few years he single-handedly transformed the Yoo family homes. It wasn't until he bought the Occidental 5530 leather tool belt that he felt complete.

He had officially become a man.

13



Dark gradually gave way to light as MCI came calling. (Get it? A phone company "calls" ... eh, never mind). Jim was hired and quickly rose through the ranks.

14



Adversity builds character. In Jim's case it gave him an uncanny ability to join firms that were synonymous with corruption.

15



Case in point: The accounting arm of Anderson Consulting was later linked to Enron, whose demise erupted into one of the biggest corporate scandals in U.S. history.

MCI -- which became MCI WorldCom, then WorldCom before settling on Com -- tanked too, becoming the largest bankruptcy in U.S. history at that time.

16



Jim's Spidey senses were telling him to abandon ship. Like cat on a trampoline he leapt with fierce agility from MCI to Global Crossing.

17



True to form the new employer crumbled to take its place among the U.S. Bankruptcies' Greatest Hits. Luckily Jim was sent packing before Global Crossing went under. What would be next for the jobless hero with the Trail of Tears resume?

18



Not long after this painting was completed, Aristotle (right) got his philosophical butt kicked by Plato (left) in a game of poker game. Ari was enraged. "Life deals a crappy hand. Even so," he sighed, "bad things happen for good reasons."

19



Taking this axiom to heart, Jim realized there were boons to being jobless, one of which was time. He could pour all his energy into planning -- down to the minute -- his wedding.

20



The weeks flew by. The whirlwind of the nuptials died down. And again Jim was forced to mull the future. His conclusion? You guessed it: Money.

21



Jim displayed his Donald Trump tendencies at an early age with Monopoly. He would buy Boardwalk and Park Place and watched with unblinking, sadistic joy his opponents eke out an existence in the slums of Baltic Avenue.

Allegations of cronyism and fraud against Mr. Yoo have never been proven.

22



Years of experience have come to fruition. Jim is trading while simultaneously devising an unfathomably complex stock market formula that will likely make him billions.

23



Until that day comes, Jim is determined to spend inordinate amounts of time in his bathrobe entertaining fantasies of playing for the Rangers.

His lovely wife, cats and his disgustingly affordable home are his ultimate pride and joy. And if the present is any indication of the future then Jim will be as happy as a clam (which is pretty darn happy).

24



Because, really, what good is life ...

25



... without the people you love
and those who
love you.

26



# **EXHIBIT B:**

## PLAINTIFF'S SUPPOSED INHERITANCE OF REAL ESTATE IN SEOUL, SOUTH KOREA 2007

# POWER OF ATTORNEY

### KNOW ALL MEN BY THESE PRESENTS:

That, ___I,  wan nah Lee_____ ,presently

Residing at _238 Sheridan Oakland Ca. 94618_____

By these presents hereby make, constitute and appoint

_sang chan Lee (380508-1037611) residing at 106, 1F, Chunghwa Apartment 22-2, itaewon-dong, Yongsan-Gu, Seoul,_

true and lawful attorney in fact for me and in my name, place and stead to

_All act concerning the sell, donate and mortgage for inheritance real estate from her mother._

_____

Granting and giving unto my attorney-in-fact full authority and power to do and perform any and all other acts necessary or incident to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized

Hereby, as fully to all intents and purposes as the grantor might or could do if personally present with full power of substitution.

In testimoney whereof, I have hereunto set my hand this __14__ day, of 2007___.

_____

Signature

Republic of Korea        )
City of Seoul             )
Embassy of the           ) s.s.
United States of America)

               A m y  J . H o o d
               Vice Consul

I, _____

Of the United States of America at Seoul, Korea, duly commissioned and qualified, do hereby

certify that on this ____14th____ day, of the ___June_____, 2007_____.

Before me personally appeared __WAN NAH LEE   X   X   X_____

to me personally known, and known to be the individual__ in, whose name is subscribed to, and who executed the foregoing instrument, and being informed by me of the contents of the said instrument, duly acknowledged to me that _____SHE_____ executed the same freely and voluntarily for the uses and purposes therein mentioned.

IN WITNESS WHEREOF I have hereunto set my hand and official seal the day and year above written.

_____

A m y  J . H o o d  of the United States of America
Vice Consul

(Seal)

SEO-222  S:/ACS/Forms/Power of Attorney Aug05

## SPECIAL POWER OF ATTORNEY

I, James W. Yoo (United States of America Social Security ███████ ██████, hereby appoint Sang M. Shinn (United States of America Social Security ████████████████, as my attorney to act in my capacity to do any and all actions necessary related to the sale of the following property:

Seoul Dae Mon-gu Namgaja-dong 248-1 & 248-52

### (248-11)

The rights, powers, and authority of my attorney in fact to exercise any and all of the rights and powers herein granted shall commence and be in full force and effect on June 28, 2007 and shall remain in full force and effect until June 27, 2008, or unless specifically extended or rescinded earlier by either party.

_____          6/28/07
James W. Yoo                              _____
                                          Date


Subscribed and sworn to before me this 29TH day of June 2007.

_____          SUSIE C. JACOBS
Notary Public Signature                   Notary Public, State of New York
                                          No. 01JA6148787
                                          Qualified in Wayne County
                                          Commission Expires June 28, 2010


**Eugene Baek**

**825, Chungwon Lakevill II, Janghang2-dong, Ilsandong-gu,**

**Goyang-si, Gyeonggi-do, Republic of Korea (410-837)**

**(cell: 011-9171-3855)**


**경기도 고양시 일산동구 장항2동 727-2 청원레이크빌2 825**

**(410-837)**

**백 유진 (011-9171-3855)**

## SPECIAL POWER OF ATTORNEY

I, James W. Yoo (United States of America Social Security ██████████ ██████), hereby appoint Sang M. Shinn (United States of America Social Security ████████████), as my attorney to act in my capacity to do any and all actions necessary related to the sale of the following property:

Seoul Dae Mon-gu Namgaja-dong 248-1 & 248-52

The rights, powers, and authority of my attorney in fact to exercise any and all of the rights and powers herein granted shall commence and be in full force and effect on June 28, 2007 and shall remain in full force and effect until June 27, 2008, or unless specifically extended or rescinded earlier by either party.

_____          6/28/07
James W. Yoo                              Date

Subscribed and sworn to before me this 28th day of June 2007.

SUSIE C. JACOBS
Notary Public, State of New York
No. 01JA6148787
Qualified in Wayne County
Commission Expires June 26, 2010

_____          _____
Notary Public Signature              My Commission expires

# SPECIAL POWER OF ATTORNEY

I, James W. Yoo (United States of America Social Security ▓▓▓▓▓▓▓▓▓▓), presently residing at 711 Rookery Way Macedon, New York 14502 United States of America

Hereby make, constitute, and appoint Sang M. Shinn (United States of America Social Security ▓▓▓▓▓▓ residing at 6398 Vale Street Alexandria, Virginia 22312 United States of America, as my true and lawful attorney-in-fact for me and in my name, place, and stead to all acts concerning the sale of inheritance real estate from my grandmother.

Granting and giving unto my attorney-in-fact full authority and power to do and perform any and all other acts necessary or incident to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized

Hereby, as fully to all intents and purposes as the grantor might or could do if personally present with full power of substitution.

The rights, powers, and authority of my attorney-in-fact to exercise any and all of the rights and powers herein granted shall commence and be in full force and effect on June 28, 2007 and shall remain in full force and effect until June 27, 2008, or unless specifically extended or rescinded earlier by either party.

In testimony whereof, I have hereunto set my hand this ___20___ day of July 2007.

_____          _____7/20/2007_____
James W. Yoo                                              Date

I, ___Susie C. Jacobs_____

duly commissioned and qualified, do hereby certify that on this ___20th___ day of July 2007 before me personally appeared James W. Yoo, whose name is subscribed to, and who executed the foregoing instrument, and being informed by me of the contents of the said instrument, duly acknowledged to me that he executed the same freely and voluntarily for the uses and purposes therein mentioned.

IN WITNESS WHEREOF I have hereunto set my hand and official seal the day and year above written.

_____
Notary Public Signature

SUSIE C. JACOBS
Notary Public, State of New York
No. 01JA6148787
Qualified in Wayne County
Commission Expires June 26, 2010

My Commission expires

# SPECIAL POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That, I, James W. Yoo (United States of America Social Security ████████████), presently residing at 711 Rookery Way Macedon, New York 14502 United States of America

Hereby make, constitute, and appoint Sang M. Shinn (United States of America Social Security ████████████ residing at 6398 Vale Street Alexandria, Virginia 22312 United States of America, as my true and lawful attorney-in-fact for me and in my name, place, and stead to all acts concerning the sale of inheritance real estate (Seoul Dae Mon-gu Namgaja-dong 248-11 & 248-52) from my mother.

Granting and giving unto my attorney-in-fact full authority and power to do and perform any and all other acts necessary or incident to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized

Hereby, as fully to all intents and purposes as the grantor might or could do if personally present with full power of substitution.

The rights, powers, and authority of my attorney-in-fact to exercise any and all of the rights and powers herein granted shall commence and be in full force and effect on June 28, 2007 and shall remain in full force and effect until June 27, 2008, or unless specifically extended or rescinded earlier by either party.

In testimony whereof, I have hereunto set my hand this ___*3l*___ day of July 2007.

| | |
|---|---|
| _James W. Yoo_ | _7/31/07_ |
| James W. Yoo | Date |

I, BARBARA A. KUELLING _____

duly commissioned and qualified, do hereby certify that on this ___*3lst*___ day of July 2007 before me personally appeared James W. Yoo, whose name is subscribed to, and who executed the foregoing instrument, and being informed by me of the contents of the said instrument, duly acknowledged to me that he executed the same freely and voluntarily for the uses and purposes therein mentioned.

IN WITNESS WHEREOF I have hereunto set my hand and official seal the day and year above written.

BARBARA A. KUELLING
Notary Public, State of New York
No. 01KU6139361
Qualified in Wayne County
Commission Expires Jan. 9, 2010

_Barbara A. Kuelling_
Notary Public Signature

_January 9, 2010_
My Commission expires

**GLOBAL EXPRESS GUARANTEED**
UNITED STATES POSTAL SERVICE ®
GXG International Air Waybill

International delivery by FedEx Express — FedEx Express

**1 From** Please print and press hard.
Date: 07/20/07
Sender's Name: James Yoo   Phone: 315-986-0972
Company: James Yoo
Address: 711 Rookery Way
Address:
City: Macedon   State: NY
Country: USA   ZIP Code: 14502

**2 To**
Recipient's Name: Eugene Baek   Phone: 011-9171-3855
Company: Eugene Baek
Address: 825 Chungwon Lakevill II
Address: Janghang 2-dong , Ilsandong-gu
City: Goyang-si   State/Province: Gyeonggi-do
Country: Republic of Korea   ZIP Code/Postal Code: 410-837
Recipient's Tax ID Number for Customs Purposes (if applicable)

For tracking go to the USPS Web site at
www.usps.com/shipping/trackandconfirm.htm
or call 1.800.222.1811.

**3 Shipment Information**
Specific Description Including Number of Each Item (end Harmonized code if known)
| | Country of Manufacture | Value for Customs (US $) |
|---|---|---|
| power of attorney | USA | 1.0 |
| death certificated | USA | 1.0 |
| wire instructions | USA | 1.0 |
| back address | USA | 1.0 |
| | Total Value for Customs | $ 4.0 |

**4 Required Signature**
Sender's Signature: Jm W. Yoo
Date/Time: 07/20/07 12:37 pm
Scheduled Delivery Date: 07/23/07   NY14502-1911
Weight: 0-3-   Postage: 38.00   Insurance: N/A   Total Postage & Fees: 38.00
8982 7745 9191

USPS Tracking Number: 8277459190

Sender's Copy

---

**GLOBAL EXPRESS GUARANTEED**
UNITED STATES POSTAL SERVICE ®
International Air Waybill

International delivery by FedEx Express — FedEx Express

**1 From** Please print and press hard.
Date: 07/31/07
Sender's Name: James Yoo   Phone: 315-986-0972
Company: James Yoo
Address: 711 Rookery Way
Address:
City: Macedon   State: NY
Country: USA   ZIP Code: 14502

**2 To**
Recipient's Name: Eugene Baek   Phone: 011-9171-3855
Company: Eugene Baek
Address: 825 Chungwon Lakevill II
Address: Janghang 2-dong , Ilsandong-gu
City: Goyang-si   State/Province: Gyeonggi-do
Country: Republic of Korea   ZIP Code/Postal Code: 410-837
Recipient's Tax ID number for Customs purposes (if applicable)

For tracking visit the USPS Web site at
www.usps.com/shipping/trackandconfirm.htm
or call 1.800.222.1811.

**3 Shipment Information**
| | Country of Manufacture | Value for Customs |
|---|---|---|
| Power of attorney | USA | 1.0 |
| | Total Value for Customs | 1.0 |

**4 Required Signature**
Sender's Signature: Jm W. Yoo
Date/Time: 7/31/07 10:00 am
PO ZIP Code: 14526
Weight: 0-3-   Postage: 38.00   Insurance: 0   Total Postage & Fees: 38.00
8982 5797 4344

USPS Tracking Number: 8257974340

Sender's Copy

# **EXHIBIT C:**

## PLAINTIFF'S ATTEMPTS TO CONTACT
## THE UNITED STATES DEPARTMENT OF JUSTICE
## INCLUDING
## THE FEDERAL BUREAU OF INVESTIGATION

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...                    Report_Results



1 of 7                                                                          3/5/2017 4:01 PM

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...

Report_Results

| | | | |
|---|---|---|---|
| Bill transportation to: My Account - 723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778420202426<br>Date: Tue  Feb 14, 2017<br>Service: Standard Overnight<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender Information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>Information:<br>Mr Brian Stretch<br>Company: U.S.<br>Attorney's Office<br>150 Almaden Blvd.<br>SAN JOSE, CA 95113<br>US<br>408-535-5061 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  38.02<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:None<br>specified<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate:  --<br>Effective net discount:  --<br>Saturday Delivery:   N<br>Hold at Location: N | Your reference: N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods:  N/A |
| Bill transportation to: My Account - 723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778414770363<br>Date: Tue  Feb 14, 2017<br>Service: Priority Overnight<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender Information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>Information:<br>Mr. James Kennedy<br>Company: Office ofthe<br>United States Attorney<br>138 Delaware Ave<br>BUFFALO, NY 14202<br>US<br>716-843-5700 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  23.52<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:None<br>specified<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate:  --<br>Effective net discount:  --<br>Saturday Delivery:   N<br>Hold at Location: N | Your reference: N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods:  N/A |
| Bill transportation to: My Account - 723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778463693361<br>Date: Mon, Feb 20, 2017<br>Service: Priority Overnight<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender Information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>Information:<br>Adam Cohen<br>Company: FBI. Special<br>Agent in Charge<br>One FBI Plaza<br>BUFFALO, NY 14202<br>US<br>716-856-7800 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  28.02<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate:  --<br>Effective net discount:  --<br>Saturday Delivery:   N<br>Hold at Location: N | Your reference: N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods:  N/A |
| Bill transportation to: My Account - 723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778453957976<br>Date: Mon, Feb 20, 2017<br>Service: FedEx 2Day A.M.<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender Information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>Information:<br>Bertram Fairnes<br>Company: FBI. Asst<br>Special Agent in Charge<br>450 Golden Gate Ave.<br>SAN FRANCISCO, CA<br>941029523<br>US<br>415-553-7400 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  33.07<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate:  --<br>Effective net discount:  --<br>Saturday Delivery:   N<br>Hold at Location: N | Your reference: N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970): |

3/5/2017 4:01 PM

James W. Yoo v. Rochester General Hospital, et al.       May 30, 2018

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...

Report_Results

| | | | N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods: N/A |
|---|---|---|---|
| Bill transportation to: My Account -<br>723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778464022917<br>Date: Mon, Feb 20, 2017<br>Service: FedEx 2Day A.M.<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>information:<br>Brian Stretch<br>Company: U.S.<br>Attorney's Office<br>150 Almaden Blvd<br>SAN JOSE, CA 95113<br>US<br>408-535-5061 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote: 33.07<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate: --<br>Effective net discount: --<br>Saturday Delivery:  N<br>Hold at Location:  N | Your reference:  N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods: N/A |
| Bill transportation to: My Account -<br>723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778453964550<br>Date: Mon, Feb 20, 2017<br>Service: FedEx 2Day A.M.<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>information:<br>Craig Fair<br>Company: FBI: Asst<br>Special Agent in Charge<br>450 Golden Gate AVe<br>SAN FRANCISCO, CA<br>941029523<br>US<br>415-553-7400 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  33.07<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate: --<br>Effective net discount: --<br>Saturday Delivery:  N<br>Hold at Location:  N | Your reference:  N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods: N/A |
| Bill transportation to: My Account -<br>723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778453959152<br>Date: Mon, Feb 20, 2017<br>Service: FedEx 2Day A.M.<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>information:<br>Derek Fair<br>Company: FBI: Asst<br>Special Agent in Charge<br>450 Golden Gate Ave<br>SAN FRANCISCO, CA<br>941029523<br>US<br>415-553-7400 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  33.07<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate: --<br>Effective net discount: --<br>Saturday Delivery:  N<br>Hold at Location:  N | Your reference:  N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Contained in Equipment (UN3091,<br>PI970):<br>N/A<br>Alcohol:N/A<br>Alcohol Recipient Type:N/A<br>Dangerous Goods: N/A |
| Bill transportation to: My Account -<br>723<br>Bill duties/taxes/fees to: N/A<br>Tracking number:<br>778453994401<br>Date: Mon, Feb 20, 2017<br>Service: Priority Overnight<br>Weight: 1.00 LBS<br>Processed by: James Yoo | Sender information:<br>James Yoo<br>711 Rookery Way<br>Macedon, NY 14502<br>US<br>5853559777<br>Recipient<br>information:<br>Holly Hubert<br>Company: FBI: Asst<br>Special Agent in Charge<br>One FBI Plaza<br>BUFFALO, NY 14202<br>US<br>716-856-7800 | Payment type:   BILL SENDER<br><br>COD Amount --<br>Courtesy rate quote:  26.03<br>Package type:FedEx Envelope<br>Purpose:N/A<br>Signature options:Direct<br>signature required<br>Pricing option:FedEx Standard<br>Rate<br>Published Rate: --<br>Effective net discount: --<br>Saturday Delivery:  N<br>Hold at Location:  N | Your reference:  N/A<br>P.O. number: N/A<br>Invoice number: N/A<br>Department number: N/A<br>Return shipments N/A<br>RMA number: N/A<br>Pickup confirmation number:<br>N/A<br>Lithium Battery: Ion Packed with<br>Equipment (UN3481, PI966):<br>N/A<br>Lithium Battery: Ion Contained in<br>Equipment (UN3481, PI967):<br>N/A<br>Lithium Batteries/Cells: Metal<br>Packed with Equipment (UN3091,<br>PI969): |

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...                    Report_Results

N/A
Lithium Batteries/Cells: Metal
Contained in Equipment (UN3091,
PI970):
N/A
Alcohol:N/A
Alcohol Recipient Type:N/A
Dangerous Goods: N/A

| Bill transportation to: My Account - 723 | Sender information: James Yoo | Payment type: BILL SENDER | Your reference: N/A |
|---|---|---|---|
| Bill duties/taxes/fees to: N/A | 711 Rookery Way | | P.O. number: N/A |
| Tracking number: | Macedon, NY 14502 | COD Amount -- | Invoice number: N/A |
| 778464000330 | US | Courtesy rate quote: 28.02 | Department number: N/A |
| Date: Mon, Feb 20, 2017 | 5853559777 | Package type:FedEx Envelope | Return shipments N/A |
| Service: Priority Overnight | Recipient | Purpose:N/A | RMA number: N/A |
| Weight: 1.00 LBS | information: | Signature options:Direct | Pickup confirmation number: |
| Processed by: James Yoo | James Kennedy | signature required | N/A |
| | Company: Office of the | Pricing option:FedEx Standard | Lithium Battery: Ion Packed with |
| | United States Attorney | Rate | Equipment (UN3481, PI966): |
| | 138 Delaware Ave. | Published Rate: -- | N/A |
| | BUFFALO, NY 14202 | Effective net discount: -- | Lithium Battery: Ion Contained in |
| | US | Saturday Delivery: N | Equipment (UN3481, PI967): |
| | 716-843-5700 | Hold at Location: N | N/A |
| | | | Lithium Batteries/Cells: Metal |
| | | | Packed with Equipment (UN3091, |
| | | | PI969): |
| | | | N/A |
| | | | Lithium Batteries/Cells: Metal |
| | | | Contained in Equipment (UN3091, |
| | | | PI970): |
| | | | N/A |
| | | | Alcohol:N/A |
| | | | Alcohol Recipient Type:N/A |
| | | | Dangerous Goods: N/A |

| Bill transportation to: My Account - 723 | Sender information: James Yoo | Payment type: BILL SENDER | Your reference: N/A |
|---|---|---|---|
| Bill duties/taxes/fees to: N/A | 711 Rookery Way | | P.O. number: N/A |
| Tracking number: | Macedon, NY 14502 | COD Amount -- | Invoice number: N/A |
| 778463990171 | US | Courtesy rate quote: 33.07 | Department number: N/A |
| Date: Mon, Feb 20, 2017 | 5853559777 | Package type:FedEx Envelope | Return shipments N/A |
| Service: FedEx 2Day A.M. | Recipient | Purpose:N/A | RMA number: N/A |
| Weight: 1.00 LBS | information: | Signature options:Direct | Pickup confirmation number: |
| Processed by: James Yoo | John Bennett | signature required | N/A |
| | Company: FBI, Special | Pricing option:FedEx Standard | Lithium Battery: Ion Packed with |
| | Agent in Charge | Rate | Equipment (UN3481, PI966): |
| | 450 Golden Gate Ave | Published Rate: -- | N/A |
| | SAN FRANCISCO, CA | Effective net discount: -- | Lithium Battery: Ion Contained in |
| | 941029523 | Saturday Delivery: N | Equipment (UN3481, PI967): |
| | US | Hold at Location: N | N/A |
| | 415-553-7400 | | Lithium Batteries/Cells: Metal |
| | | | Packed with Equipment (UN3091, |
| | | | PI969): |
| | | | N/A |
| | | | Lithium Batteries/Cells: Metal |
| | | | Contained in Equipment (UN3091, |
| | | | PI970): |
| | | | N/A |
| | | | Alcohol:N/A |
| | | | Alcohol Recipient Type:N/A |
| | | | Dangerous Goods: N/A |

| Bill transportation to: My Account - 723 | Sender information: James Yoo | Payment type: BILL SENDER | Your reference: N/A |
|---|---|---|---|
| Bill duties/taxes/fees to: N/A | 711 Rookery Way | | P.O. number: N/A |
| Tracking number: | Macedon, NY 14502 | COD Amount -- | Invoice number: N/A |
| 778463963954 | US | Courtesy rate quote: 33.07 | Department number: N/A |
| Date: Mon, Feb 20, 2017 | 5853559777 | Package type:FedEx Envelope | Return shipments N/A |
| Service: FedEx 2Day A.M. | Recipient | Purpose:N/A | RMA number: N/A |
| Weight: 1.00 LBS | information: | Signature options:Direct | Pickup confirmation number: |
| Processed by: James Yoo | Lawrence Buckley | signature required | N/A |
| | Company: FBI Asst | Pricing option:FedEx Standard | Lithium Battery: Ion Packed with |
| | Special Agent in Charge | Rate | Equipment (UN3481, PI966): |
| | 450 Golden Gate Ave | Published Rate: -- | N/A |
| | SAN FRANCISCO, CA | Effective net discount: -- | Lithium Battery: Ion Contained in |
| | 941029523 | Saturday Delivery: N | Equipment (UN3481, PI967): |
| | US | Hold at Location: N | N/A |
| | 415-553-7400 | | Lithium Batteries/Cells: Metal |
| | | | Packed with Equipment (UN3091, |
| | | | PI969): |
| | | | N/A |
| | | | Lithium Batteries/Cells: Metal |
| | | | Contained in Equipment (UN3091, |
| | | | PI970): |
| | | | N/A |
| | | | Alcohol:N/A |
| | | | Alcohol Recipient Type:N/A |
| | | | Dangerous Goods: N/A |

| Bill transportation to: My Account - 723 | Sender information: James Yoo | Payment type: BILL SENDER | Your reference: N/A |
|---|---|---|---|
| Bill duties/taxes/fees to: N/A | 711 Rookery Way | | P.O. number: N/A |
| Tracking number: | Macedon, NY 14502 | COD Amount -- | Invoice number: N/A |
| 778483977512 | US | Courtesy rate quote: 33.07 | Department number: N/A |
| Date: Mon, Feb 20, 2017 | 5853559777 | Package type:FedEx Envelope | Return shipments N/A |
| Service: FedEx 2Day A M | Recipient | Purpose:N/A | RMA number: N/A |
| Weight: 1.00 LBS | information: | Signature options:Direct | Pickup confirmation number: |
| Processed by: James Yoo | Lisa Gentilcore | signature required | N/A |
| | Company: FBI Asst | Pricing option:FedEx Standard | Lithium Battery: Ion Packed with |
| | Special Agent in Charge | Rate | Equipment (UN3481, PI966): |
| | 450 Golden Gate Ave | Published Rate: -- | N/A |
| | SAN FRANCISCO, CA | Effective net discount: -- | Lithium Battery: Ion Contained in |
| | | Saturday Delivery: -- | Equipment (UN3481, PI967): |

4 of 7                                                                                          3/5/2017 4:01 PM

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...

Report_Results

| | | | |
|---|---|---|---|
| | 941029523 US 415-553-7400 | · Hold at Location: N | N/A Lithium Batteries/Cells: Metal Packed with Equipment (UN3091, PI966): N/A Lithium Batteries/Cells: Metal Contained in Equipment (UN3091, PI970): N/A Alcohol:N/A Alcohol Recipient Type:N/A Dangerous Goods: N/A |
| Bill transportation to: My Account - 723 Bill duties/taxes/fees to: N/A Tracking number: 779463897549 Date: Mon, Feb 20, 2017 Service: FedEx 2Day A.M. Weight: 1.00 LBS Processed by: James Yoo | Sender information: James Yoo 711 Rookary Way Macedon, NY 14502 US 5853558777 Recipient information: M.K. Passore Company: FBI. Asst Special Agent in Charge 450 Golden Gate Ave. SAN FRANCISCO, CA 941029523 US 415-553-7400 | Payment type:   BILL SENDER COD Amount -- Courtesy rate quote:  33.07 Package type:FedEx Envelope Purpose:N/A Signature options:Direct signature required Pricing option:FedEx Standard Rate Published Rate: -- Effective net discount: -- Saturday Delivery:  N Hold at Location:  N | Your reference: N/A P.O. number: N/A Invoice number: N/A Department number: N/A Return shipments N/A RMA number: N/A Pickup confirmation number: N/A Lithium Battery: Ion Packed with Equipment (UN3481, PI966): N/A Lithium Battery: Ion Contained in Equipment (UN3481, PI967): N/A Lithium Batteries/Cells: Metal Packed with Equipment (UN3091, PI966): N/A Lithium Batteries/Cells: Metal Contained in Equipment (UN3091, PI970): N/A Alcohol:N/A Alcohol Recipient Type:N/A Dangerous Goods: N/A |
| Bill transportation to: My Account - 723 Bill duties/taxes/fees to: N/A Tracking number: 779463973456 Date: Mon, Feb 20, 2017 Service: FedEx 2Day A.M. Weight: 1.00 LBS Processed by: James Yoo | Sender information: James Yoo 711 Rookary Way Macedon, NY 14502 US 5853558777 Recipient information: Marina Mayo Company: FBI. Asst Special Agent in Charge 450 Golden Gate Ave. SAN FRANCISCO, CA 941029523 US 415-553-7400 | Payment type:   BILL SENDER COD Amount -- Courtesy rate quote:  33.07 Package type:FedEx Envelope Purpose:N/A Signature options:Direct signature required Pricing option:FedEx Standard Rate Published Rate: -- Effective net discount: -- Saturday Delivery:  N Hold at Location:  N | Your reference: N/A P.O. number: N/A Invoice number: N/A Department number: N/A Return shipments N/A RMA number: N/A Pickup confirmation number: N/A Lithium Battery: Ion Packed with Equipment (UN3481, PI966): N/A Lithium Battery: Ion Contained in Equipment (UN3481, PI967): N/A Lithium Batteries/Cells: Metal Packed with Equipment (UN3091, PI966): N/A Lithium Batteries/Cells: Metal Contained in Equipment (UN3091, PI970): N/A Alcohol:N/A Alcohol Recipient Type:N/A Dangerous Goods: N/A |
| Bill transportation to: My Account - 723 Bill duties/taxes/fees to: N/A Tracking number: 779463979208 Date: Mon, Feb 20, 2017 Service: FedEx 2Day A.M. Weight: 1.00 LBS Processed by: James Yoo | Sender information: James Yoo 711 Rookary Way Macedon, NY 14502 US 5853558777 Recipient information: Stacey Moy Company: FBI. Asst Special Agent in Charge 450 Golden Gate Ave SAN FRANCISCO, CA 941029523 US 415-553-7400 | Payment type:   BILL SENDER COD Amount -- Courtesy rate quote:  33.07 Package type:FedEx Envelope Purpose:N/A Signature options:Direct signature required Pricing option:FedEx Standard Rate Published Rate: -- Effective net discount: -- Saturday Delivery:  N Hold at Location:  N | Your reference: N/A P.O. number: N/A Invoice number: N/A Department number: N/A Return shipments N/A RMA number: N/A Pickup confirmation number: N/A Lithium Battery: Ion Packed with Equipment (UN3481, PI966): N/A Lithium Battery: Ion Contained in Equipment (UN3481, PI967): N/A Lithium Batteries/Cells: Metal Packed with Equipment (UN3091, PI966): N/A Lithium Batteries/Cells: Metal Contained in Equipment (UN3091, PI970): N/A Alcohol:N/A Alcohol Recipient Type:N/A Dangerous Goods: N/A |
| Bill transportation to: My Account - 723 Bill duties/taxes/fees to: N/A Tracking number: 779463986746 Date: Mon, Feb 20, 2017 Service: Priority Overnight Weight: 1.00 LBS Processed by: James Yoo | Sender information: James Yoo 711 Rookary Way Macedon, NY 14502 US 6953558777 Recipient information: Steven Lanser | Payment type:   BILL SENDER COD Amount -- Courtesy rate quote:  28.02 Package type:FedEx Envelope Purpose:N/A Signature options:Direct signature required Pricing option:FedEx Standard | Your reference: N/A P.O. number: N/A Invoice number: N/A Department number: N/A Return shipments N/A RMA number: N/A Pickup confirmation number: N/A Lithium Battery: Ion Packed with |

5 of 7

3/5/2017 4:01 PM

Report_Results

https://www.fedex.com/fsmReport/jsp/ReportAdapter.jsp?action=G...

**Company:** FBI Asst
Special Agent In Charge
One FBI Plaza
BUFFALO, NY 14202
US
716-856-7800

**Rate**
Published Rate: --
Effective net discount: --
Saturday Delivery:  N
Hold at Location: N

**Equipment (UN3491, PI996):**
N/A
Lithium Battery: Ion Contained in
Equipment (UN3481, PI967):
N/A
Lithium Batteries/Cells: Metal
Packed with Equipment (UN3091,
PI969):
N/A
Lithium Batteries/Cells: Metal
Contained in Equipment (UN3091,
PI970):
N/A
Alcohol:N/A
Alcohol Recipient Type:N/A
Dangerous Goods: N/A

---

**Bill transportation to:** My Account -
723
**Bill duties/taxes/fees to:** N/A
**Tracking number:**
778464913190
**Date:** Mon, Feb 20, 2017
**Service:** FedEx 2Day A M
**Weight:** 1.00 LBS
**Processed by:** James Yoo

**Sender information:**
James Yoo
711 Rockery Way
Macedon, NY 14502
US
5853559777
**Recipient
information:**
Tamara Kessler Chief
**Company:** U.S.
Department of Justice
950 Pennsylvania Ave.
WASHINGTON, DC
20530
US
202-514-3204

**Payment type:**   BILL SENDER

COD Amount --
Courtesy rate quote:  24.58
Package type: FedEx Envelope
Purpose:N/A
Signature options:Direct
signature required
Pricing option:FedEx Standard
Rate
Published Rate: --
Effective net discount: --
Saturday Delivery:  N
Hold at Location: N

**Your reference:** N/A
P.O. number: N/A
Invoice number: N/A
Department number: N/A
Return shipments N/A
RMA number: N/A
Pickup confirmation number:
N/A
Lithium Battery: Ion Packed with
Equipment (UN3481, PI968):
N/A
Lithium Battery: Ion Contained in
Equipment (UN3481, PI967):
N/A
Lithium Batteries/Cells: Metal
Packed with Equipment (UN3091,
PI969):
N/A
Lithium Batteries/Cells: Metal
Contained in Equipment (UN3091,
PI970):
N/A
Alcohol:N/A
Alcohol Recipient Type:N/A
Dangerous Goods: N/A

---

**Bill transportation to:** My Account -
723
**Bill duties/taxes/fees to:** N/A
**Tracking number:**
778464909590
**Date:** Mon, Feb 20, 2017
**Service:** FedEx 2Day A.M.
**Weight:** 1.00 LBS
**Processed by:** James Yoo

**Sender information:**
James Yoo
711 Rockery Way
Macedon, NY 14502
US
5853559777
**Recipient
information:**
 Thn Wheeler, Act Asst
Attorney Gen
**Company:** U.S.
Department of Justice
950 Pennsylvania Ave.
WASHINGTON, DC
20530
US
202-514-4609

**Payment type:**   BILL SENDER

COD Amount --
Courtesy rate quote:  24.58
Package type: FedEx Envelope
Purpose:N/A
Signature options:Direct
signature required
Pricing option:FedEx Standard
Rate
Published Rate: --
Effective net discount: --
Saturday Delivery:  N
Hold at Location: N

**Your reference:** N/A
P.O. number: N/A
Invoice number: N/A
Department number: N/A
Return shipments N/A
RMA number: N/A
Pickup confirmation number:
N/A
Lithium Battery: Ion Packed with
Equipment (UN3481, PI968):
N/A
Lithium Battery: Ion Contained in
Equipment (UN3481, PI967):
N/A
Lithium Batteries/Cells: Metal
Packed with Equipment (UN3091,
PI969):
N/A
Lithium Batteries/Cells: Metal
Contained in Equipment (UN3091,
PI970):
N/A
Alcohol:N/A
Alcohol Recipient Type:N/A
Dangerous Goods: N/A

---

**Total shipments: 21**

**Please note:**
1. The courtesy rate shown here may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide for details.
2. Published Rates are only displayed on this screen for US domestic shipments at this time.

FedEx

Search or tracking number

3/5/2017 4:01 PM

## EMAIL TO DANA BOENTE:

---

### Complaint re Title 18 USC Section 241 & Title 18 USC Section 242

James Yoo <thejamesyoo@gmail.com>                                              Mon, Mar 6, 2017 at 11:04 AM
To: Dana.Boente@usdoj.gov
Cc: James Yoo <thejamesyoo@gmail.com>

March 6, 2017

Mr. Dana J. Boente

Acting Deputy Attorney General of the United States.

U.S. Department of Justice

950 Pennsylvania Ave, NW.

Washington, DC. 20530

Re: James Yoo ("Victim") Complaint Title 18 USC Section 241 and Title 18 USC Section 242.

Dear Mr. Boente,

I am reaching out to you since I have not received any responses from Chief Tamara Kessler regarding my complaint.

At minimum, I believe many persons should be charged with the following U.S. Federal Statutes:

- **Title 18, U.S.C., Section 241 - Conspiracy Against Rights**

  o Deprived of liberty (Fifth Amendment)

  § I was held against my will at Rochester General Hospital (RGH) for 5 days while being denied communications access by RGH, my wife Stephanie Yoo, and my sister Aileen Yoo in attempts to contact an attorney.

  § My wife and my sister denied me communications for 2 additional days after being discharged from RGH; I was denied communications access for 7 consecutive days in attempts to contact an attorney.

  o Deprived of the right to bear arms (Second Amendment)

  § RGH medical records blatantly disparaging with unvetted notations including outright lies, inaccuracies, and omissions; creates barriers to receive any permits.

- **Attempted Conspiracy Against Rights (Title 18, U.S.C., Section 241)**

  o Attempted denial of property (Fifth Amendment)

  § conspiring to 'convince' James to sell rental properties in Northern Virginia

  o Attempted denial of the right to bear arms (Second Amendment)

- **Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law**

  o Deprived of liberty (Fifth Amendment)

§ I was held against my will at Rochester General Hospital (RGH) for 5 days while being denied communications access by RGH, my wife Stephanie Yoo, and my sister Aileen Yoo in attempts to contact an attorney.

○ Deprived of liberty (Fifth Amendment) without due process of law

§ I suspect someone 'Under Color of Law' influence RGH held me against my will without proper due process.

· **Title 42, U.S.C., Section 1985 - Conspiracy to Interfere with Civil Rights**

Other charges include:

- · False Imprisonment
- · Attempted False Imprisonment
- · Intentional Infliction of emotional distress
- · Attempted Infliction of emotional distress
- · Negligent Infliction of emotional distress
- · Attempted Negligent Infliction of emotional distress

### EXECUTIVE SUMMARY:

I suspect the primary conspirators are:

- · my wife, Stephanie Yoo, and
- · my only younger sister, Aileen Yoo (a resident in Arcata, CA in Humboldt County).

I suspect other conspirators include at minimum:

- · staff members at Rochester General Hospital (RGH) located in Monroe County New York,

## (REMAINING EMAIL REDACTED)

## EMAIL TO TAMARA KESSLER:

### Complaint re Title 18 USC Section 241 & Title 18 USC Section 242

James Yoo <thejamesyoo@gmail.com>
To: Tamara.Kessler@usdoj.gov
Cc: James Yoo <thejamesyoo@gmail.com>

Tue, Feb 28, 2017 at 6:56 PM

February 28, 2017

Ms. Tamara Kessler

Chief,

U.S. Department of Justice

Civil Rights Division

Criminal Section

950 Pennsylvania Ave, NW.

Washington, DC. 20530

Dear Ms. Kessler,

I received an email confirmation from Criminal.Correspondence@usdoj.gov on February 28, 2017 at 4:31pm confirming receipt of my complaint sent last week via FedEx.

I am emailing you this updated cover letter which provides more details including some recent updates; for example, NYC Bar Legal referral service being unable to provide a referral for my complaint.

I am also emailing to you supporting documents. Given the file size of each supporting document, you should receive separate emails with separate attachments:

- 1_Yoo_Title18_USC_Sect241_242_v170226.pdf (the main document enclosed with this email)

- 2_Yoo_RGH_Record_Pg_1_to_40.pdf (RGH record with my comments)

- 3_Yoo_RGH_Record_Pg_41_to_80.pdf (RGH record with my comments)

- 4_Yoo_RGH_Record_Pg_81_to_116.pdf (RGH record with my comments)

- 5_Yoo_RGH_Record_More_Nove26th_Notes.pdf (RGH record with my comments)

- 6_Yoo_RGH_Record_Signatures_Nov26_Nov30.pdf (comments re improper RGH admission)

- 7_Yoo_RGH_Record_December_1st.pdf (RGH record with my comments)

- 8_James_40th_Bday_Gift.pdf (not password protected. a book which alludes to premediated conspiracy given to me by my sister)

Please contact me at 585-355-9777 to receive the password in order to open the files; or let me know when I may reach you to do so. Examining my report in detail with the supporting documents is essential to present evidence regarding my complaint.

## (PORTIONS OF EMAIL FULLY REDACTED)

Again, I believe part of the broad conspiracy involves inhibiting my ability to retain bona fide competent and experienced legal help with deep resources.

Unfortunately, I even suspect some of my surrounding neighbors have engaged in unofficial surveillance of my activities.

I have attempted to contact the following U.S. Federal Law Enforcement personnel over the last month with no response:

Tom Wheeler. Acting Assistant Attorney General. U.S. Dept of Justice. Civil Rights Division

Brian Stretch. Office of the United States Attorney. San Jose, CA

Adam Cohen. FBI. Special Agent in Charge. Buffalo, NY

Holly Hubert. FBI. Assistant Special Agent in Charge. Buffalo, NY

Steven Lanser. FBI. Assistant Special Agent in Charge. Buffalo, NY

John Bennett. FBI. Special Agent in Charge. San Francisco, CA

Lawrence Buckley. FBI. Assistant Special Agent in Charge. San Francisco, CA

Craig Fair. FBI. Assistant Special Agent in Charge. San Francisco, CA

Bertram Fairries. FBI. Assistant Special Agent in Charge. San Francisco, CA

Derek Fischel. FBI. Assistant Special Agent in Charge. San Francisco, CA

Lisa Genticore. FBI. Assistant Special Agent in Charge. San Francisco, CA

Marina Mayo. FBI. Assistant Special Agent in Charge. San Francisco, CA

Stacey Moy. FBI. Assistant Special Agent in Charge. San Francisco, CA

M.K. Palmore. FBI. Assistant Special Agent in Charge. San Francisco, CA

I was able to speak briefly with Acting US Attorney (Western District of New York) James P. Kennedy last week.  While Mr. Kennedy did not contact me regarding the password to open the documents, he emailed me stating that he forwarded my information to the FBI and is awaiting the FBI's response on whether they will open an investigation.

**Ms. Kessler, I humbly request your focus and attention to my complaint and further request your, and the Department of Justice's, advocacy of my complaint.**

I believe the enclosed report and supporting documents are more than enough to justify immediate U.S. Federal Law Enforcement action;  I am requesting your immediate help.

I look forward to hearing from you regarding next steps and truly appreciate your support.

Respectfully,

James Yoo

711 Rookery Way

## EMAIL TO JAMES P. KENNEDY:

Sun, Feb 26, 2017 at 4:57 PM

James Yoo <thejamesyoo@gmail.com>
To: jp.kennedy@usdoj.gov
Cc: James Yoo <thejamesyoo@gmail.com>

Dear Mr. Kennedy,

Thank you for your time to speak with me on Friday February 24th.

As discussed and per your request, attached is a document that I compiled regarding what I believe is conspiracy and collusion on many levels to harm me.

Given the file size of each supporting document, you should receive separate emails with separate attachments:

· 0_Yoo_Title18_USC_Sect241_242_v170226.pdf  (the main document enclosed with this email)

  1_Yoo_RGH_Record_Pg_1_to_40.pdf  (RGH record with my comments)

· 1_Yoo_RGH_Record_Pg_41_to_80.pdf  (RGH record with my comments)

· 1_Yoo_RGH_Record_Pg_81_to_116.pdf  (RGH record with my comments)

· 2_Yoo_RGH_Record_More_Nove26th_Notes.pdf  (RGH record with my comments)

  3_Yoo_RGH_Record_Signatures_Nov26_Nov30.pdf  (comments re improper RGH admission)

· 4_Yoo_RGH_Record_December_1st.pdf  (RGH record with my comments)

· 5_James_40[th]_Bday_Gift.pdf (a book which alludes to premediated conspiracy given to me by my sister)

**Please contact me at 585-355-9777 to receive the password in order to open the files; or let me know when I may reach you to do so.**

At minimum, I believe many persons should be charged with the following U.S. Federal Statutes:

- **Title 18, U.S.C., Section 241 - Conspiracy Against Rights**

  ○ Deprived of liberty (Fifth Amendment)

    § I was held against my will at Rochester General Hospital (RGH) for 5 days while being denied communications access by RGH, my wife Stephanie Yoo, and my sister Aileen Yoo in attempts to contact an attorney.

    § My wife and my sister denied me communications for 2 additional days after being discharged from RGH; I was denied communications access for 7 consecutive days in attempts to contact an attorney.

  ○ Deprived of the right to bear arms (Second Amendment)

    § RGH medical records blatantly disparaging with unvetted notations including outright lies, inaccuracies, and omissions; creates barriers to receive any permits.

- **Attempted Conspiracy Against Rights (Title 18, U.S.C., Section 241)**

  ○ Attempted denial of property (Fifth Amendment)

    § conspiring to 'convince' James to sell rental properties in Northern Virginia

  ○ Attempted denial of the right to bear arms (Second Amendment)

- **Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law**
  - ○ Deprived of liberty (Fifth Amendment)

    § I was held against my will at Rochester General Hospital (RGH) for 5 days while being denied communications access by RGH, my wife Stephanie Yoo, and my sister Aileen Yoo in attempts to contact an attorney.

  - ○ Deprived of liberty (Fifth Amendment) without due process of law

    § I suspect someone 'Under Color of Law' influence RGH held me against my will without proper due process.

- **Title 42, U.S.C., Section 1985 - Conspiracy to Interfere with Civil Rights**

Other charges include:

- False Imprisonment
- Attempted False Imprisonment
- Intentional Infliction of emotional distress
- Attempted Infliction of emotional distress
- Negligent Infliction of emotional distress
- Attempted Negligent Infliction of emotional distress

<u>**EXECUTIVE SUMMARY:**</u>

I suspect the primary conspirators are:

- my wife, Stephanie Yoo, and
- my only younger sister, Aileen Yoo (a resident in Arcata, CA in Humboldt County).

I suspect other conspirators include at minimum:

- staff members at Rochester General Hospital (RGH) located in Monroe County New York,

## (REMAINING EMAIL REDACTED)

## EMAIL TO BRIAN STRETCH:

---------- Forwarded message ----------
From: James Yoo <thejamesyoo@gmail.com>
Date: Tue, Feb 28, 2017 at 11:00 AM
Subject: Re: Complaint re Title 18 USC Section 241 & Title 18 USC Section 242
To: Brian.Stretch@usdoj.gov
Cc: James Yoo <thejamesyoo@gmail.com>


To: Brian Stretch

United States Attorney

US Attorney's Office

Northern District of California


Dear Mr. Stretch.

Will you be so kind and confirm receipt (via FedEx package 7784 6400 2917) of my complaint regarding violations of Title 18 USC Section 241 and Title 18 USC Section 242?

Respectfully.

James Yoo
711 Rookery Way
Macedon, NY 14502
M. 585-355-9777
H. 315-986-0972

Confidentiality Notice from James Yoo:
The foregoing electronic communication from James Yoo is intended only for the individual or entity to which it is addressed.  This communication may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  Dissemination, distribution, or copying of this communication or the information herein by anyone other than the intended recipient is strictly prohibited.  If you are not an intended recipient of this communication or if you received this communication in error, please notify James Yoo immediately by replying to the message and then permanently delete or destroy the original communication and any attachments; destroy copies (if any) and do not forward.


On Mon, Feb 27, 2017 at 4:20 PM, James Yoo <thejamesyoo@gmail.com> wrote:

To: Brian Stretch

United States Attorney

US Attorney's Office

Northern District of California


Dear Mr. Stretch.

I am writing to confirm that you received information regarding my complaint for violations of Title 18 USC Section 241 and Title 18 USC Section 242.

While the complaint and incident occurred in Monroe County New York and Wayne County New York, you were included in my contact attempts given my complaint also involves my sister (Aileen Yoo) who resides in Arcata, CA.

Respectfully.


## (REMAINING EMAIL REDACTED)

# ENDNOTES:

[1] Plaintiff reserves the right to remove redaction

[2] Eugene Kiely, *Timeline of Russia Investigation*, factcheck.org.  Posted on June 7, 2017 and updated periodically, https://www.factcheck.org/2017/06/timeline-russia-investigation/ .

[3] TheFreeDictionary by Farlex. Search words "Substantive Due Process".  https://legal-dictionary.thefreedictionary.com/Substantive+Due+Process

[4] Stanley Barr Jr., R. Johan Conrod Jr., David Anthony, *Trying and Defending 42 U.S.C. Section 1983 Claims.*

[5] Equal Protection. https://www.law.cornell.edu/wex/equal_protection

[6] liberty. https://www.merriam-webster.com/dictionary/liberty

# CIVIL COVER SHEET

18 CV 6398 CJS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
James Yoo

**DEFENDANTS**
Rochester General Hospital, Monroe County Sheriff's Office, Stephanie Scroger Yoo, Aileen Yoo, DOES 1 - 1000

**(b)** County of Residence of First Listed Plaintiff   Wayne County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Monroe County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

MAY 30 2018

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983 (Civil Action for Deprivation of Rights)
Brief description of cause:
Defendants violated Plaintiff's Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Amount Demanded Exceeds $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE